# EXHIBIT 12

N. 10

Letter from Rep. Deborah Ross, et al. to Pam Bondi, Attorney General and David Huitema, Director, U.S. Office of Government Ethics (Feb. 7, 2025), https://ross.house.gov/_cache/files/b/7/b73e22b7-cb95-42d2-8ff7-e4eb5a3151f1/7D7EEB40C4C345844710558A4A3F5022.musk-letter-final-2.7.pdf.

# Congress of the United States
## House of Representatives
### Washington, DC 20515–3302

February 7, 2025

Attorney General Pam Bondi  
U.S. Department of Justice  
950 Pennsylvania Avenue NW  
Washington, DC 20530

Director David Huitema  
U.S. Office of Government Ethics  
250 E St. SW Suite 750  
Washington, DC 20024

Dear Attorney General Bondi and Director Huitema:

We write to urgently request that the Department of Justice (DOJ) and Office of Government Ethics (OGE) uphold federal ethics laws in relation to Elon Musk's role as a special government employee (SGE).

As you are aware, 18 U.S.C. § 208 explicitly prohibits federal employees, including SGEs, from "participating personally and substantially in a particular Government matter that will affect his own financial interests, as well as the financial interests of certain individuals with whom he has ties outside the Government."[1] According to USASpending.gov, SpaceX and its subsidiary Starlink, companies that Mr. Musk owns, have received approximately $1.7 billion from NASA, $1.3 billion from the Air Force, and $199.2 million from the Defense Information Systems Agency over the past 12 months – this is approximately $3.3 billion in unclassified revenue.[2] Furthermore, given Mr. Musk's extensive business holdings in addition to SpaceX – including Tesla and X (formerly Twitter) – it is critical that the DOJ ensure compliance with this statute to preserve public trust in government.

Mr. Musk's position as an SGE demands heightened scrutiny. His companies routinely engage with federal agencies on matters such as defense contracts, telecommunications regulations, and energy policy. Any participation by Mr. Musk in governmental matters impacting these sectors risks violating § 208 given that his financial interests could be directly implicated. The law's criminal and civil enforcement mechanisms, which fall solely under the DOJ's authority, must be rigorously applied to prevent actual or perceived conflicts of interest.

While exemptions can be made for SGEs if their financial interests are considered "not so substantial as to be deemed likely to affect the integrity of the services which the government may expect from the employee," such exemptions require a rigorous, publicly defensible determination that an employee's financial interests are insubstantial. Musk's sprawling financial interests in federal contracts and subsidies make it impossible to credibly argue that his conflicts are not material to this provision.

---

[1] https://www.oge.gov/web/oge.nsf/Resources/18+U.S.C.+%C2%A7+208:+Acts+affecting+a+personal+financial+interest  
[2] https://www.defenseone.com/policy/2025/02/musks-role-special-government-employee-raises-ethics-questions/402751/

His companies are not passive investments; they actively lobby and litigate against federal agencies. SpaceX is suing the National Labor Relations Board (NLRB), X has faced Securities & Exchange Commission (SEC) scrutiny and litigation, and Tesla was accused of violating federal law by the Equal Employment Opportunity Commission (EEOC). This creates a direct nexus between his advisory role and his financial interests, undermining any claim of "insubstantial" conflicts.

Beyond the clear violation of § 208, Musk's position also contravenes 5 C.F.R. § 2635.502 – the Impartiality Regulation. This requires federal employees to recuse themselves not only from matters affecting their financial interests, but also from those affecting the financial interests of closely affiliated persons or organizations. This regulation **provides no exemption for SGEs.**

Moreover, Musk's status as an SGE subjects him to the strict disclosure standards established by the Stop Trading on Congressional Knowledge (STOCK) Act. The law requires him to publicly disclose financial interests that could create conflicts with his federal role. However, the scale and complexity of Mr. Musk's holdings – spanning federal contracts through SpaceX, subsidies for Neuralink and the Boring Company, and federally regulated entities like Tesla – raise serious questions about whether his disclosures adequately capture the conflicts arising from his dual role as a government advisor and beneficiary of agency actions.

The STOCK Act's transparency provisions are rendered meaningless if government employees with sprawling financial portfolios are permitted to withhold or obscure substantial ties. We urge you to evaluate whether Musk's disclosures comply with the requirements of the law and, if not, to pursue appropriate remedies to uphold public accountability.

The American people deserve assurances that no individual, regardless of stature, is permitted to influence policy for personal gain. Failure to enforce this statute risks eroding confidence in the impartiality of federal decision-making. We urge the DOJ and OGE to promptly investigate whether Mr. Musk's actions or engagements as an SGE have violated § 208, 5 C.F.R. § 2635.502, and the STOCK Act and to take appropriate enforcement action if warranted.

Thank you for your attention to this urgent issue and we look forward to your prompt response.

Sincerely,

_____
Deborah K. Ross
Member of Congress

_____
Jamie Raskin
Ranking Member
House Committee on the Judiciary

_____
Henry C. "Hank" Johnson, Jr.
Member of Congress

_____
Becca Balint
Member of Congress

_____
Steve Cohen
Member of Congress

_____
Mary Gay Scanlon
Member of Congress

_____
Dan Goldman
Member of Congress

_____
Pramila Jayapal
Member of Congress

_____
Sydney Kamlager-Dove
Member of Congress

_____
Eric Swalwell
Member of Congress

_____
Jasmine Crockett
Member of Congress

_____
Valerie P. Foushee
Member of Congress