**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. OFFICE OF PERSONNEL MANAGEMENT, *et al.*, <br><br> Defendants. | Case No. 25-cv-1237-DLC |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………………………………………………… ii

INTRODUCTION ………………………………………………………………………………. 1

ARGUMENT ……………………………………………………………………………..… 2

    I.    Discovery Is Appropriate at This Stage ………………………………..………. 2

        A.  Expedited discovery is permissible pending a motion to dismiss ….….………. 2

        B.  Defendants' opposition to a preliminary injunction makes expedited
           discovery necessary ………………………..……………………………... 4

        C.  Discovery would provide clarity on several critical factual issues ………..…….. 5

    II.   Discovery Is Appropriate in APA Cases, and Plaintiffs Have Claims Outside the
        the APA …..…………………………………………………………………….. 6

    III.  The Proposed Discovery is Appropriate and Narrowly Tailored ……………..…..… 8

    IV.  Plaintiffs Support Consolidation if this Motion Is Granted in Full…. ….……..…… 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Gov't Emp. v. OPM*,
  Case No. 3:25-cv-1780 (N.D. Cal. Feb. 27, 2025) ...................................................................7

*Am. Fed'n of Labor and Congress of Ind. Orgs. v. Dep't of Labor*,
  Case No. 1:25-cv-339-JDB (D.D.C. Feb. 27, 2025) ............................................................3, 6

*Am. Fed'n of Teachers v. Bessent*,
  Case No. 8:25-cv-430-DL (D. Md. Feb. 24, 2025) ...................................................................5

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ..................................................................................................................8

*Daly v. Inc. Vill. of Port Jefferson*,
  Case No. 2:23-cv-09179 (GRB) (JMW), 2024 WL 730497 (E.D.N.Y. Feb. 21, 2024) ............3

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ..................................................................................................................5

*Hispanic Affairs Project v. Acosta*,
  901 F.3d 378 (D.C. Cir. 2018) ..................................................................................................7

*New York v. Trump,*
  Case No. 1:25-cv-01144-JAV (S.D.N.Y. Feb. 11, 2025) ..........................................................7

*OMG Fid., Inc. v. Sirius Techs., Inc.*,
  239 F.R.D. 300 (N.D.N.Y. 2006) .............................................................................................4

*Ragbir v. Homan*,
  No. 18-CV-1159 (PKC), 2018 WL 11365231 (S.D.N.Y. Mar. 26, 2018) ................................3

**Other Authorities**

*Full Transcript of President Trump's Speech to Congress*, *New York Times* (March 4, 2025)
  https://www.nytimes.com/2025/03/04/us/politics/transcript-trump-speech-congress.html (last
  visited March 6, 2025) .........................................................................................................1, 11

## **INTRODUCTION**

There is nothing ordinary or routine about this case. The Office of Personnel Management ("OPM") has illegally disclosed the personal records of millions of American public servants to the so-called Department of Government Efficiency ("DOGE")—an entity whose purpose, leadership, and legal authority remain unclear—and to an unknown number of individuals—some of whom appear not to have been government employees at the time they gained access to Plaintiffs' highly sensitive and legally protected information.

Nor is this case one in which this Court can comfortably rely on Defendants' representations. Defendants state that Defendant Musk is merely an advisor and does not direct the U.S. DOGE Service Temporary Organization. Defendants' Memorandum in Opposition, ECF No. 54 ("Opp.") at 10, 19. But while addressing a joint session of Congress just two days ago, President Trump declared to the American people that DOGE is "headed by" Musk.[1]

Plaintiffs initially sought a temporary restraining order to expeditiously enjoin any future unlawful disclosures of their personal information, but Plaintiffs subsequently agreed to convert that motion to one seeking a preliminary injunction. In opposing the preliminary injunction, Defendants contend that they have not violated the law and that Plaintiffs have made no showing of imminent harm. Specifically, Defendants claim that Plaintiffs' allegations are based on mistaken information in news reports. ECF No. 39 at 1. Defendants' representations in their brief opposing the TRO about who accessed the OPM records and those actors' need for the information exceed the single factual declaration Defendants filed, are inconsistent with

---

[1] https://www.nytimes.com/2025/03/04/us/politics/transcript-trump-speech-congress.html (last visited March 6, 2025).

1

admissions by Defendants and their agents, and are incompatible with extensive public reporting. Critical questions remain relating to numerous issues material to this case.

Instead of addressing those factual ambiguities, Defendants retreat to what they claim is the "normal course of litigation" in an APA case and insist that the Court can rule solely on the basis of the administrative record. But Defendants entirely ignore that Plaintiffs have asserted more than just APA claims; Plaintiffs also have alleged violations of the Privacy Act and ultra vires acts. Even with respect to the APA claims, Defendants' claim of regularity should be rejected. In other pending cases alleging data breaches by DOGE, *the government has claimed that there is no administrative record*, and all indications are that Defendants will make the same claim here. Defendants cannot simultaneously maintain that the Court needs only the administrative record and also that there is no administrative record—which, of course, there is not and will not be because Defendant OPM has not acted according to any rulemaking process.

Plaintiffs have identified multiple specific issues where discovery would be helpful to resolve ambiguities in the record that result primarily from Defendants' inconsistent and incomplete representations. The proposed discovery is limited in scope, narrowly tailored to fill in the necessary factual record, and well within the Court's discretion to grant.

## ARGUMENT

### I.   Discovery Is Appropriate at This Stage

**A. Expedited discovery is permissible pending a motion to dismiss.**

Defendants argue that discovery should not proceed until the Court has resolved their forthcoming motion to dismiss. Opp. at 3-4. Even where preliminary relief is not being sought, however, the default rule is that discovery proceeds while dispositive motions are being considered. *See, e.g., Daly v. Inc. Vill. of Port Jefferson*, Case No. 2:23-cv-09179 (GRB)

(JMW), 2024 WL 730497, at *1 (E.D.N.Y. Feb. 21, 2024) (delaying discovery is "antithetical to Rule 1's admonition to construe the rules so as to 'secure the just, speedy … determination of every action.'").

In the context of a preliminary injunction, where time is of the essence, there is no reason to delay discovery merely because Defendants are expected to file a motion to dismiss. In support of their argument, Defendants cite two cases where discovery was not granted pending a motion to dismiss, only one of which (*Ragbir v. Homan*) involves a preliminary injunction. Opp. at 3-4. A single case involving wholly different factual circumstances where a court exercised its discretion not to grant discovery until after resolving a motion to dismiss does not change the inquiry for the Court here.[2] In a similar case where plaintiffs allege that DOGE illegally gained access to systems at the Department of Health and Human Services and the Consumer Financial Protection Bureau, the Court granted expedited discovery before resolving the forthcoming motion to dismiss. Pl. Mem. (ECF No. 52) at 12; *Am. Fed'n of Labor and Congress of Ind. Orgs. v. Dep't of Labor*, Case No. 1:25-cv-339-JDB (D.D.C. Feb. 27, 2025) (ECF No. 48) (discovery order); *id.* (Feb. 19, 2025) (ECF No. 43) (scheduling order).[3]

As the cases cited in Plaintiffs' brief demonstrate, this Court has discretion to permit expedited discovery at a preliminary injunction stage before a motion to dismiss. *See* Pl. Mem. at 11-13, 15-16. "In the end, the question of whether discovery should go forward at this point comes down to a comparison of the potential prejudice which will be suffered by the defendant if

---

[2] The *Ragbir v. Homan* decision does not discuss the applicable legal standard, but the court in that case said it was temporarily denying the plaintiff's motion for discovery so that the administrative record could be completed. No. 18-CV-1159 (PKC), 2018 WL 11365231, at *2 (S.D.N.Y. Mar. 26, 2018). There is no administrative record to complete here.

[3] Defendants claim that order was wrongly issued, making several of the same arguments they raise here. Opp. at 12.

3

discovery is permitted, and that which will be experienced by the plaintiff if denied the opportunity for discovery at this stage." *OMG Fid., Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006) (finding the complaint facially sufficient and likely to withstand dismissal, and finding that limited discovery in advance of a preliminary injunction posed minimal prejudice to defendants because discovery was likely to "occur eventually"). Here, as in *OMG Fid.*, Plaintiffs will be unfairly prejudiced if discovery is not permitted to go forward since Plaintiffs "will not have an early opportunity to develop evidence for use in support of such a motion." *Id.*

    **B. Defendants' opposition to a preliminary injunction makes expedited discovery necessary.**

Curiously, Defendants argue that expedited discovery is "completely unnecessary" "[i]f Plaintiffs already believe they will succeed in establishing their entitlement to injunctive relief at a preliminary injunction hearing …." Opp. at 15. If Defendants consent to entry of the preliminary injunction, then expedited discovery is indeed unnecessary. The Court can order a regular discovery schedule, and the case can proceed to trial on the merits with injunctive relief in place to protect Plaintiffs from harm caused through past and ongoing illegal disclosures of their personal information. Given, however, that Defendants oppose a preliminary injunction, the Court should grant expedited discovery to ensure a more complete factual record and to assess the veracity of the representations and evidence Defendants have offered in opposition to preliminary relief.

Moreover, contrary to Defendants' suggestion, *id.*, the fact that another court has entered a temporary restraining order in a similar case involving OPM does not resolve the motion for expedited discovery here (although it does provide case support for Plaintiffs' legal claims). The federal court in Maryland enjoined OPM and the Department of Education from disclosing

4

personal information to DOGE, but that relief is temporary and covers only "personally identifiable information of the plaintiffs and members of the plaintiff organizations." *Am. Fed'n of Teachers v. Bessent*, Case No. 8:25-cv-430-DL (D. Md. Feb. 24, 2025) (ECF No. 38 at 32-33) (order). That injunction does not protect Plaintiffs here from disclosure of their own personal information, and the injunction is in place only until March 17. *Id*. (ECF No. 50) (paperless order).[4] Furthermore, Defendants here insist that their conduct does not violate the Privacy Act, and that Plaintiffs have not suffered injuries traceable to the alleged violations, indicating a likelihood that Defendants' conduct will continue unless enjoined. ECF No. 39 at 19-25. The TRO in *Am. Fed'n of Teachers* therefore does not obviate the need for this Court to proceed expeditiously, nor does it mean that discovery here is not appropriate.

### C. Discovery would provide clarity on several critical factual issues.

Plaintiffs identify ambiguities in the record across three broad categories of information: (i) Defendant DOGE's authority and purpose; (ii) Defendant Musk's role and authority at DOGE; and (iii) the nature and extent of access to OPM records given to DOGE or others. Pl. Mem. at 2-9. Plaintiffs also highlight questions of fact raised by Defendants' representations relating to seven issues material to Plaintiffs' claims. *Id*. at 9-10. In response, Defendants assert that Plaintiffs "cannot point to any gaps in the record that would frustrate effective judicial review."[5] Defendants' assertion is not credible in light of the critical factual questions that remain unanswered about the who, what, when, and why of DOGE access to OPM databases.

---

[4] Notably, in granting the TRO, that court invited a request for limited discovery while anticipating production of the administrative record and, presumably, a motion to dismiss.

[5] Defendants contend that if gaps in the record exist, the proper course is to remand to the agency for additional investigation, citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Opp. at 14. That case, however, does not involve a request for expedited discovery or concern discovery generally. Instead, like many other cases cited by Defendants, it contains a general

## II.  Discovery Is Appropriate in APA Cases, and Plaintiffs Have Claims Outside the APA

Defendants' entire brief is devoted to arguments about expedited discovery in APA cases. They argue that expedited discovery is generally disfavored, that discovery should await production of the administrative record, and that Plaintiffs have not demonstrated bad faith or improper conduct. Opp. at 4-8, 14-15. Their arguments all fail.

First, this is not just an APA case. Plaintiffs bring two claims under the Privacy Act, Compl. ¶¶ 12-14, and a claim for ultra vires action, Compl. ¶¶ 16-17, in addition to their two APA claims. Plaintiffs cited numerous cases permitting expedited discovery in non-APA cases, Pl. Mem. at 11, yet Defendants focus on the availability of such discovery only with respect to APA challenges. The relevant principles limiting discovery in APA cases simply do not apply here because of the presence of the other claims. The state of any administrative record, for example, does not bear on Defendants' violations of the Privacy Act and the resulting irreparable harm.

Second, even in APA cases discovery has been ordered before assembly of the administrative record where necessary to present an adequate record for ruling on a motion for a preliminary injunction and to avoid irreparable harm. *Am. Fed'n of Labor*, Case No. 1:25-cv-339-JDB (ECF No. 48);[6] *Am. Fed'n of Gov't Emp. v. OPM*, Case No. 3:25-cv-1780 (N.D. Cal. Feb. 27, 2025) (ECF No. 41); *Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir.

---

statement of law that on its surface seems to support their contention but upon further inspection is inapposite to this motion.

[6] Defendants suggest that court rejected discovery of the sort sought here. Opp. at 12 n. 3. That suggestion is false. Judge Bates ruled that interrogatories related to the identity of key individuals, documents related to issues raised by the defendants' declarants, and four depositions on identified topics were appropriate. Plaintiffs' proposed discovery here— consisting of narrowly tailored interrogatories, document requests, and depositions of four key individuals—is similar in scope to that granted by Judge Bates.

2018) (district court may exercise its discretion to permit further discovery to ascertain the contours of the policy at issue).

Moreover, Defendants are playing something of a shell game. They argue that discovery is not generally permitted before production of the administrative record, and that Defendants must be permitted to produce the record before any decision on discovery. Opp. at 7-8. 4-5. At the same time, Defendants insist that the record need not be produced before a decision on their forthcoming motion to dismiss. *Id.* at 3-4. But Defendants almost certainly will claim in their motion to dismiss, as they did in opposing a TRO, that their actions are not reviewable under the APA because there is no final agency action and consequently no administrative record. ECF No. 39 at 14-16. *See Am. Fed'n of Labor*, Case No. 1:25-cv-339-JDB (ECF 49-1 at 21-25) (government arguing that DOGE access to agency systems is not final agency action under APA); *New York v. Trump,* Case No. 1:25-cv-01144-JAV (S.D.N.Y. Feb. 11, 2025) (ECF No. 29) (order) (Defendants asserting, "Because this suit involves no final agency action, there is no administrative record underlying the disputed issues.")

Defendants' argument already has been rejected by Judge Boardman in *Am. Fed'n of Teachers*, which involves, like this case, the unlawful disclosure of confidential information to DOGE. Judge Boardman rejected Defendants' argument that disclosure of information was not a final agency action, ruling that "the decisions to grant DOGE affiliates access to agency record systems were final agency actions…. The decision to grant access was neither tentative nor interlocutory in nature. It was 'the 'consummation of the agenc[ies'] decisionmaking process.'"" *Am. Fed'n of Teachers*, Case No. 8:25-cv-430-DL (ECF No. 38 at 17) (citation omitted). Defendants' groundless assertions that OPM's actions were not final agency actions, combined with Defendants' admission that OPM's disclosure of Plaintiffs' confidential information was

7

undertaken in the absence of any administrative record, means that no administrative record is forthcoming in this case. Accordingly, Defendants' claim that discovery should await production of the administrative record is disingenuous and should be rejected.

Finally, Defendants argue that Plaintiffs "must make a 'strong showing' of bad faith or improper behavior to warrant discovery…." Opp. at 14. But even if this were solely an APA case (which it is not), a showing of bad faith would not be required. As Defendants acknowledge in citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), "the availability of extra-record discovery is solely dependent on whether (1) a plaintiff has made a 'strong showing of bad faith or improper behavior,' *or (2) the court finds that the record lacks formal administrative findings necessitating extra-record evidence to allow for 'effective judicial review.'"* Opp. at 5-6 (emphasis added). Here, there has been no administrative record produced, and Defendants will maintain that none exists. And Plaintiffs have established gaps and ambiguities that necessitate extra-record evidence to allow for effective judicial review.

### III.     The Proposed Discovery is Appropriate and Narrowly Tailored

The prevailing standard for expedited discovery is the "flexible standard of good cause and reasonableness," which includes five principal factors. Pl. Mem. at 13. Defendants do not contest four of the established factors: (i) a prima facie case of actionable harm; (ii) the information sought is in Defendants' control; (iii) the information is material to the claims; and (iv) Defendants' expectation of privacy.[7] The only factor Defendants contest is the scope of the proposed discovery, arguing that Plaintiffs' requests are overbroad.

---

[7] Defendants do not dispute the applicable standard except to say that it does not apply to cases under the APA or cases involving the White House. Opp. at 10. As addressed in section II above, this case involves claims outside the APA. Also, the case that Defendants cite for

8

Most of Plaintiffs' proposed discovery requests are explicitly tied to the Hogan declaration filed by Defendants in support of their opposition to a TRO. That declaration raises more questions than it answers, and Plaintiffs' discovery requests are narrowly tailored to answering those questions. Pl. Mem. at 7-9. Having introduced the uncertainties in the Hogan declaration, Defendants should not be heard to object to discovery designed to resolve those uncertainties.

Defendants assert that Interrogatory Nos. 5 is overbroad because it seeks information regarding decisions made based on access to the OPM systems. That information is material to the Privacy Act violations because it concerns the justification for the access that was granted and whether that justification falls within the Act's 13 express exceptions. 5 U.S.C. § 552a(b). Similarly, Interrogatory No. 8, which imposes a minimal burden in asking whether DOGE employees with access to the OPM systems were interviewed by Defendant Musk, is relevant to determining why those individuals were granted access and which agency directs them. Defendants have repeatedly argued that only OPM employees had access to the OPM system—a representation that is highly dubious—and therefore there could be no violation of the Privacy Act. ECF No. 39 at 1; Opp. at 13, 18. The Privacy Act, however, permits employees to access records only when they have a need for the records in performance of their legitimate duties. 5 U.S.C. § 552a(b)(1). Therefore, questions about why individuals were granted access are material.

Interrogatory No. 6 seeks to identify which OPM employees with database access were detailed to other agencies, in response to Defendants' claim that access was limited to OPM

---

evaluating discovery from the Executive Office of the President identifies factors that align with the "flexible standard of good cause and reasonableness" identified by Plaintiffs, including that the requests are necessary, not overbroad, and cannot be obtained through other avenues.

9

employees only. *See* ECF No. 39 at 1. This information directly concerns the "who" and "why" regarding access that is material to the Privacy Act violations.

Defendants challenge Document Request Nos. 5, 6, and 7. Those requests seek communications about who had access to the OPM database and the need for such access—"who" and "why" information that is again material to the Privacy Act violations.

Plaintiffs propose two Rule 30(b)(6) depositions, each limited to four topics. The proposed topics for the OPM designee address (1) policies governing access; (2) the roles, responsibilities, and training of people who were granted access; (3) the extent and purpose of access; and (4) decisions taken based on the access. These topics are narrowly tailored to address the "who," "what," and "why" that is material to the claims at issue. The proposed four topics for the DOGE designee overlap with the OPM designee topics, focusing on the "who" and "why." Defendants question the relevance of background information about DOGE, but one of the central allegations in Plaintiffs' complaint is that DOGE had no lawful or legitimate need for access. Compl. ¶ 10. In light of the significant uncertainty about DOGE's mission, purpose, and authority, Pl. Mem. at 2-5, this topic is appropriate for discovery.

Defendants oppose a time-limited deposition of OPM Chief Information Officer Greg Hogan as a "fishing expedition." Opp. at 19. Plaintiffs, however, have proposed limiting the scope of Mr. Hogan's deposition to his declaration and, as noted above, have identified several specific examples of where his declaration omits key information or conflicts with Defendants' other representations. *See* Pl. Mem. at 7-9.

Defendants object to deposing Defendant Musk, claiming he is not a proper party and that Plaintiffs have not established that he has information relevant to their Privacy Act claims. Opp. at 19. Leaving aside the fiction that Musk is merely an advisor to the President, *see* Pl.

10

Mem at 5-6,[8] Plaintiffs' proposed deposition covers three limited topics: (i) Musk's involvement in DOGE employees gaining access to OPM data systems, which bears directly on critical "who" and "why" questions; (ii) Musk's role and responsibilities at DOGE; and (iii) Musk's involvement with decisions made based on access to sensitive data, both of which bear directly on the "why." These topics are narrowly tailored to critical, unresolved factual issues.

As with most discovery requests, thorough responses may yield duplicative information, in which case the requests can be narrowed to avoid redundancy.

## IV.    **Plaintiffs Support Consolidation If This Motion is Granted in Full**

Plaintiffs believe that consolidation of a hearing on their motion for a preliminary injunction with a trial on the merits would be the most expeditious and economical way to resolve this case if the Court grants their motion for expedited discovery in full. The discovery process would give Defendants time to assemble any administrative record, though, as noted above, Plaintiffs expect that Defendants will argue there is no final agency action here and thus no administrative record. Plaintiffs oppose consolidation, however, if the Court denies any part of the discovery that they have requested, as Plaintiffs would be prejudiced in proceeding to trial without discovery to provide the necessary factual record. Pl. Mem. at 17.

---

[8] In another example of public admissions that contradict Defendants' representations in this case about Musk's role, during his March 4th address to Congress President Trump said: "To further combat inflation, we will not only be reducing the cost of energy, but will be ending the flagrant waste of taxpayer dollars. And to that end, I have created the brand new Department of Government Efficiency. DOGE. Perhaps you've heard of it. Perhaps. Which is headed by Elon Musk, who is in the gallery tonight . . . ."
https://www.nytimes.com/2025/03/04/us/politics/transcript-trump-speech-congress.html (last visited March 6, 2025). President Trump describing DOGE's purpose as "combat[ting] inflation" raises additional questions as to the legal justification for DOGE personnel's access to OPM records.

11

Dated: March 6, 2025                    Respectfully submitted,

*/s/ Rhett O. Millsaps II*
Rhett O. Millsaps II
Mark P. McKenna (admitted pro hac vice)
Christopher J. Sprigman
Mark A. Lemley (pro hac vice application pending)
LEX LUMINA LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
(646) 898-2055

F. Mario Trujillo (admitted pro hac vice)
Victoria Noble
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

Norman L. Eisen (admitted pro hac vice)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003

Subodh Chandra (pro hac vice application pending)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 W. 6th Street, Suite 400
Cleveland, OH  44113

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Reply Memorandum in Further Support of Plaintiffs' Motion for Expedited Discovery contains 3,495 words, calculated using Microsoft Word for Mac, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: March 6, 2025                     */s/ Rhett O. Millsaps II*
                                         Rhett O. Millsaps II