UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.,*<br><br>          Plaintiffs,<br><br>     v.<br><br>U.S. OFFICE OF PERSONNEL MANAGEMENT, *et al.*,<br><br>          Defendants. | No. 25 Civ. 1237 (DLC) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:   (212) 637-2695/2772
*Attorney for Defendants*

JEFFREY OESTERICHER
DAVID E. FARBER
*Assistant United States Attorneys*
     - Of Counsel -

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT.........................................................................................1

BACKGROUND ..............................................................................................................2

   I.   The United States DOGE Service and Related Executive Orders.......................2

   II.   Plaintiffs' Complaint and Procedural History ....................................................3

STANDARD OF REVIEW ...............................................................................................4

ARGUMENT ....................................................................................................................5

   I.   Plaintiffs Lack Article III Standing....................................................................5

      A.   Plaintiffs Fail to Establish a Cognizable Injury-in-Fact ...............................6

          1.   Plaintiffs Do Not Adequately Allege a Harm Similar to Intrusion Upon Seclusion... 7

          2.   Plaintiffs Do Not Allege a Harm Similar to Public Disclosure of Private Facts. ....... 8

          3.   Plaintiffs Have Not Plausibly Alleged a Risk of Future Harm. ................................. 9

      B.   Plaintiffs Fail to Establish Causation or Redressability.................................11

   II.   Plaintiffs' Claims Are Not Reviewable Under the APA.........................................12

      A.   Plaintiffs Have Not Identified the Requisite Final Agency Action...............13

      B.   Plaintiffs Have an Adequate, Alternative Remedy Under the Privacy Act..................16

   III.   Plaintiffs Have Not Plausibly Alleged a Violation of the Privacy Act...........................19

      A.   Plaintiffs Fail Plausibly to Allege that the "DOGE Team" Granted Access to OPM's Systems Were Not OPM Employees ...................................................................20

      B.   Plaintiffs Fail Plausibly to Allege that the OPM DOGE Team Did Not Have the Requisite Need for Access in the Performance of Their Duties ...........................................22

   IV.   Plaintiffs Fail to State an Ultra Vires Claim ...................................................24

   V.   Plaintiffs Fail to State Claims for Damages Under the Privacy Act.................................25

CONCLUSION.................................................................................................................26

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*ACLU v. Clapper*,
   785 F.3d 787 (2d Cir. 2015) ............................................................................ 9

*Am. Fed'n of Teachers v. Bessent*,
   No. 25 Civ. 430 (DLB), 2025 WL 582063 (D. Md. Feb. 24, 2025) ........................ 8

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011) ............................................................................ 5

*Arizona v. Biden*,
   31 F.4th 469 (6th Cir. 2022) .......................................................................... 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................... 4

*Bell Atlantic Corp v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................... 4

*Block v. Cmty. Nutrition Inst.*,
   467 U.S. 340 (1984) ..................................................................................... 17

*Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*,
   461 U.S. 273 (1983) ..................................................................................... 17

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) ..................................................................................... 16

*Carlin v. Davidson Fink LLP*,
   852 F.3d 207 (2d Cir. 2017) .......................................................................... 25

*Cell Assocs., Inc. v. NIH*,
   579 F.2d 1155 (9th Cir. 1978) ....................................................................... 19

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ..................................................................................... 13

*Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, New York*,
   98 F.4th 386 (2d Cir. 2024) ............................................................................ 5

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ........................................................................... 6, 11, 12

*Clark v. Hanley*,
   89 F.4th 78 (2d Cir. 2023) .............................................................................. 4

*Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. U.S. Fish & Wildlife Serv.*,
   No. 03 Civ. 508 (MCA)(LCS), 2005 WL 8164390 (D.N.M. Jan. 31, 2005) ........... 15

*Collins v. Yellen*,
  594 U.S. 220 (2021) ........................................................................................................ 23

*Commissiong v. HUD*,
  No. 21-556, 2022 WL 1715978 (2d Cir. May 27, 2022) ........................................ 16

*Conn. Parents Union v. Russell-Tucker*,
  8 F.4th 167 (2d Cir. 2021) ............................................................................................ 4

*Conyers v. U.S. Dep't of Veterans Affs.*,
  No. 16 Civ. 0013 (JFB)(SIL), 2018 WL 1089736 (E.D.N.Y. Feb. 26, 2018) ......................... 25

*DCH Reg'l Med. Ctr. v. Azar*,
  925 F.3d 503 (D.C. Cir. 2019) ...................................................................................... 24

*Dew v. United States*,
  192 F.3d 366 (2d Cir. 1999) .......................................................................................... 16

*Doe v. Chao*,
  435 F.3d 492 (4th Cir. 2006) ........................................................................................ 18

*Doe v. DOJ*,
  660 F. Supp. 2d 31 (D.D.C. 2009) ............................................................................... 23

*Doe v. OPM*,
  No. 25 Civ. 234 (RDM), 2025 WL 513268 (D.D.C. Feb. 17, 2025) .................... 10, 16

*Doe v. Stephens*,
  851 F.2d 1457 (D.C. Cir. 1988) .................................................................................... 18

*FAA v. Cooper*,
  566 U.S. 284 (2012)................................................................................................. 17, 25

*FDA v. Alliance for Hippocratic Med.*,
  602 U.S. 367 (2024)................................................................................................... 6, 11

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
  460 F.3d 13 (D.C. Cir. 2006) .................................................................................. 12, 14

*Giammatteo v. Newton*,
  452 F. App'x 24 (2d Cir. 2011) ...................................................................................... 4

*Hamilton v. Westchester Cnty.*,
  3 F.4th 86 (2d Cir. 2021)............................................................................................ 5, 22

*Hartz Mountain Corp. v. Dotson*,
  727 F.2d 1308 (D.C. Cir. 1984) .................................................................................... 24

*Hearst Radio, Inc. v. FCC*,
  167 F.2d 225 (D.C. Cir. 1948) ...................................................................................... 14

*Indep. Equip. Dealers Ass'n v. EPA*,
    372 F.3d 420 (D.C. Cir. 2004) ................................................................. 14

*Int'l Union, Sec., Police, & Fire Prof'ls v. U.S. Marshal's Serv.*,
    350 F.Supp.2d 522 (S.D.N.Y. 2004) ....................................................... 25

*L–7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ..................................................................... 5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................. 5

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) .......................................................................... 13, 15

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ..................................................................... 4

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) ................................................................................ 17

*Melendez v. City of New York*,
    16 F.4th 992 (2d Cir. 2021) ...................................................................... 5

*Mills v. Saks.com LLC*,
    No. 23 CIV. 10638 (ER), 2025 WL 34828 (S.D.N.Y. Jan. 6, 2025) ......... 7

*Murthy v. Missouri*,
    603 U.S. 43 (2024) .................................................................................. 11

*Nat'l Council of La Raza v. Gonzales*,
    468 F. Supp. 2d 429 (E.D.N.Y. 2007) ................................................... 10

*Nat'l Sec. Sys., Inc. v. Iola*,
    700 F.3d 65 (3d Cir. 2012) ..................................................................... 16

*New York v. U.S. Dep't of Def.*,
    913 F.3d 423 (4th Cir. 2019) .................................................................. 15

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ............................................................................ 13, 15

*NYCLU v. New York City Transit Auth.*,
    684 F.3d 286 (2d Cir. 2012) ..................................................................... 5

*Parks v. IRS*,
    618 F.2d 677 (10th Cir. 1980) ................................................................ 19

*Pearl River Union Free Sch. Dist. v. King*,
    214 F. Supp. 3d 241 (S.D.N.Y. 2016) .................................................... 13

*Philippeaux v. United States*,
   No. 10 Civ. 6143 (NRB), 2011 WL 4472064 (S.D.N.Y. Sept. 27, 2011) ................................. 25

*Poss v. Kern*,
   No. 23 Civ. 2199, 2024 WL 4286088 (D.D.C. Sept. 25, 2024) .............................................. 18

*Salazar v. King*,
   822 F.3d 61 (2d Cir. 2016) ................................................................................................ 13

*Salazar v. Nat'l Basketball Ass'n*,
   118 F.4th 533 (2d Cir. 2024) .............................................................................................. 8

*Santos v. Kimmel*,
   745 F. Supp. 3d 153 (S.D.N.Y. 2024) .................................................................................. 4

*Schneiter v. United States*,
   159 Fed. Cl. 356 (2022) ..................................................................................................... 11

*Soundboard Ass'n v. FTC*,
   888 F.3d 1261 (D.C. Cir. 2018) .......................................................................................... 14

*Spokeo v. Robins*,
   578 U.S. 330 (2016) ............................................................................................................ 6

*Sprecher v. Graber*,
   716 F.2d 968 (2d Cir. 1983) ............................................................................................... 16

*Sprint Commc'ns Co. v. APCC Servs, Inc.*,
   554 U.S. 269 (2008) ........................................................................................................... 11

*State v. Trump*,
   No. 25 Civ. 1144 (JAV), 2025 WL 573771 (S.D.N.Y. Feb. 21, 2025) .............................. 10, 24

*Sussman v. U.S. Marshal Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) .......................................................................................... 18

*Thomas v. City of New York*,
   No. 18 Civ. 2781 (DLC), 2018 WL 5282889 (S.D.N.Y. Oct. 24, 2018) ................................ 25

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................................ 4, 6, 9, 10

*Tripp v. DOD*,
   193 F. Supp. 2d 229 (D.D.C. 2002) .................................................................................... 18

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
   578 U.S. 590 (2016) ........................................................................................................... 13

*USPS v. Gregory*,
   534 U.S. 1 (2001) ............................................................................................................... 10

*Venetian Casino Resort, LLC v. EEOC*,
   530 F.3d 925 (D.C. Cir. 2008) ............................................................... 14

*Westcott v. McHugh*,
   39 F. Supp. 3d 21 (D.D.C. 2014) ......................................................... 18

*Yale New Haven Hosp. v. Becerra*,
   56 F.4th 9 (2d Cir. 2022) ....................................................................... 24

**Statutes**

31 U.S.C. § 1120(a)(1) ............................................................................ 23

5 U.S.C. § 3161 ......................................................................................... 2

5 U.S.C. § 552a ...................................................................................... 19

5 U.S.C. § 552a(b)(1) ........................................................................ 20, 24

5 U.S.C. § 552a(e)(10) ........................................................................... 16

5 U.S.C. § 552a(g) .......................................................................... 17, 18, 25

5 U.S.C. § 701(a)(2) ............................................................................... 16

5 U.S.C. § 704 ................................................................................ 12, 13, 16

Information Technology Modernization Centers of Excellence Program Act, Pub. L. 116-194,
   134 Stat. 981 (2020) .......................................................................... 23

National Defense Authorization Act for Fiscal Year 2018, Pub. L. 115-91, 131 Stat. 1587 ......... 23

**Other Authorities**

Executive Order 14,158, 90 Fed. Reg. 8,441 (Jan. 20, 2025) ....................... 2, 3, 26, 28

Executive Order 14,170, 90 Fed. Reg. 8,621 (Jan. 20, 2025) ......................... 3

Restatement (Second) of Torts § 652B (Am. Law Inst. 1977) ........................ 9

Defendants the U.S. Office of Personnel Management ("OPM"); Charles Ezell, in his official capacity as Acting Director of OPM; U.S. DOGE Service ("USDS" or "DOGE"); the Acting USDS Administrator; U.S. DOGE Temporary Service; and Elon Musk, in his official capacity as Director of USDS submit this Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint, ECF No. 1 ("Compl.").

## PRELIMINARY STATEMENT

Plaintiffs' Complaint asserts that OPM has granted non-governmental DOGE actors access to OPM's most sensitive data systems in violation of the Privacy Act. But those allegations are implausible, and contradicted by the very news reports which form the basis for the Complaint. Through their conclusory assertions and implausible allegations, Plaintiffs seek to improperly limit OPM's ability to manage its own internal affairs and to implement the Office of the President's policy priorities.

As a threshold matter, Plaintiffs lack standing as they have not suffered a cognizable Article III injury, and they fail to sufficiently allege causation or redressability. Plaintiffs' Complaint also lack subject matter jurisdiction because their Privacy Act-based claims are unreviewable under the APA, as Plaintiffs do not challenge any final agency action, and they have adequate, alternative remedies under the Privacy Act itself.

Moreover, even if the Court had jurisdiction to hear Plaintiffs' claims, the allegations in the Complaint also fail to state a claim for which relief may be granted. Plaintiffs fail to sufficiently allege any violation of the Privacy Act because their conclusory allegations that OPM granted non-government "DOGE agents" access to its data systems are not plausible. Moreover, Plaintiffs' allegations that the OPM employees who *were* granted access did not have the requisite need for the records in performance of their official duties are both incorrect and conclusory.

For much the same reasons, Plaintiffs' *ultra vires* claim and their direct Privacy Act claims fail as a matter of law. Plaintiffs' *ultra vires* claim is just a repackaging of their allegations that Defendants have violated the Privacy Act, which are insufficient to state a claim. And Plaintiffs' direct Privacy Act claims for damages should similarly be dismissed for failure to allege any plausible violation of the statute, as well as a lack of any nonconclusory allegation concerning pecuniary harm they have suffered as a result of the claimed violation.

For all of these reasons, Plaintiffs' Complaint should be dismissed.

## BACKGROUND

### I.    The United States DOGE Service and Related Executive Orders

On January 20, 2025, President Trump signed Executive Order 14,158, which directs changes to the previously established United States Digital Service in order to implement the President's agenda of "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology ("IT") systems." 90 Fed. Reg. 8,441, § 4 ("USDS E.O."). The USDS E.O. redesignated the United States Digital Service as the Department of Governmental Efficiency Service, or U.S. DOGE Service. *Id.* § 3(a). Similarly, it established a "U.S. DOGE Service Temporary Organization" within the Executive Office of the President pursuant to 5 U.S.C. § 3161, which will terminate on July 4, 2026. USDS E.O. § 3(b). Agency heads are required under the USDS E.O. to establish within their respective agencies a "DOGE team" of at least four employees, which may include Special Government Employees. *Id.* § 3(c).

The USDS E.O. directs USDS to collaborate with executive agencies to modernize the technology and software infrastructure of the federal government to increase efficiency and productivity as well as ensure data integrity. *Id.* § 4. To accomplish its objectives, the USDS E.O. directs USDS to work with relevant agency heads, and vice versa, to ensure USDS has "access to all unclassified agency records, software systems, and IT systems" to the "extent consistent with

law[.]" *Id.* § 4(b). At all times, the USDS E.O. instructs that USDS must "adhere to rigorous data protection standards." *Id.*

Executive Order 14,170, also issued on January 20, 2025, tasks the Director of OPM, among others, with developing a Federal Hiring Plan which, among other things, "integrate[s] modern technology to support the recruitment and selection process, including the use of data analytics to identify trends, gaps, and opportunities in hiring." 90 Fed. Reg. 8,621, § 2(b)(vi).

## II.    Plaintiffs' Complaint and Procedural History

Plaintiffs filed their Complaint in this matter on February 11, 2025. *See* ECF No. 1. The Complaint alleges that on January 20, 2025, OPM gave access to OPM's systems and records to DOGE and "DOGE's agents," in violation of the Privacy Act. Compl. ¶ 8. The Complaint includes five claims for relief against Defendants, all of which are premised on violations of the Privacy Act. Plaintiffs' First and Second Claims for Relief assert claims under the Privacy Act itself, *id.* ¶¶ 47-59, their Third and Fourth Claims for Relief assert claims under the APA that the DOGE Defendants' and OPM Defendants' actions violated the Privacy Act, *id.* ¶¶ 60-75, and their Fifth Claim for Relief asserts a claim that the DOGE Defendants' actions were *ultra vires*, *id.* ¶¶ 76-84.

On February 14, 2025, Plaintiffs filed a motion for a temporary restraining order ("TRO"), ECF No. 27, and on February 19, 2025, Defendants filed their opposition to the motion for a TRO, ECF No. 39. On February 23, 2025, Plaintiffs joined Defendants' request that the Court convert the TRO motion to one for a preliminary injunction. ECF No. 45 at 1. The Court subsequently set a briefing schedule for Plaintiffs' motion for expedited discovery and the Defendants' motion to dismiss. ECF No. 49. On March 7, 2025, the Court ordered the Defendants to produce the administrative record for the actions by OPM that was produced in the related Maryland Action (*Am. Fed'n of Teachers v. Bessent*, No. 25 Civ. 430 (D. Md.)), as well as any materials relating to

those OPM actions that may be produced in the Maryland Action, and otherwise denied Plaintiffs' request for discovery without prejudice to renewal. *See* Order, ECF No. 57, at 4-5.

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton,* 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113). To survive a Rule 12(b)(1) motion, the allegations in the proposed complaint must demonstrate, among other things, that the plaintiff possesses Article III standing to seek the relief requested. *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021). Because "standing is not dispensed in gross," Plaintiffs must "demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

To withstand dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider the "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken, as well as documents not expressly incorporated by reference in the complaint that are nevertheless integral to the complaint." *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023); *accord Santos v. Kimmel*, 745 F. Supp. 3d 153, 162 (S.D.N.Y. 2024) (Cote, J.).

"In determining if a claim is sufficiently plausible to withstand dismissal," a court generally "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the

plaintiffs." *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021) (citation omitted). And "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (citing *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

## ARGUMENT

### I.    Plaintiffs Lack Article III Standing

Plaintiffs fail to allege facts sufficient to confer standing. At its "irreducible constitutional minimum," Article III standing requires a plaintiff, as the party invoking the Court's jurisdiction, to establish three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, and not conjectural or hypothetical (2) a causal connection between the injury and defendants' challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

As organizations, the union Plaintiffs representing employees ("Plaintiff Unions") must demonstrate Article III standing either in their own right or as a representative of their members. *See NYCLU v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). Here, the Plaintiff Unions do not rely on an alleged injury to the organizations themselves but instead cite to the privacy interests of their members. Compl. ¶¶ 15-17. As a result, the Plaintiff Unions must demonstrate that their members would otherwise have standing to sue in their own right. *See, e.g., Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, New York*, 98 F.4th 386, 395 (2d Cir. 2024) (where no individual plaintiff has standing, organization's claim to representational standing also fails).

5

A.      **Plaintiffs Fail to Establish a Cognizable Injury-in-Fact**

To establish standing, Plaintiffs must allege that they have suffered an injury-in-fact—
"actual or imminent, not speculative" harm, "meaning that the injury must have already occurred
or be likely to occur soon." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024)
("*Alliance*"). If the injury has not come to pass, it must be "certainly impending"; "allegations of
possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).
And it must be "concrete—that is, real, and not abstract." *TransUnion*, 594 U.S. at 424 (citations
omitted). The Supreme Court has made clear that a statutory violation is not, by itself, a cognizable
injury. *See id*. at 426-27 ("under Article III, an injury in law is not an injury in fact"). Rather,
"[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may
sue that . . . defendant over that violation in federal court." *Id.* at 427 (emphasis in original). Thus,
Plaintiffs must show more than a statutory violation of the Privacy Act to establish a concrete harm
for purposes of standing.

In *TransUnion,* the Supreme Court held that to determine whether the concrete-harm
requirement has been met, "courts should assess whether the alleged injury to the plaintiff has a
'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in
American courts." *Id.* (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). "That inquiry asks
whether plaintiffs have identified a close historical or common-law analogue for their asserted
injury." *Id.* Concrete intangible harms include injuries such as "reputational harms, disclosure of
private information, and intrusion upon seclusion." *Id.*

1.  <u>Plaintiffs Do Not Adequately Allege a Harm Similar to Intrusion Upon Seclusion.</u>

Plaintiffs' claims are not similar to the common law tort of intrusion upon seclusion because they do not allege that the OPM DOGE team examined, reviewed, or otherwise "intruded" into their sensitive personal information.

"The intrusion upon seclusion tort, a type of invasion of privacy, declares that '[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" *Mills v. Saks.com LLC*, No. 23 CIV. 10638 (ER), 2025 WL 34828, at *5 (S.D.N.Y. Jan. 6, 2025) (emphasis omitted) (quoting Restatement (Second) of Torts § 652B (Am. Law Inst. 1977)). The tort requires "*interference* with the plaintiff's seclusion" that is "*substantial*." Restatement (Second) of Torts § 652B cmt. d (emphasis added). "Therefore, the tort is aimed at a violation or invasion into matters that a person would deem deeply private, personal, and confidential." *Mills*, 2025 WL 34828, at *5. The Restatement provides examples of the necessary "intrusion" such as *opening* private mail, *searching* safes or wallets, *examining* bank accounts, or compelling an *inspection* of private documents as illustrative of injuries considered an intrusion upon seclusion. Restatement (Second) of Torts § 652B cmt. b (emphasis added).  All of these examples involve more than mere access to records—they involve an actual "intrusion," such as examination or review of sensitive material.

Here, Plaintiffs have not alleged that DOGE affiliates actually examined or accessed any sensitive personnel records—only that OPM improperly *granted* them access to OPM's data systems. *See, e.g.,* Compl. ¶¶ 8 ("OPM Defendants gave unrestricted, wholesale access to OPM systems and records to DOGE Defendants and DOGE's agents."), 9-10, 29-30, 33-36. The mere granting of access to personal information in OPM data systems, without more, is not "substantial"

7

interference with Plaintiffs' seclusion that would be "highly offensive to the ordinary reasonable man." Restatement (Second) of Torts § 652B cmt. d.

In *American Federation of Teachers v. Bessent*, No. 25 Civ. 430 (DLB), 2025 WL 582063, at *6 (D. Md. Feb. 24, 2025), Judge Boardman held that OPM's grant of systems access to DOGE affiliates was sufficiently similar to the tort of intrusion upon seclusion. The Government respectfully submits that this holding is incorrect. Judge Boardman failed to identify any substantial "intrusion, physical or otherwise" by OPM's DOGE Team into plaintiffs' "private, personal, and confidential" data. Instead, Judge Boardman found that OPM's DOGE team "*could* use the information available to them to create a comprehensive picture of the plaintiffs' familial, professional, or financial affairs." *Id.* (emphasis added). But the tort of intrusion upon seclusion requires an *actual* intrusion, not the mere possibility of one. Here, Plaintiffs do not allege that any government employee examined, reviewed, or otherwise intruded into their personal and sensitive data. Accordingly, they have failed to allege a concrete injury akin to the common law tort of intrusion upon seclusion.

2.   Plaintiffs Do Not Allege a Harm Similar to Public Disclosure of Private Facts.

Because Plaintiffs' information has not been publicly disclosed to third parties, they similarly lack a "concrete" injury akin to the common law tort of public disclosure of private facts. *Cf. Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 541 (2d Cir. 2024) (an "intangible harm that readily qualifies as concrete is the public disclosure of private facts"). Plaintiffs do not plausibly allege that their personal information has been publicly disclosed to third parties outside of the government—only that OPM granted access to "DOGE actors," whom they claim, without support, "were not government employees at the time they demanded and received access" to OPM's systems. *See* Compl. ¶ 7. That assertion is both implausible and readily contradicted by the news reports on which the Complaint relies. *See infra* at 20-22. Moreover, Plaintiffs' citation in

their TRO motion (*See* Mem. of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order, ECF No. 28 ("Pls' Mem."), at 13), to *ACLU v. Clapper*, 785 F.3d 787 (2d Cir. 2015), is not to the contrary. There, the Second Circuit found plaintiffs' allegations that the government had engaged in the widespread seizure of phone records in violation of the Fourth Amendment sufficient to confer standing. *Id.* at 801. Here, Plaintiffs allege no such Fourth Amendment violation. As a result, Plaintiffs lack the requisite concrete injury necessary to confer standing.[1]

### 3. Plaintiffs Have Not Plausibly Alleged a Risk of Future Harm.

Plaintiffs have also asserted that they have standing due to exposure to a risk of future harm—either due to the risk of cyberattacks or future retaliation by DOGE affiliates. But this argument fares no better. To "establish a sufficient risk of future harm to support Article III standing," Plaintiffs must demonstrate a "sufficient likelihood" that OPM "would otherwise intentionally or accidentally release their information to third parties." *TransUnion,* 594 U.S. at 437-38. The Complaint fails to do so.

Plaintiffs' claimed harms amount to an allegation that intra-governmental access could subject their personal information "to new threats of hacking by criminals and foreign governments," Compl. ¶ 42, or that "disclosure of their identifying and other information could lead to retaliation from people who oppose their agency's work," *id.* ¶ 41. In support of their risk of future harm argument, Plaintiffs have alleged that "new access makes [OPM's] record vulnerable to other attackers," and point to "cybersecurity threats," including the hacking of OPM's databases a decade ago, *see* Pls' Mem. at 2, 10-11, 13, 21; *see also* Compl. ¶¶ 31-32, 42-

---

[1] Plaintiffs' argument that they are harmed due to a violation of their "reasonable expectation" that their personal information will be securely held "in accordance with governing law," Pls' Mem. at 20, is simply a repackaged allegation that Defendants have violated the Privacy Act. The Supreme Court's decision in *TransUnion* forecloses Plaintiffs' standing arguments based on a violation of the Privacy Act or their reasonable expectations of privacy, absent an actual intrusion or public disclosure.

43. But the allegation that OPM's systems are now more vulnerable to hacking by malevolent actors simply because new OPM employees have access to OPM's records systems is entirely conclusory and speculative. *See, e.g., Doe v. OPM*, No. 25 Civ. 234 (RDM), 2025 WL 513268, at *6 (D.D.C. Feb. 17, 2025) ("Plaintiffs must do more than point to a decade-old failure to protect sensitive data; they must show that OPM computer systems [accessed by new OPM employees] are at imminent risk of cyberattack and that this risk would be mitigated were the agency required" to implement measures mandated by the Privacy Act); *see also Nat'l Council of La Raza v. Gonzales*, 468 F. Supp. 2d 429, 444 (E.D.N.Y. 2007) ("[S]peculation that . . . some unauthorized party may access plaintiffs' [information stored in a database] in violation of a plaintiff members' privacy right does not satisfy the requirement that plaintiffs identify an 'actual or imminent,' 'concrete and particularized' injury."); *cf. State v. Trump,* No. 25 Civ. 1144 (JAV), 2025 WL 573771, at *12 (S.D.N.Y. Feb. 21, 2025) (finding a sufficiently imminent risk of future harm where, among other things, "a member of the Treasury DOGE Team sent emails to government employees outside of the Treasury Department"). At bottom, Plaintiffs fail to explain how granting access to a limited number of new federal employees somehow makes exposure of their sensitive data to third parties more likely. Accordingly, because the Complaint does not plausibly allege "a serious likelihood of disclosure, [the Court] cannot simply presume a material risk of concrete harm." *TransUnion*, 594 U.S. at 438 (internal quotation and citation omitted).

Plaintiffs' assertion that the granting of access to sensitive OPM information "could lead to retaliation from people who oppose their agency's work"—*i.e.*, by DOGE itself—is similarly unavailing. *See* Compl. ¶ 41; Pls' Mem. at 20-21. As an initial matter, "a presumption of regularity attaches to the actions of Government agencies," and officials, *USPS v. Gregory*, 534 U.S. 1, 10 (2001), and "a plaintiff who contends that agency officials acted [or will act] in bad faith must

overcome [that] presumption of regularity in agency conduct." *Schneiter v. United States*, 159 Fed. Cl. 356, 376 (2022) (citation omitted). Here, Plaintiffs fail plausibly to allege that "DOGE agents," or anyone for that matter, are likely to engage in retaliation against them. In any event, their subjective "fears of hypothetical future harm that is not certainly impending," are insufficient to confer standing. *Clapper*, 568 U.S. at 416.

### B.    Plaintiffs Fail to Establish Causation or Redressability

Plaintiffs also lack standing because they fail to establish the necessary elements of causation and redressability—that any alleged harm or risk of future harm is traceable to the OPM DOGE team having access to OPM's records systems. *See Alliance*, 602 U.S. at 380-81 ("The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" (quoting *Sprint Commc'ns Co. v. APCC Servs, Inc.*, 554 U.S. 269, 288 (2008))). Plaintiffs do not sufficiently allege that any purported risk of future harm due to the potential compromise of their sensitive personal information is fairly traceable to the challenged conduct of Defendants.

In particular, Plaintiffs do not allege, and indeed cannot demonstrate, that intra-governmental access by OPM's DOGE team will lead to the disclosure of personal information to extra-governmental actors or allow unspecified DOGE agents to engage in retaliation against them. For Plaintiffs' "security risk" theory to be correct, they would have to plausibly allege: (1) that unauthorized intra-governmental access to OPM's records systems is likely to materially increase the risk of hacking, notwithstanding OPM's existing internal security controls and mitigation efforts; (2) that there will be a cybersecurity incident that will compromise OPM's information; (3) that the individual Plaintiffs' information specifically will be compromised; and (4) that compromise will cause the Plaintiffs cognizable harm. This "chain of causation is simply too attenuated." *Alliance*, 602 U.S. at 392; *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) ("The one-step-

removed, anticipatory nature of [plaintiffs'] alleged injuries" fails to satisfy standing), *remanded*, 114 F.4th 406 (5th Cir. 2024). Similarly, under Plaintiff's "risk of retaliation" theory, they would have to demonstrate that (1) despite OPM's existing internal security controls and mitigation efforts, Plaintiffs' sensitive personal information contained in OPM's records systems is likely to be disclosed outside of OPM to non-OPM DOGE employees; and (2) that unspecified non-OPM DOGE employees are willing, able, and likely to target them for retaliation based on that sensitive personal information. Relying on such a "speculative chain of possibilities[, however,] does not establish that injury based on potential future [action] is certainly impending or is fairly traceable." *Clapper*, 568 U.S. at 414.

Indeed, Plaintiffs' claims that access to OPM information by a limited number of OPM employees will likely result in the information being compromised by third-party bad actors or disclosed to other, unauthorized government employees is not plausible and wholly conclusory. Plaintiffs' unsupported allegations that Defendants' actions *might* put their information at increased risk or *could* lead to retaliation is insufficient to confer standing.

## II. Plaintiffs' Claims Are Not Reviewable Under the APA

Plaintiff's claims under the APA for violations of the Privacy Act (Third and Fourth Claims) fail because they have not alleged the requisite final agency action and they have other adequate alternative remedies. The APA does not permit "judicial review over everything done by an administrative agency." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006) (quotation omitted). Rather, the cause of action that statute provides, 5 U.S.C. § 704, is limited in two ways material here. Agency action must be "final" to be reviewable. *Id.* And if there is an adequate alternative remedy, including a distinct statutory cause of action, the plaintiff must sue under the alternative instead. *See id.* Because Plaintiffs' claims do not satisfy either condition, they lack a cause of action under the APA.

### A.        Plaintiffs Have Not Identified the Requisite Final Agency Action

APA review is limited to "final agency action." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004) (quoting 5 U.S.C. § 704) ("*SUWA*"). Agency action is final only when it (1) "mark[s] the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). "The second prong will be satisfied where the agency's action 'gives rise to direct and appreciable legal consequences.'" *Pearl River Union Free Sch. Dist. v. King*, 214 F. Supp. 3d 241, 258 (S.D.N.Y. 2016) (quoting *Hawkes*, 578 U.S. at 598) (internal quotation and citation omitted). "The Supreme Court has interpreted the finality element in a pragmatic way." *Salazar v. King*, 822 F.3d 61, 82 (2d Cir. 2016) (internal quotation and citation omitted). Day-to-day operations of federal agencies are generally not considered final agency action, and thus not subject to APA review. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990) (plaintiffs "cannot demand a general judicial review of the [agency]'s day-to-day operations" under the APA).

Plaintiffs attempt to meet this requirement by arguing that "[a] decision by an agency to 'disclose' a plaintiff['s] records is a 'reviewable agency action' that the court can enjoin." Pls' Mem. at 18 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 318-19 (1979)). But as Plaintiffs concede, the sole case they identify involved public disclosure pursuant to a statutory process (FOIA) that specifically provides a mechanism for reviewing agency disclosure decisions *to the public*—not intra-agency access and disclosure consistent with ordinary agency operations. *See Chrysler Corp.*, 441 U.S. at 318.

Plaintiffs fail to articulate how providing a new employee with system access necessary to her functions "consummat[es]" OPM's decisionmaking process in any formal sense. *Hawkes Co.*, 578 U.S. at 597. And "informal" agency actions, as a general matter, have not been considered

"final" under *Bennett*'s first prong. *See Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (citation omitted). Courts have long recognized that this definition of agency action "is not so all-encompassing as to authorize us to exercise 'judicial review [over] everything done by an administrative agency.'" *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (quoting *Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948)). For example, courts do not oversee agency training programs, *see Jones v. U.S. Secret Serv.*, 701 F. Supp. 3d 4, 17 (D.D.C. 2023), or "the common business of managing government programs," *Fund for Animals*, 460 F.3d at 20. Put another way, judicial review under the APA does not reach the agency's "workaday" dealings. *Indep. Equip. Dealers Ass'n*, 372 F.3d at 427. Nor is it apparent how the decision to grant new employees access to systems and the data therein has "direct and appreciable legal consequences" for anyone at all. *Cf. Arizona v. Biden*, 31 F.4th 469, 478 (6th Cir. 2022) ("training [and] reprioritization of employees" do not amount to direct and appreciable legal consequences). An agency's decision to give an employee *access* to its data systems is not itself agency action with "direct and appreciable legal consequences," even if the employee might conceivably use such systems to effect final agency action (*e.g.*, in approving or denying benefits, or formulating plans for reductions in force) at some later date.  Plaintiffs are foreclosed from utilizing APA review of an agency's access decisions under the Privacy Act as a roundabout challenge to the Executive's policy priorities with which they disagree.

This case is far afield from an agency decision to affirmatively adopt a policy permitting the disclosure of confidential information. *Cf. Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 931 (D.C. Cir. 2008) ("Adopting a policy of permitting employees to disclose confidential information without notice is surely a 'consummation of the agency's decisionmaking process, and one by which [the submitter's] rights [and the agency's] obligations have been determined.'"

(citation omitted)). Indeed, Plaintiffs do not allege that OPM has adopted a broad policy of allowing non-OPM employees unfettered access to its data systems—instead, they challenge decisions to grant (or remove) access to specific individuals. *See* Compl. ¶¶ 8, 29, 34. OPM's discretionary decisions regarding which of its own employees are given access to its own internal records systems are precisely the day-to-day operations of governmental agencies that are not subject to APA review. *See SUWA*, 542 U.S. 66-67 (limitation of APA review to final agency actions prevents courts from being "inject[ed] . . . into day-to-day agency management"); *see also Lujan,* 497 U.S. at 899; *New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (APA's final agency action requirement forecloses "day-to-day oversight of the executive's administrative practices"); *Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. U.S. Fish & Wildlife Serv.*, No. 03 Civ. 508 (MCA)(LCS), 2005 WL 8164390, at *21 (D.N.M. Jan. 31, 2005) (judicial review of "ongoing and frequently changing daily management activities would render the agency's decision-making process intractable to the point of absurdity"). Were it otherwise, courts could be called upon to review *each and every* grant of system access to a federal employee—transforming federal judges into government agencies' Human Resources and Chief Information Officers. And to the extent Plaintiffs challenge OPM's grant of systems access to any employees implementing the President's priorities in the USDS E.O. as not "justified," Pls' Mem. at 15, such a "broad programmatic attack" similarly falls outside the ambit of judicial review under the APA. *SUWA*, 542 U.S. at 64.

Plaintiffs' assertion that OPM violated the Privacy Act by providing access to its own employees without properly "vetting" these new employees or establishing appropriate safeguards to ensure the security and confidentiality of OPM's records, Compl. ¶¶ 9, 57-58, is similarly beyond the scope of APA review. The statute's requirement to "establish *appropriate*

administrative, technical, and physical safeguards to insure the security and confidentiality of records," 5 U.S.C. § 552a(e)(10) (emphasis added), commits the determination of which measures to adopt to agency discretion by law, and thus places those measures outside the scope of review under the APA. *See* 5 U.S.C. § 701(a)(2) (no review under the APA where "agency action is committed to agency discretion by law"); *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 101 (3d Cir. 2012) ("[T]he term "appropriate" [] confer[s] discretion."). In the end, "it is not the job of the federal courts to police the security of the information systems in the executive branch," *Doe v. OPM*, 2025 WL 513268, at *5.

### B.    Plaintiffs Have an Adequate, Alternative Remedy Under the Privacy Act

Plaintiffs' APA claims fail for the additional, independent reason that the APA does not grant a cause of action where there is "[an]other adequate remedy in any court." 5 U.S.C. § 704. This statutory provision "makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). "The APA does not waive sovereign immunity 'where a matter is statutorily committed to agency discretion or where another statute provides a form of relief which is expressly or impliedly exclusive.'" *Dew v. United States*, 192 F.3d 366, 371 (2d Cir. 1999) (quoting *Sprecher v. Graber*, 716 F.2d 968, 974 (2d Cir. 1983)); *see also Commissiong v. HUD*, No. 21-556, 2022 WL 1715978, at *1 (2d Cir. May 27, 2022) ("The APA permits judicial review of federal agency action only where 'there is no other adequate remedy in a court.'" (quoting 5 U.S.C. § 704)). Stated differently, where an agency action is subject to review in some manner under a statutory review scheme, then the general rule is that action must be reviewed within the confines of that scheme. The mode of review established by the statutory review scheme is presumed exclusive. This is true even where a statutory review scheme only provides for review of issues by certain parties; other parties are presumptively precluded from obtaining review of

those issues under the APA. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984) ("[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded."); *see also Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012) ("'[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy'—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." (quoting *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 n.22 (1983)).

That is the case here. The Privacy Act establishes "a comprehensive and detailed set of requirements" for federal agencies that maintain systems of records containing individuals' personal information, *FAA v. Cooper*, 566 U.S. 284, 287 (2012), and authorizes adversely affected individuals to bring suit for violations of those requirements, 5 U.S.C. § 552a(g)(1)(D). Relief under the Privacy Act is carefully circumscribed. Civil remedies are available—and thus the United States' sovereign immunity has been waived—in four circumstances: (1) when the agency "makes a determination . . . not to amend an individual's record in accordance with his request," (an "Amendment Action"), 5 U.S.C. § 552a(g)(1)(A), (2) when the agency refuses to comply with an individual's request for access to her records, (an "Access Action"), *id.* § 552a(g)(1)(B), (3), when the agency fails to maintain an individual's records "with such accuracy, relevance, timeliness, and completeness" as is necessary for a government action and "consequently a determination is made which is adverse to the individual," (a "Benefits Action"), *id.* § 552a(g)(1)(C), or (4) where the government "fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual," (an "Other Action"), *id.* § 552a(g)(1)(D). For Benefits Actions or Other Actions, a plaintiff may be entitled to "actual

damages sustained by the individual as a result of the refusal or failure," subject to a $1,000 statutory minimum, but only if the "agency acted in a manner which was intentional or willful" and if that plaintiff could prove "actual damages," which is "limited to proven pecuniary or economic harm." *Cooper*, 566 U.S. at 291, 299. Indeed, Plaintiffs have asserted such damages claims in their own complaint. *See* Compl. ¶¶ 47-59.

Beyond these monetary damages, the Act allows for injunctive relief in only two narrow circumstances: (1) to order an agency to amend inaccurate, incomplete, irrelevant, or untimely records of an individual, 5 U.S.C. § 552a(g)(1)(A), (g)(2)(A); and (2) to order an agency to allow an individual access to his records, *id.* § 552a(g)(1)(B), (g)(3)(A). Injunctive relief, as various courts have recognized, is not available for any other situation arising out of the Privacy Act. *See, e.g., Sussman v. U.S. Marshal Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) ("We have held that only monetary damages, not declaratory or injunctive relief, are available to § 552a(g)(1)(D) plaintiffs . . . ." (citing *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988))); *Doe v. Chao*, 435 F.3d 492, 504 (4th Cir. 2006) ("[S]ubsection (g)(1)(D) of the Privacy Act does not allow courts to grant injunctive or declaratory relief." (collecting cases)).

Given the Privacy Act's comprehensive remedial scheme, courts have repeatedly recognized that "a plaintiff cannot bring an APA claim to obtain relief for an alleged Privacy Act violation." *Westcott v. McHugh*, 39 F. Supp. 3d 21, 33 (D.D.C. 2014); *see also Tripp v. DOD*, 193 F. Supp. 2d 229, 238 (D.D.C. 2002); *Poss v. Kern*, No. 23 Civ. 2199, 2024 WL 4286088, at *6 (D.D.C. Sept. 25, 2024) (citing cases). That is consistent with the principle that "[w]here [a] 'statute provides certain types of equitable relief but not others, it is not proper to imply a broad

right to injunctive relief.'" *Parks v. IRS*, 618 F.2d 677, 684 (10th Cir. 1980)[2] (citing *Cell Assocs., Inc. v. NIH*, 579 F.2d 1155, 1161-62 (9th Cir. 1978)). This is especially true with respect to the Privacy Act because Congress "link[ed] particular violations of the Act to particular remedies in a specific and detailed manner[,]" which "points to a conclusion that Congress did not intend to authorize the issuance of [other] injunctions." *Cell Assocs.*, 579 F.2d at 1158-59.

Indeed, as the Ninth Circuit concluded in *Cell Associates*, were injunctive relief available for violations of the Privacy Act generally, "the detailed remedial scheme adopted by Congress would make little sense. We think it unlikely that Congress would have gone to the trouble of authorizing equitable relief for two forms of agency misconduct and monetary relief for all other forms if it had intended to make injunctions available across the board." *Id.* at 1160. Plaintiffs' efforts to obtain an agency-wide injunction on information access by channeling Privacy Act claims through the APA would be an end-run around these common-sense principles and should be rejected.

## III.    Plaintiffs Have Not Plausibly Alleged a Violation of the Privacy Act

Even assuming an agency's compliance with the Privacy Act is reviewable under the APA (it is not), Plaintiffs have not plausibly alleged that Defendants have committed violations of the Act.[3] The Privacy Act, 5 U.S.C. § 552a, applies to "disclosures" of certain types of protectable

---

[2] In *Parks v. IRS,* the Court noted that the government defendants could not rely on an executive order promoting savings bond programs to show that disclosure of employees' nonparticipation in savings bond programs contained in personnel files "was necessary to the performance of their duties," in light of the fact that "Congress expressly held out nonparticipation in savings bond programs as an example of information not needed in the performance of federal employees' regular duties." 618 F.2d at 681 & n.1. In contrast, there is no congressional pronouncement that employees' access to agency data systems for purposes of their modernization is not necessary to the performance of their duties. Indeed, Congress has repeatedly encouraged the modernization of the government's information technology systems. *See infra* at n.6.

[3] The Complaint's unsupported assertions that Defendants have and are continuing to violate the Privacy Act are legal conclusions under the guise of factual allegations and should be disregarded.

records stored by an agency. *See id.* § 552a(a).[4] The statute allows disclosure of records within a system of records "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). Plaintiffs offer no plausible factual allegations that: (1) the "DOGE agents" given access to OPM records systems were not employees of OPM; or (2) the "DOGE agents" granted access did not have the requisite need for the agency record in furtherance of their official duties. Rather, Plaintiffs' claimed Privacy Act violations rest on the unsupported premise—contradicted by the materials they cite in their complaint—that the individuals granted access to OPM's record systems who are advancing the President's priorities set forth in the USDS E.O. are *not* employees of that agency. Accordingly, Plaintiffs fail to state a claim upon which relief may be granted.

### A.  Plaintiffs Fail Plausibly to Allege that the "DOGE Team" Granted Access to OPM's Systems Were Not OPM Employees

Plaintiffs allege "on information and belief," that the "DOGE actors were not government employees at the time they demanded and received access to the OPM computer networks

---

See, e.g., Compl. ¶¶ 8 ("In violation of the Privacy Act, on or about January 20, 2025, OPM Defendants gave unrestricted, wholesale access to OPM systems and records to DOGE Defendants and DOGE's agents."), 46 ("On information and belief, OPM Defendants continue to disclose Plaintiffs' and their members' personal information to DOGE Defendants in ongoing violation of the Privacy Act.").

[4] The Complaint also fails to plausibly allege that any sensitive records were actually disclosed—i.e., viewed—within the meaning of the Privacy Act. *See, e.g., Wrocklage v. DHS*, 769 F.3d 1363, 1369 (Fed. Cir. 2014) (disclosure under the Privacy Act "require[es] not just transmission, but actual viewing or imminent viewing by another"); *Luster v. Vilsack*, 667 F.3d 1089, 1098 (10th Cir. 2011) (possibility that record might be revealed does not constitute "disclosure" under the Privacy Act); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 28-29 (D.D.C. 2014); 5 C.F.R. § 297.102 ("Disclosure means providing *personal review* of a record, or a copy thereof, to someone other than the data subject or the data subject's authorized representative, parent, or legal guardian." (emphasis added)); *but see* OMB Guidelines, 40 Fed. Reg. 28948, 28953 (July 9, 1975) ("A disclosure may be either the transfer of a record or the granting of access to a record.").

containing Plaintiffs' and their members' personal information." Compl. ¶ 7. But that assertion is not only wholly unsupported, it is also contradicted by the very news articles and other materials they cite in their Complaint. Executive Order 14,158, "Establishing and Implementing the President's "Department of Government Efficiency," to which Plaintiffs cite, Compl. ¶ 3, directed Agency Heads (including OPM's acting director) to establish "DOGE Teams" consisting of employees "within their respective Agencies." *Id*. And the Washington Post article on which Plaintiffs principally rely states that it was the "DOGE team"—which consists of OPM agency employees—that was granted access to OPM data systems. *See, e.g.,* Compl. ¶¶ 29 ("The *DOGE team*'s demand for access to OPM files and networks . . ." (quoting Washington Post article)), 31 ("The data that the *DOGE team* can access . . ." (quoting Washington Post article)).[5] Moreover, as Plaintiffs' own Complaint acknowledges, this same Washington Post article notes that the "Trump administration 'has suggested that members of the DOGE team have the authority to review sensitive government files.'" *Id.* ¶ 33 (quoting Washington Post article). Another article cited in Plaintiff's complaint, Compl. ¶ 30 n.6 and ECF No. 37-14, refers to the individuals granted access at OPM as "[s]everal of Elon Musk's associates *installed at the Office of Personnel Management* (OPM)." Caleb Ecarma et al., "Musk associates given unfettered access to private data of government employees," Musk Watch (Feb. 3, 2025), *available at* https://www.muskwatch.com/p/musk-associates-given-unfettered (emphasis added). Indeed, none of the articles cited in the Complaint claims that the members of the DOGE team given access to OPM's systems were not OPM employees.

---

[5] The Washington Post article cited in the Complaint, and filed at ECF No. 37-3, is "Musk's DOGE Agents Access Sensitive Personnel Data, Alarming Security Officials," Washington Post (Feb. 6, 2025), *available at* https://www.washingtonpost.com/national-security/2025/02/06/elon-musk-doge-accesspersonnel-data-opm-security/.

Despite being contradicted by the very public reporting on which they rely, Plaintiffs make the entirely speculative and unsupported claim that these "DOGE actors were not government employees." Compl. ¶ 7. Simply put, Plaintiffs' allegations that OPM granted individuals who were not even federal employees—let alone not employees of OPM—access to its sensitive data systems is not plausible and should not be accepted as true.

### B. Plaintiffs Fail Plausibly to Allege that the OPM DOGE Team Did Not Have the Requisite Need for Access in the Performance of Their Duties

Plaintiffs' allegations that the OPM DOGE team lacked "a lawful and legitimate need for such access," Compl. ¶¶ 10, 37, 49, to OPM's data systems is merely a legal conclusion couched as a factual allegation, which the Court should properly disregard. *See Hamilton*, 3 F.4th at 91 (a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations"). Moreover, the claim that the OPM DOGE team lacks the requisite need-to-know under the Privacy Act is flatly contradicted by the USDS Executive Order.

 Executive Order 14,158 directs all agencies, including OPM, to assemble DOGE teams tasked with implementing the President's priorities, including "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems." 90 Fed. Reg. 8,441, §§ 3(c), 4; *see also* Compl. ¶ 5 ("The Executive Order directs the USDS Administrator to 'work with Agency Heads to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization.'"). And the Executive Order directs that DOGE teams be provided with "full and prompt access to all unclassified agency records, software systems, and IT systems" to perform those duties. 90 Fed. Reg. 8,441 § 4. Accordingly, the OPM DOGE team had the requisite need for access to OPM's records systems to execute the directive to modernize those systems pursuant to the USDS E.O., as well as to engage in mandated technology-based and data-driven workplace

reforms pursuant to Executive Order 14,170. *Cf.* Mem. Op. and Order (ECF No. 34), *AFL-CIO v. DOL*, No. 25 Civ. 339, at 3-4, 8 (D.D.C. Feb. 14, 2025) (federal employees carrying out DOGE's mission pursuant to the USDS E.O. have a need for access to agency records in the performance of their duties under the Privacy Act).

"The need to know exemption is not limited only to officers and employees within a certain office within an agency rather than to officers and employees of the entire agency." *Doe v. DOJ*, 660 F. Supp. 2d 31, 46 (D.D.C. 2009) (internal quotation and citation omitted). Furthermore, OPM's granting of access to its record systems to new "types" of employees in furtherance of the policies articulated in the President's Executive Orders is clearly a justifiable reason for access to these records—and access to such records was specifically authorized by the President. *Cf. Collins v. Yellen*, 594 U.S. 220, 252 (2021) (emphasizing that "because the President, unlike agency officials, is elected" Presidential control "is essential to subject Executive Branch actions to a degree of electoral accountability").[6] Although the President's policy choices may not be Plaintiffs', that alone cannot form the basis to invalidate their implementation. Accordingly, Plaintiffs fail to plausibly allege that the OPM DOGE team lacked the required need to know under the Privacy Act.

---

[6] The relevant employees' need for access to these systems to further the priorities of the USDS E.O. also comports with legislative mandates to modernize the federal government's information technology systems. *See, e.g.,* 31 U.S.C. § 1120(a)(1) (requiring "agencies to develop priority goals to improve the performance and management of the Federal Government," including "information technology management"); National Defense Authorization Act for Fiscal Year 2018, Pub. L. 115-91, 131 Stat. 1587 (authorizing agencies to establish "information system technology modernization and working capital fund[s]" to be used "to improve, retire, or replace existing information technology systems in the covered agency to enhance cybersecurity and to improve efficiency and effectiveness"); Information Technology Modernization Centers of Excellence Program Act, Pub. L. 116-194, 134 Stat. 981 (2020) (agencies required to develop plans "encouraging the modernization of information technology used by an executive agency and how a customer interacts with an executive agency").

**IV.    Plaintiffs Fail to State an *Ultra Vires* Claim**

Plaintiffs' *ultra vires* claim (Fifth Claim) should similarly be dismissed. An *ultra vires* claim "is only available in the extremely limited circumstance when three requirements are met: (i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Yale New Haven Hosp. v. Becerra*, 56 F.4th 9, 26-27 (2d Cir. 2022) (cleaned up). An *ultra vires* claim has been referred to as "essentially a Hail Mary pass," *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (citation omitted), because of its "extraordinarily narrow" scope, *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1312 (D.C. Cir. 1984).

Here, Plaintiffs have already conceded that their *ultra vires* claim is coextensive with their alleged violations of the Privacy Act. *See* Pls' Mem. at 19. Plaintiffs allege that the DOGE Defendants are not permitted by law "to access or administer OPM systems," Compl. ¶ 82, but Plaintiffs do not plausibly allege that the DOGE team granted access to OPM's systems were *not* employees of OPM, *see supra* at 20-22. And the Privacy Act's exemption permitting agency employees to have access to such records "in the performance of their duties," 5 U.S.C. § 552a(b)(1), does not "so clearly prohibit" the OPM DOGE team's access to OPM's data systems "that it rises to the extraordinary level of an *ultra vires* violation," *State v. Trump,* 2025 WL 573771, at *25. As a result, Plaintiffs' claim for *ultra vires* actions by the DOGE Defendants should be dismissed.

### V.    Plaintiffs Fail to State Claims for Damages Under the Privacy Act

Plaintiffs similarly fail to state claims for direct violations of the Privacy Act (First and Second Claims). As outlined above, Plaintiffs' direct Privacy Act claims are "Other Actions"—premised on the purported failure by the agency "to comply with any other provision" of the Privacy Act. *See* 5 U.S.C. § 552a(g)(1)(D).

"To state a claim under the Privacy Act, a plaintiff must show that: '(1) the information at issue is a record contained within a system of records; (2) the agency violated the Act with respect to that record; (3) the disclosure had an adverse effect on the plaintiff; and (4) the violation was willful or intentional.'" *Philippeaux v. United States*, No. 10 Civ. 6143 (NRB), 2011 WL 4472064, at *8 (S.D.N.Y. Sept. 27, 2011) (quoting *Int'l Union, Sec., Police, & Fire Prof'ls v. U.S. Marshal's Serv.*, 350 F.Supp.2d 522, 528 (S.D.N.Y. 2004)). The "adverse effect" element requires an allegation of "pecuniary harm"—i.e., money damages. *Conyers v. U.S. Dep't of Veterans Affs.*, No. 16 Civ. 0013 (JFB)(SIL), 2018 WL 1089736, at *3 (E.D.N.Y. Feb. 26, 2018) (citing *FAA v. Cooper*, 566 U.S. at 303-04). Plaintiffs' assertion that they "and their members have sustained and will continue to sustain actual damages and pecuniary losses," Compl. ¶ 53, is conclusory and simply a threadbare recital of required element of the cause of action. *See Thomas v. City of New York*, No. 18 Civ. 2781 (DLC), 2018 WL 5282889, at *2 (S.D.N.Y. Oct. 24, 2018) (Cote, J.) (on a motion to dismiss, a complaint's "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (quoting *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017))). Furthermore, they have failed to plausibly allege that Defendants violated the Privacy Act. *See supra* at 19-23. Accordingly, their Privacy Act claims should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

Dated: New York, New York
   March 14, 2025

          Respectfully submitted,

          MATTHEW PODOLSKY
          Acting United States Attorney for the
          Southern District of New York
          *Attorney for Defendants*

    By:  */s/ David E. Farber*
          JEFFREY OESTERICHER
          DAVID E. FARBER
          Assistant United States Attorneys
          86 Chambers Street, 3rd Floor
          New York, New York 10007
          Tel: (212) 637-2695/2772

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 8,344 words.

*/s/ David E. Farber*
Assistant United States Attorney