UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*,

Plaintiffs,

v.

U.S. OFFICE OF PERSONNEL MANAGEMENT, *et al.*,

Defendants.

No. 25 Civ. 1237 (DLC)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2695/2772
*Attorney for Defendants*

JEFFREY OESTERICHER
DAVID E. FARBER
*Assistant United States Attorneys*
- Of Counsel -

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. Plaintiffs Lack Article III Standing .......... 2

II. Plaintiffs Fail to State Privacy Act or Ultra Vires Claims .......... 5

III. Plaintiffs' APA Claims Should Be Dismissed .......... 6

A. Plaintiffs' APA Claims Are Not Reviewable .......... 6

B. Plaintiffs Have Not Plausibly Alleged Underlying Privacy Act Violations .......... 8

IV. Plaintiffs' Request for Leave to Amend Should Be Denied .......... 11

CONCLUSION .......... 12

**TABLE OF AUTHORITIES**

**Cases** **Pages(s)**

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ..... 4

*Bohnak v. Marsh & McLennan Cos., Inc.*,
79 F.4th 276 (2d Cir. 2023) ..... 4

*Calltrol Corp. v. LoxySoft AB*,
No. 18 Civ. 9026 (NSR), 2021 WL 5967888 (S.D.N.Y. Dec. 16, 2021) ..... 9

*DCH Reg'l Med. Ctr. v. Azar*,
925 F.3d 503 (D.C. Cir. 2019) ..... 6

*Doe v. Chao*,
435 F.3d 492 (4th Cir. 2006) ..... 5

*Doe v. Stephens*,
851 F.2d 1457 (D.C. Cir. 1988) ..... 5

*Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*,
436 F. Supp. 3d 754 (S.D.N.Y. 2020) ..... 11

*Haase v. Sessions*,
893 F.2d 370 (D.C. Cir. 1990) ..... 5

*Kiryas Joel All. v. Village of Kiryas Joel*,
No. 11 Civ. 3982 (JSR), 2011 WL 5995075 (S.D.N.Y. Nov. 29, 2011) ..... 9

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ..... 9

*New York v. U.S. Dep't of Def.*,
913 F.3d 423 (4th Cir. 2019) ..... 7

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ..... 7

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) ..... 3

*Sussman v. U.S. Marshals Serv.*,
494 F.3d 1106 (D.C. Cir. 2007) ..... 5

*Sutton ex rel. Rose v. Wachovia Sec., LLC*,
208 F. App'x 27 (2d Cir. 2006) ..... 11

*Thomas v. City of New York*,
No. 18 Civ. 2781 (DLC), 2018 WL 5282889 (S.D.N.Y. Oct. 24, 2018) ..... 2

*Town and Country Adult Living, Inc. v. Village/Town of Mt. Kisco*,
No. 17 Civ. 8586 (CS), 2019 WL 1368560 (S.D.N.Y. Mar. 26, 2019) ........ 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 4

*United States v. John Doe, Inc. I*,
481 U.S. 102 (1987) ........ 9

*Wabun-Inini v. Sessions*,
900 F.2d 1234 (8th Cir. 1990) ........ 5

*Wrocklage v. DHS*,
769 F.3d 1363 (Fed. Cir. 2014) ........ 9

**Statutes**

5 U.S.C. § 552a(b)(1) ........ 5, 8

5 U.S.C. § 552a(e)(10) ........ 5, 6

5 U.S.C. § 552a(g)(1)(D) ........ 5, 7

5 U.S.C. § 552a(i)(1) ........ 9

**Rules**

Federal Rule of Civil Procedure 11(b)(3) ........ 11

**Treatises**

Restatement (Second) of Torts § 652B cmt. b ........ 3

## PRELIMINARY STATEMENT

Plaintiffs' arguments in opposition to Defendants' motion to dismiss (*see* ECF No. 67 ("Opposition" or "Opp.")) confirm that the Complaint contains implausible allegations derived from erroneous news reporting and conclusory assertions without factual corroboration. Rather than concede the obvious errors in their Complaint and inform the Court that they intend to amend, Plaintiffs instead have doubled down on their demonstrably false allegations and sought to correct certain of the Complaint's deficiencies by amending it through their Opposition. But the Court need not accept Plaintiffs' implausible assertions or draw unreasonable inferences in their favor. The proper course is to dismiss this case.

At the outset, the Complaint is devoid of any nonconclusory allegation that "DOGE agents"[1] actually reviewed any of Plaintiffs' sensitive personal data. As a result, Plaintiffs lack Article III standing. Even if they had standing to sue, Plaintiffs' Privacy Act claims must be dismissed—as they now concede they are not seeking damages, and general injunctive relief is unavailable under the Privacy Act to prevent an agency from granting individuals access to its records systems. Plaintiffs' arguments that they can bring a "Hail Mary" *ultra vires* claim is similarly unavailing.

Left with only their APA claims, Plaintiffs contend that OPM's decision to grant or limit systems access to specific individuals represents reviewable "final agency action," but that is incorrect. The limitations on APA review prevent this Court from being injected into such day-to-day agency management. Furthermore, even if their claims were cognizable under the APA, they have failed plausibly to allege an actual violation of the Privacy Act. Finally, their single-sentence

[1] Plaintiffs maintain that their Complaint uses the terms "DOGE" and "DOGE agents" interchangeably, to collectively refer to USDS, the DOGE Service Temporary Organization, agencies' DOGE Teams, and employees who work principally on the DOGE agenda. *See* Opp. at 3 & n.3. However, no such definition of these catchall terms exists in the Complaint.

request for leave to amend—if the Court grants this motion to dismiss—is woefully insufficient and should be denied.

For the reasons set forth in the Defendants' opening brief (ECF No. 62, "Mem.") and in this reply, the Court should dismiss the Complaint.

## ARGUMENT

### I. Plaintiffs Lack Article III Standing

Plaintiffs argue that they have standing to sue because their purported intangible injury—"disclosure" of sensitive records by OPM to DOGE agents—is closely analogous to: the common law torts of (1) intrusion upon seclusion and (2) public disclosure of private information, or (3) a Fourth Amendment violation. *See* Opp. at 7. However, Plaintiffs have not plausibly alleged that any unauthorized individuals actually reviewed their sensitive information or that OPM publicly disclosed their private information. As a result, they lack standing to sue.

At the outset, Plaintiffs assert that they "allege that OPM actually disclosed those records to DOGE agents, not merely that DOGE agents were granted access," Opp. at 4, and "that OPM's actual disclosure to DOGE agents is an 'intrusion,'" *id.* at 7, sufficient to confer standing. But the Complaint's "threadbare"[2] recitals of the elements of a Privacy Act claim need not be credited on a motion to dismiss. *See Thomas v. City of New York*, No. 18 Civ. 2781 (DLC), 2018 WL 5282889, at *2 (S.D.N.Y. Oct. 24, 2018). What Plaintiffs actually allege in the complaint is that OPM merely granted systems access to DOGE and DOGE agents. *See, e.g.,* Compl. ¶¶ 8 ("OPM Defendants gave unrestricted, wholesale access to OPM systems and records to DOGE Defendants and DOGE's agents."), 9-10, 29-30, 33-36. The Complaint is bereft of any allegations that an actual

[2] *See, e.g.,* Compl. ¶¶ 15 ("OPM disclosed and continues to disclose"), 18-20 ("OPM records that Defendants disclosed and continue to disclose"); 40-44 ("OPM Defendants' unlawful disclosure …"); 46 ("On information and belief, OPM Defendants continue to disclose").

intrusion into any of plaintiffs' sensitive data occurred.[3] There is no allegation that such data was reviewed, examined, or otherwise "invaded" by anyone—let alone by DOGE agents. But the tort of intrusion upon seclusion, as the name suggests, requires just that—an actual "intrusion," which is "highly offensive," into a plaintiff's personal privacy.

Plaintiffs claim that there is, in fact, no need for an actual "intrusion"—*i.e.*, review or examination—of their sensitive personal data, mere access suffices. Opp. at 9; *id* at 15-16 (asserting a grant of access is encompassed within the meaning of "disclose"). However, far from being a "novel" requirement, the Restatement makes clear that the tort requires an actual "intrusion" such as *opening* private mail, *searching* safes or wallets, *examining* bank accounts, or compelling an *inspection* of private documents as illustrative of injuries considered an intrusion upon seclusion. Restatement (Second) of Torts § 652B cmt. b (emphasis added). The analogy, as plaintiffs would have it, is that a bank hiring a new security guard with mere access to the vault is sufficient to show an intrusion upon seclusion—and thereby opens the door to federal court. That is not correct. And this Court need not, and should not, follow the lead of other judges who have found the mere grant of access to agencies' records systems sufficient to confer standing.

Plaintiffs similarly fail to sufficiently allege a concrete injury akin to the common law tort of public disclosure of private facts. Plaintiffs claim that this tort does not actually require that the records "be 'publicly' disclosed." Opp. at 10. That is incorrect. In this Circuit, disclosures not made to outside third parties—*e.g.,* intra-governmental disclosures—do not fall within the tort of public disclosure of private facts. *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 541 (2d Cir. 2024) (public disclosure of private facts tort "is triggered when one gives publicity to a matter concerning

---

[3] Plaintiffs claim that their Complaint alleges actual disclosures. However, the Complaint does not contain those allegations, and Plaintiffs cannot rewrite their pleadings through opposition briefing. *See infra* at 8-9.

the private life of another" (cleaned up)). Moreover, Plaintiffs' conclusory allegations that sensitive data was disclosed outside of OPM to DOGE or USDS should not be credited. Thus, they cannot show a concrete harm similar to public disclosure of private facts.

Plaintiffs' assertion (Opp. 10-11) that they have alleged an injury similar to a Fourth Amendment violation is similarly unavailing. The Fourth Amendment prohibits "unreasonable searches and seizures," but Plaintiffs allege neither an unreasonable search nor a seizure of their sensitive data. Absent plausible allegations that their sensitive data has actually been "searched," Plaintiffs cannot show concrete injury.

Finally, Plaintiffs' argument that their Complaint alleges "DOGE agents *may* misuse [OPM's] records," and that "thieves or foreign adversaries *may* steal them," Opp. at 12 (emphasis added), underscores that their allegations fail to demonstrate a "sufficient likelihood" that OPM "would otherwise intentionally or accidentally release their information to third parties." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 438 (2021). Plaintiffs fail to allege a sufficient likelihood of hacking or misuse, and their conclusory assertions that OPM's data is now more vulnerable to such a threat do not suffice. *See, e.g., Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017) (to confer standing, plausible allegations must "push the threatened injury of future identity theft beyond the speculative to the sufficiently imminent"). As the Second Circuit precedent Plaintiffs cite (Opp. at 13) makes clear, the mere possibility of hacking or misuse is insufficient to demonstrate "a substantial risk that harm will occur." *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 288 (2d Cir. 2023) (finding sufficient likelihood of future harm where attempted "targeted hack" by third party had, in fact, occurred).

## II. Plaintiffs Fail to State Privacy Act or *Ultra Vires* Claims[4]

Plaintiffs' argument (Opp. at 20-22) that they may seek general injunctive relief for alleged violations of Sections 552a(b)(1) or 552a(e)(10) of the Privacy Act is contradicted by the very case law they cite. In *Haase v. Sessions*, 893 F.2d 370, 374 (D.C. Cir. 1990), the D.C. Circuit reiterated its prior holding that "the Privacy Act 'authorizes entry of injunctive relief in only two *specific* situations.'" *Id.* (quoting *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988)) (emphasis in original). Those specific situations are amendment of records and refusal to permit an individual access to her own records. 5 U.S.C. §§ 552a(g)(1)(A), (B). In *Haase*, the D.C. Circuit suggested, in dicta, that general injunctive relief might also be available for a violation of Section 552a(e)(7). *See Haase,* 893 F.2d at 374 n.6; *see also Wabun-Inini v. Sessions*, 900 F.2d 1234, 1245 (8th Cir. 1990) (case cited by Plaintiffs, involving alleged violation of Section 552a(e)(7)). But Plaintiffs do not allege a violation of Section 552a(e)(7), and subsequent D.C. Circuit case law makes clear that "only monetary damages, not declaratory or injunctive relief, are available to § 552a(g)(1)(D) plaintiffs," who sue for "violations of § 552a(b)." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 & n.10 (D.C. Cir. 2007) (citing *Stephens*, 851 F.2d at 1463). That is precisely the case here—Plaintiffs have alleged violations of Section 552a(b), for which no injunctive relief is available under the Privacy Act. *See, e.g., Doe v. Chao*, 435 F.3d 492, 504 (4th Cir. 2006) ("[S]ubsection (g)(1)(D) of the Privacy Act does not allow courts to grant injunctive or declaratory relief." (collecting cases)).

Furthermore, Plaintiffs do not cite, and the Government has not identified, any case law supporting the contention that a plaintiff may sue for injunctive relief to remedy an alleged

[4] Despite the Complaint's allegations that Plaintiffs have sustained damages and are entitled to recovery due to alleged Privacy Act violations, Compl. ¶ 53, Plaintiffs have now abandoned those damages claims. *See* Opp. at 20 n.11. Accordingly, Plaintiffs' claims for damages under the Privacy Act should be dismissed.

violation of Section 552a(e)(10)—which is unsurprising given the wide latitude afforded to agencies in fashioning "appropriate" safeguards for their data systems. Accordingly, Plaintiffs claims for injunctive relief under the Privacy Act should be dismissed.

Plaintiffs' *ultra vires* claim similarly fails because, among other reasons, they do not allege an obvious violation of an express statutory command. *See DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (requiring "obvious violation of a clear statutory command" and suggesting *ultra vires* exception itself is likely no longer good law). Plaintiffs' allegations, "on information and belief," Compl. ¶ 7, that non-governmental DOGE agents improperly accessed OPM's records are implausible and conclusory. Moreover, Plaintiffs themselves acknowledge that they have not plausibly alleged an obvious violation of a clear statutory command. *See* Opp. at 17 (decrying the "unusually convoluted employment relationships of relevant individuals" who accessed OPM's data systems). Accordingly, their "Hail Mary" *ultra vires* claim should be dismissed.

## III. Plaintiffs' APA Claims Should Be Dismissed

Plaintiff's remaining claims under the APA are precluded because Plaintiffs fail to identify the requisite final agency action, and they have other adequate remedies. In addition, they fail plausibly to allege any underlying violations of the Privacy Act.

### A. Plaintiffs' APA Claims Are Not Reviewable

In their Opposition, Plaintiffs claim that "Defendants' adoption of a new policy of information disclosure—or change of an existing one—is indisputably final agency action." Opp. at 24. But nowhere in the Complaint do Plaintiffs allege that Defendants adopted a *new policy* of information disclosure—instead, they challenge discrete decisions to grant (or remove) access to specific individuals. *See* Compl. ¶¶ 8, 29, 34. Plaintiffs argue in their Opposition that "Defendants changed their agencies' security policies or adopted wholly new policies allowing DOGE agents

to obtain Plaintiffs' records held by OPM." Opp. at 24. But, again, that is not alleged in the Complaint—rather, Plaintiffs alleged that OPM granted access to specific DOGE agents *in contravention of* the "normal, rigorous national-security vetting" process, Compl. ¶ 9, and in violation of the Privacy Act's statutory mandates, *id*. ¶ 10. It is not enough for Plaintiffs to simply proclaim in their Opposition briefing that OPM has adopted a new, broad policy of wholesale disclosure; they must provide specific, nonconclusory, and plausible allegations of such a broad policy in their Complaint. That they have not done.

Moreover, Plaintiffs fail to address (and therefore effectively concede) Defendants' argument that OPM's discrete decisions to grant or remove systems access for specific individuals are the type of day-to-day operations of governmental agencies that are not subject to APA review. *See* Mem. at 13, 15; *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66-67 (2004) (limitation of APA review to final agency actions prevents courts from being "inject[ed] . . . into day-to-day agency management"); *New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (APA's final agency action requirement forecloses "day-to-day oversight of the executive's administrative practices"). Accordingly, Plaintiffs' APA claims should be dismissed for failure to allege final agency action.

Plaintiffs' APA claims fail for the additional, independent reason that the APA does not grant a cause of action where there is "[an]other adequate remedy in any court." 5 U.S.C. § 704. In opposition, Plaintiffs rely on suggestions in Supreme Court dicta, and unpersuasive holdings from outside this Circuit, to assert that general injunctive relief under the APA is available even though it may be foreclosed under the Privacy Act. *See* Opp. at 22-23. However, they fail to acknowledge that their own Complaint asserts they have another adequate remedy—a claim for damages pursuant to Section 552a(g)(1)(D) of the Privacy Act. *See* Compl. ¶ 69 (alleging in their

APA claim, that "Plaintiffs and their members have sustained and will continue to sustain actual damages and pecuniary losses directly traceable to Defendants' violations set forth above"); *see also id.* ¶ 53. Apparently realizing they effectively pleaded their way out of an APA claim, Plaintiffs now assert in their Opposition that they never truly sought damages at all. *See* Opp. at 20 n.11. Plainly, it is not Defendants who are trying to "have it both ways," Opp. at 23, it is Plaintiffs. This Court must assess Plaintiffs' Complaint as it stands, and Plaintiffs clearly assert a claim for damages under the Privacy Act—an adequate remedy which precludes their APA claims.

**B. Plaintiffs Have Not Plausibly Alleged Underlying Privacy Act Violations**

To properly assert a violation under Section 552a(b)(1) of the Privacy Act, Plaintiffs must plausibly allege an (i) actual disclosure of a protected record, (ii) to non-OPM employees, or (iii) to OPM employees who do not have a need for the records in performance of their duties. *See* 5 U.S.C. § 552a(b)(1).

*First,* Plaintiffs do not allege an actual disclosure. They claim that they "specifically and plausibly allege that OPM actually disclosed their records to DOGE agents, not merely that DOGE agents were granted access." Opp. at 15 (citing paragraphs of the Complaint). But a careful review of the Complaint reveals that they never once allege that any specific DOGE agent actually viewed their sensitive data. Indeed, Plaintiffs fail plausibly to allege that any sensitive records were actually "disclosed"—*i.e.*, actually viewed—within the meaning of the Privacy Act. *See* Mem. at 20 n.4. Plaintiffs insist that they have pled actual disclosure, noting that "[t]he news reports cited in the Complaint even describe use following access," *id*. at 15, including "searching through individual workers' position descriptions in OPM systems and using OPM records to create a mass email list of workers," *id.* at 4—but the Complaint does not actually contain those allegations, and "Plaintiff[s] cannot amend [their] complaint or raise new claims in [their] opposition to a motion to dismiss." *Calltrol Corp. v. LoxySoft AB*, No. 18 Civ. 9026 (NSR), 2021 WL 5967888, at *2 n.2

(S.D.N.Y. Dec. 16, 2021); *see also Town and Country Adult Living, Inc. v. Village/Town of Mt. Kisco*, No. 17 Civ. 8586 (CS), 2019 WL 1368560, at *14 (S.D.N.Y. Mar. 26, 2019) ("It is well established that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Kiryas Joel All. v. Village of Kiryas Joel*, No. 11 Civ. 3982 (JSR), 2011 WL 5995075, at *10 n.9 (S.D.N.Y. Nov. 29, 2011) ("[P]laintiffs cannot use their opposition to the motion to dismiss to raise new claims or arguments, and thus the Court does not address the new arguments made in the plaintiffs' memorandum.").

Plaintiffs' allegations that OPM granted "access" to DOGE agents, Compl. ¶¶ 8-10, 29-30, 33-36, and thus those DOGE agents might possibly have viewed Plaintiffs' sensitive information, are not enough. The plain meaning of the term "disclose" requires that the information be "made known or public," or "expose[d] to view." *See United States v. John Doe, Inc. I*, 481 U.S. 102, 108 n.4 (1987); *see also Wrocklage v. DHS*, 769 F.3d 1363, 1369 (Fed. Cir. 2014) (disclosure under the Privacy Act "require[es] not just transmission, but actual viewing or imminent viewing by another"). Moreover, other provisions of the Privacy Act make a clear distinction between "access" and "disclosure." *See, e.g.,* 5 U.S.C. § 552a(i)(1) (outlining criminal penalties for an officer or employee with "access to" an agency record who separately "willfully discloses" the material to any person or agency not entitled to receive it). To the extent OMB Guidelines or other regulations interpret "disclose" to include the mere granting of access, *see* Opp. at 15-16, the Court "may not defer to [that] agency interpretation," especially where it contravenes the statute's plain meaning. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024).

Furthermore, despite the conclusory and implausible allegation in their Complaint that the "DOGE actors were not government employees at the time they demanded and received access to the OPM computer networks," Compl. ¶ 7, Plaintiffs now claim that they really alleged that OPM

had disclosed information to governmental DOGE agents, some of whom "are employed by OPM and some are employed by DOGE." (Opp. at 6). However, the Complaint contains no allegations that the "DOGE agents" (an undefined term in the Complaint) were in fact government employees, but just not employees of OPM—and Plaintiffs cannot rewrite their Complaint through briefing. Plaintiffs' rejoinder (Opp. at 17) that the facts at the time they filed their Complaint were murky, and the news reports they relied on "use a series of informal terms to describe DOGE" and its alleged access to OPM's data systems, only underscores the implausible, conclusory, and uncorroborated nature of their allegations.

As to the issue of whether the "DOGE agents" had a need for access to the records in performance of their duties, Plaintiffs now concede that the OPM DOGE Team's "stated duties are to modernize government IT, and OPM is tasked to help create a plan to address hiring practices." Opp. at 17 (citing E.O. 14,158 and E.O. 14,170). Yet, they claim that there are data elements within OPM's records systems that are not needed for these purposes. *Id.* at 18. But OPM's DOGE Team cannot fulfill these duties if they cannot access OPM's systems to understand how they are built and operate, to review, execute, and evaluate improvements to the associated computer code, and to develop plans and procedures for workplace reform. Put another way, it's impossible for a software engineer to improve an outdated data system without access to the system in the first instance. And it is impossible for OPM to "integrate modern technology to support the recruitment and selection process," E.O. 14,170 § 2(b)(iv), and "develop a data-driven plan" for government hiring, E.O. 14,210 § 3(b), if its employees cannot access personnel information on OPM data systems.

## IV. Plaintiffs' Request for Leave to Amend Should Be Denied

The Court and the parties are not required to proceed with this litigation based on the implausible and clearly erroneous factual allegations in Plaintiffs' Complaint. The better course, and the one they should have pursued, would have been for Plaintiffs to amend their Complaint to try to address its deficiencies. However, Plaintiffs' single-sentence, informal request for leave to amend at the end of their Opposition brief is palpably insufficient. *See Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*, 436 F. Supp. 3d 754, 767 (S.D.N.Y. 2020) (Cote, J.). In such circumstances, a "district court has ample discretion not to grant leave to amend when, as here, such leave was never properly requested, and the plaintiffs did not demonstrate how they would amend the complaint in a manner that would not be futile." *Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 29 (2d Cir. 2006) (collecting cases).

Plaintiffs do not even attempt to demonstrate—in light of the administrative record they have already received and reviewed, and in keeping with their obligations under Federal Rule of Civil Procedure 11(b)(3)—that an amended complaint will provide the necessary elements of standing, final agency action, lack of another adequate remedy, and plausible allegations amounting to a Privacy Act violation—all of which are necessary for their APA claims to move forward. Accordingly, their Complaint should be dismissed without leave to amend.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

Dated: New York, New York
March 31, 2025

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By: *_/s/ David E. Farber_*
JEFFREY OESTERICHER
DAVID E. FARBER
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2695/2772

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,491 words.

*/s/ David E. Farber*
Assistant United States Attorney