IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. OFFICE OF PERSONNEL MANAGEMENT, et al.,<br><br>    Defendants. | Case No. 25-cv-1237-DLC |

**DECLARATION OF CARMEN GARCIA-WHITESIDE**

I, Carmen Garcia-Whiteside, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am currently employed by the United States Office of Personnel Management ("OPM"), as the Chief Human Capital Officer, and have been employed in this role since December 2022. I report to the OPM Director. I am a career civil servant. Prior to my current role, I served in various HR leadership roles at both OPM and the U.S. Department of Education. I have been employed at OPM since 2009.

2. In my current role, I oversee, among other things, OPM's Office of the Chief Human Capital Officer ("OCHCO"). In additional to leading the operational human resources function for the agency, I also lead the development and implementation of the agency's corporate human resources strategy, policy, and solutions to workforce management challenges.

3. I make this declaration based on my personal knowledge and on information contained in the OPM administrative record, information contained in OPM's systems, or

information provided to me in the course of performing my duties, including information provided by employees within OCHCO, OPM's Human Resources ("HR") department, OPM's Chief Information Security Officer ("CISO"), and OPM's ethics officers.

4. The purpose of this declaration is to (i) set forth the legal authority pursuant to which certain employees of OPM were appointed to OPM, and (ii) provide the information that I am aware of, about trainings that are required of employees of OPM and trainings that have been completed by these certain OPM employees.

**Appointment of Certain OPM Employees**

5. On January 20, 2025, Gregory Hogan was appointed under 5 U.S.C. § 3394(a) as a temporary Senior Executive Service (SES) noncareer appointee with the title of Senior Advisor to the Director for Technology and Delivery. *See* OPM-000004 (Box 5). On January 20, 2025, Hogan also executed his appointment affidavit and affirmed his oath of office before the Acting Director of OPM Charles Ezell, as part of his onboarding. *See* OPM-000001. On January 20, 2025, Hogan was designated as the Acting Chief Information Officer of OPM. On February 11, 2025, Hogan's position was converted to a permanent SES noncareer appointment, with the title Chief Information Officer. *See* OPM-000006.

6. On January 20, 2025, OPM-2 was appointed under 5 U.S.C. § 3109 as an expert within the Office of the Director of OPM, with a temporary appointment not to exceed 180 days—i.e., until July 18, 2025. *See* OPM-000008 (Box 5). An "expert" is a person who is specially qualified by education and experience to perform difficult and challenging tasks in a particular field beyond the usual range of achievement of competent persons in that field. *See* 5 CFR 304.102(d); 5 CFR 304.103. The reason for OPM-2's temporary appointment was to provide a high level of expertise relative to issues which have a significant impact on the formulation of agency

goals and objectives to the OPM Director. *See* OPM-000008. On January 20, 2025, OPM-2 also virtually executed his appointment affidavit and virtually affirmed his oath of office before the Acting Director of OPM Charles Ezell as part of his onboarding. *See* OPM-000006. OPM-2 also executed an Acceptance of Uncompensated Services form on January 20, 2025, agreeing to being appointed as an uncompensated employee of OPM. *See* OPM-000007. An expert or consultant appointed under 5 U.S.C. § 3109 may be employed without pay, provided the individual agrees in advance in writing to waive any claim for compensation for those services. *See* 5 CFR 304.102(h) and 5 CFR 304.104(c).

7. On January 20, 2025, OPM-3 was appointed under 5 U.S.C. § 3109 as an expert within the Office of the Director of OPM, with a temporary appointment not to exceed 180 days—i.e., until July 18, 2025. *See* OPM-000011 (Box 5). The reason for his temporary appointment was to provide a high level of expertise relative to issues which have a significant impact on the formulation of agency goals and objectives to the OPM Director. *See* OPM-000011. On January 20, 2025, OPM-3 also executed his appointment affidavit and affirmed his oath of office before the Acting Director of OPM Charles Ezell as part of his onboarding. *See* OPM-000010. OPM-3 also executed an Acceptance of Uncompensated Services form on January 28, 2025, agreeing to being appointed as an uncompensated employee of OPM. *See* OPM-000005.

8. Pursuant to a memorandum agreement, it is my understanding that OPM-3 has also been appointed with an SGE designation at two other federal agencies, the Social Security Administration and the Department of Education, during the course of his employment with OPM. *See* OPM-000013. Per guidance from OPM's Office of General Counsel, Federal law does not prohibit an employee from having more than one appointment, even with different agencies. However, 5 U.S.C. § 5533 prohibits an employee from receiving basic pay for more than one

position for more than an aggregate of 40 hours in one week. As such, section 5533 is a limitation on pay, not on appointments.[1]

9. According to the General Services Administration (GSA), on January 20, 2025, OPM-4 was appointed under 5 U.S.C. § 3109 as a senior advisor – special government employee (SGE) within the Office of the Administrator of GSA, with a temporary appointment not to exceed 365 days—i.e., until January 19, 2026. *See* Notification of Personnel Action Form SF-50 for OPM-4, a true and correct copy of which is attached hereto as Exhibit A. On January 24, 2025, OPM-4 was also appointed under 5 U.S.C. § 3109 as an expert within the Office of the Director of OPM, with a temporary appointment not to exceed 180 days. Because OPM and GSA share an electronic personnel processing system (HR Links), a separate form SF-50 (Notification of Personnel Action) could not be generated for this separate appointment. On January 24, 2025, OPM-4 also executed his appointment affidavit and affirmed his oath of office before an OPM HR Specialist as part of his onboarding. *See* OPM-000014. OPM-4 also executed an Acceptance of Uncompensated Services form on January 24, 2025, agreeing to being appointed as an uncompensated employee of OPM. *See* OPM-000015.

10. On January 20, 2025, OPM-5 was appointed as Senior Advisor to the Director for Information Technology within the Office of the Director of OPM, under OPM's authority to establish a temporary transitional Schedule C position. *See* 5 CFR § 213.3302(a); OPM-000017. OPM-5 executed his appointment affidavit and affirmed his oath of office on January 20, 2025, as part of his onboarding. *See* OPM-000016. On February 18, 2025, OPM-5 was converted to a

---

[1] *See, e.g.,* OPM, Office of Legal Counsel, Claim Decision No. S9700261 (1997), available at https://www.opm.gov/policy-data-oversight/pay-leave/claim-decisions/decisions/1997/70026100/.

Schedule C appointment with the title of Senior Advisor to the Director for Information Technology, pursuant to 5 CFR § 213.3391. *See* OPM-000017.

11. OPM-5 has been temporarily detailed by OPM to other federal agencies during the course of his employment with OPM, pursuant to memoranda agreements with the following federal agencies: the GSA, the Internal Revenue Service, the U.S. Agency for International Development, the U.S. Department of Agriculture, and the U.S. Agency for Global Media. The temporary detail of employees from one federal agency to another, including from OPM to other agencies, is an established and accepted practice within the Executive Branch.

12. On January 24, 2025, OPM-6 was appointed under 5 U.S.C. § 3109 as an expert within the Office of the Director of OPM, with a temporary appointment not to exceed 180 days—i.e., until July 22, 2025, and with the title of Expert. *See* OPM-000021 (Box 5); OPM-000022. The reason for his temporary appointment was to provide a high level of expertise relative to issues which have a significant impact on the formulation of agency goals and objectives to the OPM Director. *See* OPM-000021. On January 24, 2025, OPM-6 also executed his appointment affidavit and affirmed his oath of office before an OPM HR Specialist as part of his onboarding. *See* OPM-000022. OPM-6 also executed an Acceptance of Uncompensated Services form on January 24, 2025, agreeing to being appointed as an uncompensated employee of OPM. *See* Acceptance of Uncompensated Services form signed by OPM-6, a true and correct copy of which is attached as Exhibit B.

13. OPM-6 has been temporarily detailed by OPM to other federal agencies during the course of his employment with OPM, pursuant to memoranda agreements with the following federal agencies: the U.S. Department of Commerce, the Consumer Financial Protection Bureau. Pursuant to a memorandum agreement, it is my understanding that OPM-6 has also been appointed

with an SGE designation at the Social Security Administration during the course of his employment with OPM.

14.     On January 20, 2025, OPM-7 was appointed under 5 U.S.C. § 3109 as an expert within the Office of the Director of OPM, with a temporary appointment not to exceed 180 days—i.e., until July 18, 2025, and with the title of Expert. *See* OPM-000111 (Box 5); OPM-000112. The reason for his temporary appointment was to provide a high level of expertise relative to issues which have a significant impact on the formulation of agency goals and objectives to the OPM Director. *See* OPM-000112. On January 20, 2025, OPM-7 also executed his appointment affidavit and affirmed his oath of office before the Acting Director of OPM Charles Ezell as part of his onboarding. *See* OPM-000112. OPM-7 also executed an Acceptance of Uncompensated Services form on January 20, 2025, agreeing to being appointed as an uncompensated employee of OPM. *See* OPM-000113.

15.     On January 20, 2025, James Sullivan was appointed under 5 U.S.C. § 3394(a) as a SES noncareer appointee with the title of Senior Advisor to the Director. *See* OPM-000114 (Box 5). On January 20, 2025, Sullivan also executed his appointment affidavit and affirmed his oath of office before the Acting Director of OPM Charles Ezell as part of his onboarding. *See* OPM-000116. On February 12, 2025, Sullivan was converted to a Schedule C appointment with the title of Senior Advisor pursuant to 5 CFR § 213.3391. *See* OPM-000115. On March 28, 2025, Sullivan was converted to a permanent SES noncareer appointment, with the title of Chief of Staff to the Director of OPM.

**Training of Certain OPM Employees**

      16.     All newly appointed employees of OPM are required to complete the following trainings:

         a. Privacy Awareness and Cybersecurity Awareness Training – this training covers various laws, rules and responsibilities concerning the protection of personal privacy, including safeguarding personally identifiable information (PII), as well as cybersecurity risks. *See* OPM-000130-OPM-000172. Completion of this training comports with the requirements of 5 CFR § 930.301.

         b. Initial Ethics Training – this training focuses on government ethics laws and regulations, including the Standards of Ethical Conduct for Employees of the Executive Branch, relevant OPM regulations concerning ethics, and other materials as determined by OPM's designated ethics official. This training must be completed within 3 months of the employee's appointment, in accordance with the requirements of 5 CFR § 2638.304.

      17.     It is my understanding that the Privacy Awareness and Cybersecurity Awareness Trainings are generally made available through OPM's Cybersecurity Learning Management System ("LMS"), and completion of trainings is recorded in that system. However, in certain instances trainings may be completed outside of OPM's LMS. According to Danielle Rowell, OPM's Acting Chief Information Security Officer ("CISO") at the time, in January 2025, OPM's Cybersecurity LMS was not operational as the agency was in the process of updating its Cybersecurity LMS. OPM conducted the initial Privacy Awareness and Cybersecurity Awareness Training for new political appointees by using the OPM Cybersecurity and Privacy Awareness Training document at OPM-000130 – OPM-000172. On January 17, 2025, Rowell agreed to waive

the required quiz in lieu of an email directed to her team from the incoming employees acknowledging that they understood the training document's contents. *See* OPM-000173.

18. Greg Hogan acknowledged completing the Privacy Awareness and Cybersecurity Awareness Training on January 20, 2025. *See* OPM-000173. OPM-7 acknowledged completing the Privacy Awareness and Cybersecurity Awareness Training on January 19, 2025. *See* OPM-000175. OPM-5 acknowledged completing the Privacy Awareness and Cybersecurity Awareness Training on January 18, 2025. *See* OPM-000176. OPM-5 acknowledged completing the Privacy Awareness and Cybersecurity Awareness Training on January 19, 2025. *See* OPM-000177. OPM-3, OPM-6, and OPM-4 acknowledged completing the Privacy Awareness and Cybersecurity Awareness Training on February 19, 2025. It is my understanding that OPM is unable to verify whether James Sullivan acknowledged completing initial Privacy Awareness and Cybersecurity Awareness Training; however, on March 8, 2025, James Sullivan completed the required Classified National Security Information Awareness and Insider Threat Training in connection with his application for a Top Secret security clearance. *See* OPM-000226, 235.

19. According to the Office of the General Counsel (OGC), on February 10, 2025, Greg Hogan, OPM-6, James Sullivan, and OPM-5 completed in-person ethics training provided by OPM's ethics officials, an Associate General Counsel, and a senior counsel in the Office of the General Counsel of OPM. On February 19, 2025, OPM-2 also completed in-person ethics training provided by an OPM ethics official. OPM does not have any record of OPM-7, OPM-3, or OPM-4 completing in-person ethics training at OPM. Ethics staff from the GSA advised that OPM-4 received ethics training at GSA on

8

January 21, 2025, and senior OPM staff advised that OPM-3 had an ethics training on February 19, 2025.

20.  As detailed above, each of the above employees was duly appointed as an employee of OPM according to established procedures.

Dated: May 16, 2025
       Washington, D.C.

_____
Carmen Garcia-Whiteside