IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>              Plaintiffs,<br><br>      v.<br><br>U.S. OFFICE OF PERSONNEL MANAGEMENT, et al.,<br><br>              Defendants. | Case No. 25-cv-1237-DLC |

**REVISED SECOND REPORT PURSUANT TO PRELIMINARY INJUNCTION ORDER**

      I, Perryn Ashmore, pursuant to 28 U.S.C. § 1746, make this report pursuant to the preliminary injunction order entered in the above-captioned matter (ECF No. 134), under penalty of perjury, as follows:

      1.    I am currently employed by the United States Office of Personnel Management (OPM), as the Acting Chief Information Officer (CIO) of OPM, and have served in that role since September 2, 2025, replacing the previous CIO, Greg Hogan, on that date. Prior to serving as Acting CIO, I served as the Deputy Chief Information Officer of OPM from May 18, 2025, through September 1, 2025. Prior to that, I served as a Senior Executive with OPM Human Resources Solutions from November 2023 to May 2025. I also previously served as the CIO of the U.S. Department of Health and Human Services from September 2020 to May 2021, and have decades of experience working in various roles within the federal government.

      2.    I make this report based on my personal knowledge and on information contained in OPM's files, as well as information provided to me in the course of performing my duties,

including information provided by OPM's Chief Information Security Officer (CISO), OPM's human resources (HR) department, and OPM's Facilities, Security and Emergency Management (FSEM) division.

3. The purpose of this report is to provide the information ordered by the Court concerning OPM's grant of access permissions to any records containing personally identifiable information (PII) of the plaintiffs that exist in any OPM system of records made to any DOGE Agent,[1] where such access permissions were in effect as of the date of the preliminary injunction order—i.e., June 20, 2025—referred to as the DOGE Access Report by the Court.

4. This revised report is being issued to correct the previous report filed on August 1, 2025. On September 18, 2025, OPM staff in CISO and OCIO determined that certain applicable access permissions provided to OPM-5 had been inadvertently omitted from that original report. Subsequently, OPM's CISO coordinated with OPM's database administrators to conduct a comprehensive re-review of access permissions for all individual DOGE Agents who remained employed by OPM as of June 20, 2025. The results of that re-review are included below.

## DOGE Access Report

1. A summary of access for each applicable DOGE Agent is included as a spreadsheet attached to this report. The summary was prepared by OPM's CISO and OPM's database administrators, and includes the following information: (1) name of DOGE Agent, (2) the specific system or systems to which access was granted, (3) when access was granted and removed, (4) whether the access granted is regular user access or administrative access, (5) OPM's determination as to whether the DOGE Agent logged in to the system, and (6) if so, the most recent date when such DOGE Agent last logged in.

---

[1] The term DOGE Agent is defined at page 3 of the preliminary injunction order (ECF No. 134).

    a. This revised report includes two access permissions for OPM-5 that were inadvertently omitted from the prior report.

    b. This revised report lists four discrete types of access permissions within the production environment of the "OPM Data: eOPF Azure" system for OPM-3 OPM-3 that were previously combined and listed under the single system name "OPM Data: eOPF Azure PROD".

    c. This revised report also removes an entry for OPM-6 for the system Web Admin – USA Jobs. During the re-review, CISO and OCIO determined that while an account had been created for OPM-6 for that system (Web Admin – USA Jobs), he was not assigned any privileged role in the system which would have allowed for access to PII of the plaintiffs or others.

    d. For entries for OPM-3, the date in the "Date Removed" column previously referred to the date his network access credentials (i.e., Entra ID profile) were deactivated—July 21, 2025. As noted below, OPM-3's network access credentials were reactivated on August 8, 2025; accordingly, the "Date Removed" column now reflects the dates on which the individual access permissions listed for OPM-3 were separately revoked.

2. Each DOGE Agent listed in this report has been provided with all training that is typically required of individuals granted access permissions to such systems, including training regarding the federal laws, regulations, and policies governing the handling of PII, and maintenance of the integrity and security of OPM data and technology. Such training is detailed at paragraphs 16 through 18 of the Declaration of Carmen Garcia-Whiteside (ECF No. 100), who oversees OPM's HR department.

3. As detailed in the Declaration of Carmen Garcia-Whiteside, all such training was completed after the granting of the specific access permissions that are detailed in the summary spreadsheet attached to this report, except for the following access permissions:

   a. OPM-3 – System Name: OPM Data: eOPF Azure PROD (SQL Account, Subscription Access, Storage Account Access, and Key Vault Access)

   b. OPM-2 – System Name: USA Performance

   c. OPM-2 – System Name: OPM Data: EHRI Databricks

   d. OPM-5 – System Name: USA Performance

   e. OPM-5 – System Name: Government-Wide Email System

4. The vetting processes that each such DOGE Agent underwent prior to the grant of access permissions is detailed at paragraphs 17, 18, 20, and 21 of the Declaration of Everette Hilliard (ECF No. 101), who oversaw OPM's FSEM division at the time of his declaration. FSEM has also supplied the following information: OPM-2's background investigation for his permanent appointment was favorably adjudicated by FSEM on May 29, 2025, and FSEM cleared OPM-2 to enter on duty in this permanent appointment. That same day, FSEM also sponsored OPM-2 for a PIV credential in accordance with established credentialing standards. OPM-2's PIV credential was delivered to an issuance facility on June 3, 2025, and was activated on August 21, 2025. OPM's HR team also requested clearance to convert OPM-3's position to a permanent appointment with the same position description—i.e., expert. FSEM reviewed a prior background investigation for OPM-3 which closed on April 21, 2025. After a favorable review, FSEM reciprocally approved OPM-3 for a permanent position at OPM on August 7, 2025, and FSEM cleared OPM-3 to enter on duty at OPM in this permanent position. OPM-3 was also sponsored for a PIV credential, which was activated for use on August 18, 2025.

5. A description of mitigation procedures that have been developed by OPM to minimize any security threats that may result from new grants of access permissions to DOGE Agents is contained in the report filed with the Court on July 18, 2025 (ECF No. 140). Currently, none of the DOGE Agents listed in this report have access permissions to OPM data systems containing plaintiffs' PII. No further mitigation procedures are contemplated with respect to past access granted to such DOGE Agents.

6. Each DOGE Agent included in this report is or was an employee of OPM as described at paragraphs 6, 7, 10, and 12 of the Declaration of Carmen Garcia-Whiteside. OPM's HR team and the CISO also supplied the following information: OPM-6 resigned from OPM effective July 2, 2025. His network access credentials were deactivated on July 21, 2025. OPM-2 OPM-2's position has been converted to a permanent appointment with the same position description. OPM-3's temporary employment expired on July 18, 2025. His network access credentials were deactivated on July 21, 2025. OPM's HR team requested clearance to convert OPM-3's position to a permanent appointment with the same position description, and FSEM subsequently cleared OPM-3 to enter on duty in this permanent position. OPM-3's OPM network access credentials were restored on August 8, 2025; however, he has not been granted further access permissions to OPM data systems containing PII of the plaintiffs since that date.

7. Each DOGE Agent included in this report is or was supervised by, and directly reports or reported to, OPM officials when performing their official duties at OPM. A description of the reporting chains is included below:

    a. OPM-3: While performing work for OPM, OPM-3 was previously supervised by CIO Greg Hogan, and is currently supervised by Acting CIO

Perryn Ashmore, and OPM's Chief of Staff, who in turn report directly to the Director of OPM.

b. **OPM-6**: While performing work for OPM, **OPM-6** was supervised by CIO Greg Hogan and OPM's Chief of Staff, who in turn report directly to the Director of OPM.

c. **OPM-2**: While performing work for OPM, **OPM-2** was previously supervised by CIO Greg Hogan, and is currently supervised by Acting CIO Perryn Ashmore, and OPM's Chief of Staff, who in turn report directly to the Director of OPM.

d. **OPM-5** While performing work for OPM, **OPM-5** was previously supervised by CIO Greg Hogan, and is currently supervised by Acting CIO Perryn Ashmore, and OPM's Chief of Staff, who in turn report directly to the Director of OPM.

8. The Privacy Act exception applicable to the grant of access permissions included in this report is 5 U.S.C. 552a(b)(1). A description of the need for access by each DOGE Agent to each specific system is included below:

a. **OPM-3**:

i. USA Performance: access was granted in order to be prepared to implement changes to this system.

ii. OPM Data: eOPF Azure PROD (SQL Account, Subscription Access, Storage Account Access, and Key Vault Access): access was granted in order to assist with a project to ensure data quality in the EHRI and eOPF data systems, including identifying inaccuracies in data fields and

    employing modern software practices to efficiently investigate and enhance data quality.

 b. **OPM-6** :

  i. USA Performance: access was granted in order to be prepared to implement changes to this system.

  ii. Agency Talent Portal: access was granted in order to be prepared to implement changes to this system.

  iii. OPM Data : EHRI Databricks: access was granted in order to ensure changes to the USA Staffing system made in support of the executive order implementing the hiring freeze were properly implemented. USA Staffing provides electronic forms and data for new agency hires to the EHRI system through a secure interconnection.

  iv. Government-Wide Email System: access was granted in order to assist in the design and buildout of this system.

 c. **OPM-2** :

  i. USA Performance: access was granted in order to be prepared to implement changes to this system.

  ii. OPM Data : EHRI Databricks: access was granted in order to be prepared to implement the Government-Wide Email System.

 d. **OPM-5** :

  i. USA Performance: access was granted in order to be prepared to implement changes to this system.

      ii. Government-Wide Email System: access was granted in order to assist in the design and buildout of this system.

9. OPM's HR department provided the following description of whether each DOGE Agent at issue works or worked at OPM on a full-time basis; is or was paid by OPM; and whether such individual simultaneously holds or held appointments at, or is or was detailed to or from any other agency:

   a. OPM-3 has worked at OPM on an intermittent schedule basis and continues to do so after he was cleared for his permanent appointment. OPM-6 worked at OPM on an intermittent schedule basis. OPM-2 works at OPM on an intermittent schedule basis. OPM-5 works at OPM on an intermittent schedule basis.

   b. OPM-3, OPM-6, and OPM-2 have not been paid by OPM. OPM-5 is paid by OPM.

   c. OPM-3 and OPM-5 have held simultaneous appointments and/or been detailed to other federal agencies during their employment at OPM. OPM-6 was detailed to other federal agencies and the U.S. DOGE Service during his employment at OPM. OPM-2 has not been detailed to, and does not simultaneously hold an appointment at, any other federal agency or the U.S. DOGE Service.

Dated: September 30, 2025  
      Washington, D.C.

**PERRYN ASHMORE**  
Digitally signed by PERRYN ASHMORE  
Date: 2025.09.30 19:23:39 -04'00'

_____  
Perryn Ashmore

| Employee Name | System Name | Date Created | Date Removed | Admin or User Access | Did the User Login (Yes/No?) | Last Login Date |
|---|---|---|---|---|---|---|
| OPM-3 | USA Performance | 1/20/2025 | 7/30/2025 | Admin (OPM and System) | No | N/A |
| OPM-3 | eOPF Azure PROD SQL Account | 4/7/2025 | 7/29/2025 | User (Read Only) | Yes | 6/26/2025 |
| OPM-3 | eOPF Azure PROD Subscription Access | 4/7/2025 | 7/29/2025 | User (Read Only) | Yes | 6/26/2025 |
| OPM-3 | eOPF Azure PROD Storage Account Access | 4/7/2025 | 9/29/2025 | User (Read Only) | Yes | 4/23/2025 |
| OPM-3 | eOPF Azure PROD Key Vault Access | 4/7/2025 | 9/29/2025 | User (Read Only) | Yes | 7/8/2025 |
| OPM-5 | GWES- Mailbox Access | 1/24/2025 | 8/8/2025 | Admin (System) | No | N/A |
| OPM-5 | USA Performance | 1/20/2025 | 9/22/2025 | Admin (System) | Yes | 4/13/2025 |
| OPM-6 | USA Performance | 1/28/2025 | 7/21/2025 | Admin (OPM) | No | N/A |
| OPM-6 | Agency Talent Portal | 1/31/2025 | 7/21/2025 | Admin (System) | Yes | 1/31/2025 |
| OPM-6 | OPM Data : Enterprise Human Resources Integration (EHRI) - Databricks | 2/5/2025 | 7/21/2025 | Admin (System) | Yes | 6/26/2025 |
| OPM-6 | GWES- Mailbox Access | 1/30/2025 | 7/21/2025 | Admin (System) | No | N/A |
| OPM-2 | USA Performance | 1/28/2025 | 7/30/2025 | Admin (OPM) | No | N/A |
| OPM-2 | OPM Data : Enterprise Human Resources Integration (EHRI) - Databricks | 2/5/2025 | 7/30/2025 | Admin (System) | No | N/A |