**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO, *et al.,*

                    Plaintiffs,

         v.

U.S. OFFICE OF PERSONNEL
MANAGEMENT, *et al.*,

                    Defendants.

No. 25 Civ. 1237 (DLC)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**


JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:   (212) 637-2695/2772
Attorney for Defendants


JEFFREY OESTERICHER
DAVID E. FARBER
Assistant United States Attorneys
     - Of Counsel -

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 2

    A.   First Report Pursuant to the Preliminary Injunction Order ............................................. 2

    B.   Second Report Pursuant to the Preliminary Injunction Order ........................................ 4

    C.   Status of Relevant OPM Employees .............................................................................. 6

STANDARD OF REVIEW ........................................................................................................... 7

ARGUMENT ................................................................................................................................ 9

  I.   Plaintiffs' Claims Are Now Moot ....................................................................................... 9

    A.   The Removal of Access Permissions for "DOGE Agents" and the Updates to OPM's Access Control Policies Have Mooted Plaintiffs' Claims .................................................... 10

    B.   No Exception to the Mootness Doctrine Applies ........................................................... 14

  II.  Plaintiffs' Claims Are No Longer Ripe for Review .......................................................... 18

    A.   Plaintiffs' Challenge Is No Longer Fit for Review ........................................................ 18

    B.   Plaintiffs Will Not Suffer Hardship ............................................................................... 20

CONCLUSION ........................................................................................................................... 21

CERTIFICATE OF COMPLIANCE .......................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages(s)**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967)....................................................................................................... 18

*Allina Health Servs. v. Sebelius*,
   746 F.3d 1102 (D.C. Cir. 2014) ..................................................................................... 14

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013)......................................................................................................... 11

*Arnold v. Lucks*,
   392 F.3d 512 (2d Cir. 2004) ............................................................................................ 8

*Atl. States Legal Found. v. EPA*,
   325 F.3d 281 (D.C. Cir. 2003) ....................................................................................... 20

*Audubon of Kansas, Inc. v. U.S. Dep't of Interior*,
   67 F.4th 1093 (10th Cir. 2023)....................................................................................... 17

*California ex rel. Lockyer v. U.S. Forest Serv.*,
   No. 04 Civ. 02588, 2006 WL 2038491 (N.D. Cal. July 20, 2006) ..................................... 11, 19

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016) .............................................................................................. 8

*Chafin v. Chafin*,
   568 U.S. 165 (2013)....................................................................................................... 12

*City of Houston v. HUD*,
   24 F.3d 1421 (D.C. Cir. 1994) ................................................................................... 11, 19

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983).......................................................................................................... 7

*City of New York v. U.S. Dep't of Def.*,
   913 F.3d 423 (4th Cir. 2019).......................................................................................... 13

*Cobell v. Norton*,
   392 F.3d 461 (D.C. Cir. 2004) ....................................................................................... 14

*Conn. Citizens Def. League, Inc. v. Lamont*,
   6 F.4th 439 (2d Cir. 2021).............................................................................................. 10

*Conn. Parents Union v. Russell-Tucker*,
   8 F.4th 167 (2d Cir. 2021)................................................................................................ 7

*Cook v. Colgate Univ.*,
   992 F.2d 17 (2d Cir. 1993)............................................................................................. 10

*Correspondent Servs. Corp. v. JVW Inv., Ltd.*,
   No. 99 Civ. 8934 (RWS), 2004 WL 2181087 (S.D.N.Y. Sept. 29, 2004).................................. 8

*Dennin v. Conn. Interscholastic Athletic Conf., Inc.*,
 94 F.3d 96 (2d Cir. 1996) ........................................................................................... 15

*Doe v. Columbia Univ.*,
 551 F. Supp. 3d 433 (S.D.N.Y. 2021) ....................................................................... 12

*Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*,
 544 F.2d 1126 (2d Cir. 1976) ...................................................................................... 8

*Exxon Mobil Corp. v. Healey*,
 28 F.4th 383 (2d Cir. 2022) ................................................................................ 12, 15

*Fox v. Bd. of Trustees of the State Univ. of New York*,
 42 F.3d 135 (2d Cir. 1994) .......................................................................................... 8

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
 528 U.S. 167 (2000) ..................................................................................................... 7

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
 460 F.3d 13 (D.C. Cir. 2006) .................................................................................... 17

*Giammatteo v. Newton*,
 452 F. App'x 24 (2d Cir. 2011) ................................................................................... 7

*Gonzalez v. Cuccinelli*,
 985 F.3d 357 (4th Cir. 2021) ..................................................................................... 14

*Granite State Outdoor Advert., Inc. v. Town of Orange*,
 303 F.3d 450 (2d Cir. 2002) ...................................................................................... 17

*Green v. Mansour*,
 474 U.S. 64 (1985) ..................................................................................................... 12

*Guadagno v. Wallack Ader Levithan Assocs.*,
 932 F. Supp. 94 (S.D.N.Y. 1996) ................................................................................ 8

*John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*,
 588 F.2d 24 (2d Cir. 1978) .......................................................................................... 8

*Lewis v. Cont'l Bank Corp.*,
 494 U.S. 472 (1990) ................................................................................................... 12

*Logerfo v. City of New York*,
 No. 17 Civ. 10 (JMA)(AYS), 2020 WL 2307649 (E.D.N.Y. May 8, 2020) .............. 9

*Lujan v. Nat'l Wildlife Fed'n*,
 497 U.S. 871 (1990) ................................................................................................... 13

*Makarova v. United States*,
 201 F.3d 110 (2d Cir. 2000) ........................................................................................ 7

*Nat'l Mining Ass'n v. DOI*,
 251 F.3d 1007 (D.C. Cir. 2001) ................................................................................ 10

*Nat'l Park Hospitality Ass'n v. DOI*,
 538 U.S. 803 (2003) ................................................................................................... 18

*Nat'l Treasury Emps. Union v. Vought*,
    149 F.4th 762 (D.C. Cir. 2025) ............................................................................. 13, 18, 20

*Neurological Surgery Prac. of Long Island, PLLC v. HHS*,
    145 F.4th 212 (2d Cir. 2025) ............................................................................. 9, 10, 16

*New York C.L. Union v. Grandeau*,
    528 F.3d 122 (2d Cir. 2008) ........................................................................................ 18

*New York v. Raimondo*,
    No. 19 Civ. 09380 (MKV), 2021 WL 1339397 (S.D.N.Y. Apr. 9, 2021) ................................. 10

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ........................................................................................................ 13

*Nutritional Health Alliance v. Shalala*,
    144 F.3d 220 (2d Cir. 1998) ........................................................................................ 19

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
    523 U.S. 726 (1998) ...................................................................................................... 20

*Palmer v. Amazon.com, Inc.*,
    51 F.4th 491 (2d Cir. 2022) ........................................................................................... 9

*Preiser v. Newkirk*,
    422 U.S. 395 (1975) .................................................................................................. 9, 12

*Princeton Univ. v. Schmid*,
    455 U.S. 100 (1982) ...................................................................................................... 10

*Srour v. New York City, New York*,
    117 F.4th 72 (2d Cir. 2024) .......................................................................................... 15

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ......................................................................................................... 9

*Texas v. United States*,
    523 U.S. 296 (1998) ...................................................................................................... 20

*Town of Newburgh v. Newburgh EOM LLC*,
    151 F.4th 96 (2d Cir. 2025) .......................................................................................... 15

*Unified Sch. Dist. No. 259, Sedgwick Cnty., Kan. v. Disability Rts. Ctr. of Kansas*,
    491 F.3d 1143 (10th Cir. 2007) .................................................................................... 17

*United States ex rel. Hanks v. United States*,
    961 F.3d 131 (2d Cir. 2020) ........................................................................................... 9

*United States v. Balon*,
    384 F.3d 38 (2d Cir. 2004) .......................................................................................... 19

*Wilkins v. United States*,
    598 U.S. 152 (2023) ........................................................................................................ 8

**Statutes**

5 U.S.C. § 552a(c) ................................................................................................ 14

5 U.S.C. § 706(1) .................................................................................................. 13

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................ 7, 8

Federal Rule of Civil Procedure 12(h)(3) ............................................................... 8

## PRELIMINARY STATEMENT

Plaintiffs asserted, and the Court found for purposes of a preliminary injunction, that the Office of Personnel Management ("OPM") impermissibly decided to urgently grant systems access to certain individuals at the beginning of the current administration, in violation of the Privacy Act. Based on that highly fact-specific context, and after soliciting proposals from the parties, the Court issued its preliminary injunction order, which did not require the removal of any individual employee's access permissions but required the submission of two reports by OPM.

Since that time, the ground has shifted. None of the so-called "DOGE Agents" currently have access to Plaintiffs' personally identifying information ("PII") in any OPM data systems because either they left OPM employment or their access permissions were removed, and OPM has revised its access control policies to implement mandatory protocols for all new employees and contractors requiring access to OPM systems containing PII, ensuring adherence to the Privacy Act and addressing this Court's stated concerns. As a result, Plaintiffs no longer are suffering a continuing injury—no one has impermissible access to their PII. Moreover, the course of events that occurred at OPM in the very first days of the administration, when operational needs were admittedly unclear, is unlikely to recur on similar facts and in the same context. Accordingly, Plaintiffs' claims for injunctive and declaratory relief are moot.

Furthermore, no exception to the mootness doctrine applies. There is no reasonable expectation that the alleged Privacy Act violation will recur, and the Court's interim relief and OPM's subsequent adoption of new mandatory access control policies has completely and irrevocably eradicated the effects of the alleged violation—no OPM employees will have impermissible access to Plaintiffs' PII in the future. Because their claims are moot, and no

exception to mootness applies, the Court should dismiss this case for lack of subject matter jurisdiction.

Even if Plaintiffs' claims were not moot, it is plain that their current challenge is no longer ripe for review. To the extent Plaintiffs argue that the agency could turn around and grant systems access to certain employees in the future, the propriety of any future grant of access would turn on the particular facts at issue—*e.g.*, are the individuals being granted access employees of the agency; have they been appropriately trained; do they have a need for the record; or does some other Privacy Act exception apply—in a context which will be decidedly different than the first days of the administration. Plaintiffs' claims are thus no longer fit for review, and they will not suffer cognizable hardship if the Court declines further review.

For all of these reasons, this action should be dismissed.

## FACTUAL BACKGROUND[1]

OPM has included relevant factual background below concerning developments since the issuance of the Court's preliminary injunction opinion and order, ECF Nos. 121 and 134, respectively, including the submission of the first and second reports mandated by the preliminary injunction order. *See* ECF Nos. 140 & 148. In addition, OPM has provided additional information concerning its revised access control policies and the employment status of relevant OPM employees.

### A.  First Report Pursuant to the Preliminary Injunction Order

On July 18, 2025, OPM submitted the first report required pursuant to the preliminary injunction order, ECF No. 134 at 2-3, describing the processes and procedures instituted by OPM

---

[1] In addition, to the factual background provided below, Defendants incorporate the factual background provided in their opposition to Plaintiffs' motion for a preliminary injunction, ECF No. 95 at 2-9.

since March 6, 2025, to ensure adherence to the requirements of the Privacy Act with respect to any new grant of access permission by OPM to any records containing PII that exist in OPM systems. *See* ECF No. 140. As explained in the report, OPM already had established processes and procedures that were in place prior to March 6, 2025, to ensure adherence to the requirements of the Privacy Act—including appointment, training, vetting, and other data protection and privacy policies and procedures. *Id.* at 1. In addition, in response to this Court's preliminary injunction opinion and order, OPM instituted, on an interim basis, certain additional protocols that added to and formalized procedures to be followed before granting new access to PII contained in OPM data systems to (1) any U.S. DOGE Service ("DOGE") employee, contractor, or detailee, or (2) any OPM employee, contractor, or detailee hired after January 20, 2025, who requires access for the primary purpose of working on an initiative or project involving DOGE (the "Interim Protocols"). *Id.* at 2; *see also* Interim Protocols, ECF No. 140-1. Finally, OPM noted that it would review whether those Interim Protocols should remain in place 90 days after submission of the first report. *Id.*

Upon review, OPM's acting Chief Information Officer ("CIO") and Senior Agency Official for Privacy ("SAOP") determined that OPM should formalize existing access control protocols and clarify that they are mandatory for all new employees and contractors requiring access to OPM systems containing PII. *See* Declaration of Perryn Ashmore ("Ashmore Decl."), dated November 24, 2025, ¶ 5. Accordingly, the access control protocols were included as part of OPM's updated Cybersecurity and Privacy Policy, which was approved by OPM's Director Scott Kupor on November 18, 2025, and was disseminated to all OPM employees on November 20, 2025. *Id.* ¶ 6, Ex. A.

Specifically, Section N of the Access Control requirements in OPM's Cybersecurity and Privacy Policy provides:

> The following protocols shall be used for new employees and contractors requiring access to OPM systems containing PII. Before an individual is provided with access to an OPM system or systems containing PII, the SO [system owner] must take the following steps:
>
> i. Confirm with CISO [Chief Information Security Officer] that the person has completed Cybersecurity and Privacy Awareness training and completed Rules of Behavior acknowledgement which are included as part of the training.
>
> ii. Confirm with CHCO [Chief Human Capital Officer] that the individual has been properly appointed or detailed.
>
> iii. Confirm with FSEM [Facilities Security and Emergency Management] that the individual has been appropriately vetted and they have been cleared for entrance on duty.
>
> iv. Confirm with SAOP [Senior Agency Official for Privacy] that the above steps have been taken, provide an explanation for need to access the system(s), and receive written approval from the SAOP that the access fits within the "need to know" criteria of the Privacy Act.

*See* Ashmore Decl., Ex. B (excerpt of OPM's Cybersecurity and Privacy Policy, dated November 18, 2025). OPM is fully committed to implementation of its updated Cybersecurity and Privacy Policy. *See* Ashmore Decl., Ex. A. (OPM's Director "has expressed full support and commitment to its implementation. Director Kupor has emphasized that security and privacy must be woven into every fabric of our agency's mission and operations.").

**B. Second Report Pursuant to the Preliminary Injunction Order**

On August 1, 2025, OPM submitted the second report required by the preliminary injunction order, ECF No. 134 at 3-6. The report provided the information ordered by the Court concerning OPM's grant of access permissions to any records containing PII of the plaintiffs that

exist in any OPM system of records made to any DOGE Agent—as defined by the Court[2]—where such access permissions were in effect as of the date of the preliminary injunction order—i.e., June 20, 2025—referred to as the DOGE Access Report by the Court. *See* ECF No. 141 (with redactions), ECF No. 143 (without redactions, under seal).

As outlined in Defendants' submission accompanying the revised DOGE Access Report (ECF No. 151), on September 18, 2025, OPM staff determined that one or more relevant access permissions provided to a particular "DOGE Agent" and in effect on June 20, 2025, had been inadvertently omitted from that original report. *See* ECF No. 151 at 1. The undersigned notified Plaintiffs' counsel of this issue the next day, and OPM's CISO coordinated with OPM's database administrators to conduct a comprehensive re-review of access permissions for the eight individual "DOGE Agents" who remained employed by OPM as of June 20, 2025. *Id.* at 2.

On September 30, 2025, OPM submitted a revised DOGE Access Report that includes two access permissions that had been provided to an individual DOGE Agent—OPM-5—but were inadvertently omitted from the prior report submitted on August 1. *See* ECF No. 148 ¶ 4 (with redactions), ECF No. 150 ¶ 4 (without redactions, under seal). As outlined in the revised DOGE Access Report, only three current employees—OPM-2, OPM-3, and OPM-5 had access to Plaintiffs' PII as of June 20, 2025. *See* ECF No. 148 & 150 (access summary spreadsheet).[3] All such access was removed as of September 29, 2025. *See* ECF Nos. 148 & 150 ¶ 5, and attachment (summary of access spreadsheet showing the date access to particular OPM systems was removed).

---

[2] The term "DOGE Agent" is defined at page 3 of the preliminary injunction order, ECF No. 134. OPM notes that the term is a misnomer, as no "DOGE Team" exists at OPM. This memorandum uses the anonymized monikers for certain OPM employees (*e.g.*, "OPM-2") consistent with the Court's orders. *See* ECF Nos. 66, 81. Citations to the supplement to the OPM administrative record are denoted by the prefix "OPM-000XXX" throughout.

[3] OPM-6 resigned from OPM on July 2, 2025. *See infra* at 7.

In addition, OPM's Acting CIO has verified, in conjunction with OPM's CISO and database administrators, that no "DOGE Agent" currently has access to Plaintiffs' PII contained in any OPM data systems. *See* Ashmore Decl. ¶ 8.[4]

### C. Status of Relevant OPM Employees

As of June 20, 2025, only eight of the sixteen individuals falling within the definition of "DOGE Agent" remained employed by OPM.[5] Those eight individuals were OPM-2, OPM-3, OPM-4, OPM-5, OPM-6, OPM-10, OPM-16, and OPM-18. The remaining "DOGE Agents" left governmental service with OPM prior to June 20, 2025:

- OPM-7 left OPM effective May 16, 2025, *see* OPM-000303;

- OPM-9 left OPM effective June 6, 2025, *see* OPM-000245,

- OPM-11 left OPM effective March 5, 2025, *see* OPM-000257;

- OPM-12 left OPM effective March 5, 2025, *see* OPM- 000261,

- OPM-13 left OPM effective February 16, 2025, *see* OPM-000266;

- OPM-14 left OPM effective June 6, 2025, *see* OPM-000274;

- OPM-15 left OPM effective March 5, 2025, *see* OPM-000279; and

- OPM-17 left OPM effective June 6, 2025, *see* OPM-00294.

---

[4] As explained in detail by the Acting CIO, that verification process was delayed beyond November 25, 2025—the date on which Defendants originally intended to file this motion to dismiss—in order to ensure accuracy and completeness. *Id.* ¶¶ 9-10.

[5] OPM's former CIO Greg Hogan and Chief of Staff James Sullivan were formerly designated as OPM-1 and OPM-8, respectively; however, they are not included within the Court's definition of DOGE Agent. *See* ECF No. 134 at 3. The Ashmore Declaration includes a supplement to the administrative record concerning grants of access to additional individuals designated as OPM-9 through OPM-18, *see* Ashmore Decl. ¶ 13, and Ex. C. These materials include documents Bates stamped OPM-000236 through OPM-000304, which were previously provided to Plaintiffs' counsel on August 29, 2025, pursuant to the Court's order dated June 27, 2025 (ECF No. 139).

Since June 20, 2025, an additional three individuals are no longer employed at OPM and no longer have access to OPM data systems. OPM-6's resignation was effective July 2, 2025, *see* OPM-000301; and OPM-16's resignation was effective June 27, 2025, *see* OPM-000287. OPM-4 was appointed to a temporary appointment at OPM on January 24, 2025, not to exceed 180 days, which expired on July 23, 2025, and was not renewed. *See* ECF No. 96 ¶ 9 (Declaration of Carmen Garcia-Whiteside). OPM-4's network access credentials at OPM were previously removed on May 14, 2025, *see* Ashmore Decl. ¶ 12.

At this time, only five individuals falling within the definition of "DOGE Agent" are current OPM employees—OPM-2, OPM-3, OPM-5, OPM-10, and OPM-18; however, none of those individuals has access to Plaintiffs' PII in any OPM data systems. *See* Ashmore Decl. ¶ 8.

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton,* 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113). To survive a Rule 12(b)(1) motion, the allegations in the proposed complaint must demonstrate, among other things, that the plaintiff possesses Article III standing to seek the relief requested. *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983)). "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action. Defects in subject matter jurisdiction cannot

be waived and may be raised at any time during the proceedings." *Fox v. Bd. of Trustees of the State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994) (cleaned up).

Where a Rule 12(b)(1) motion raises a factual challenge, the defendant may "proffer[ ] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion … reveal the existence of factual problems' in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). When a factual challenge to jurisdiction has been raised, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996).

Rule 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). "Motions brought pursuant to Rule 12(h)(3) are subject to the same standards as motions to dismiss for want of subject matter jurisdiction brought pursuant to Rule 12(b)(1)." *Correspondent Servs. Corp. v. JVW Inv., Ltd.*, No. 99 Civ. 8934 (RWS), 2004 WL 2181087, at *5 (S.D.N.Y. Sept. 29, 2004) (citation omitted). Motions pursuant to Rule 12(h)(3) on mootness grounds "may be raised at any time" and courts have a duty to consider them *sua sponte*. *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (citation omitted). "[J]urisdiction over the subject matter provides the basis for the court's power to act, and an action must be dismissed whenever it appears that the court lacks such jurisdiction." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24, 27 (2d Cir. 1978) (citing Rule 12(h)(3)). A federal court has an independent obligation to assure itself of its own jurisdiction, *see Arnold v. Lucks*, 392 F.3d 512, 517 (2d Cir. 2004), and

courts must generally consider jurisdictional questions first, before turning to the merits of a case. *United States ex rel. Hanks v. United States*, 961 F.3d 131, 137 (2d Cir. 2020) ("There are a few recognized exceptions to the otherwise solid rule that subject-matter jurisdiction must be decided first.").

Accordingly, a court may not "resolve contested questions of law when its jurisdiction is in doubt," but must first assure itself of continued jurisdiction to hear the matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *see also Logerfo v. City of New York*, No. 17 Civ. 10 (JMA)(AYS), 2020 WL 2307649, at *5 (E.D.N.Y. May 8, 2020) ("[M]ootness is a [] threshold jurisdictional question that this Court must address before Plaintiffs can continue this suit.").

## ARGUMENT

OPM's removal of access permissions previously granted to "DOGE Agents," and its updates to the mandatory access control protocols governing future grants of access, have mooted Plaintiffs' claims, and no exception to mootness applies. Even were Plaintiffs' claims not moot, their challenge is no longer ripe for review. Accordingly, the Court should dismiss this case.

## I.    Plaintiffs' Claims Are Now Moot

Article III of the Constitution requires that a live case or controversy must exist at all stages of federal court proceedings to support a court's subject matter jurisdiction. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). The mootness doctrine "'ensures that [a] litigant's interest in the outcome continues to exist throughout the life of the lawsuit.'" *Neurological Surgery Prac. of Long Island, PLLC v. HHS*, 145 F.4th 212, 223 (2d Cir. 2025) (quoting *Palmer v. Amazon.com*, *Inc.*, 51 F.4th 491, 503 (2d Cir. 2022)). "If because of changed circumstances 'a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for

mootness.'" *Palmer*, 51 F.4th at 503 (quoting *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021)). "A case becomes moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (internal quotation marks omitted). So, "a case that is live at the outset may become moot when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) (internal quotation marks omitted).

### A. The Removal of Access Permissions for "DOGE Agents" and the Updates to OPM's Access Control Policies Have Mooted Plaintiffs' Claims

As outlined above, none of the "DOGE Agents" currently have access to Plaintiffs' PII contained in any OPM data systems. *See* Ashmore Decl. ¶ 8. And OPM has updated its access control policies, ensuring any alleged deficiencies in compliance with the Privacy Act will not recur. *See id.* ¶ 7. Any order requiring OPM to remove access for "DOGE Agents" or revise its policies to ensure adherence with the Privacy Act "would therefore be pointless." *Neurological Surgery*, 145 F.4th at 223.

Because OPM's access control policies at issue "in this action have been revised," and OPM's original access grants "are no longer in effect . . . the issues presented are no longer live and the Court cannot afford the relief Plaintiffs seek." *New York v. Raimondo*, No. 19 Civ. 09380 (MKV), 2021 WL 1339397, at *2 (S.D.N.Y. Apr. 9, 2021). This case therefore is moot and must be dismissed. *See Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (holding that amendment to regulations mooted challenge to validity of old regulation); *Nat'l Mining Ass'n v. DOI*, 251 F.3d 1007, 1010-11 (D.C. Cir. 2001) (declaring challenge to revised rule moot, noting that "[t]he old set of rules, which are the subject of this lawsuit, cannot be evaluated as if nothing has changed" because "[a] new system is now in place" and "[a]ny opinion regarding the former rules would be merely advisory").

Moreover, OPM's decision to take the Interim Protocols—which applied specifically to DOGE-related employees and initiatives—and expand them to all future grants of access to new employees and contractors to OPM systems containing PII, means that OPM will not be "free to return to [its] old ways." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013) (quotation and citation omitted). As noted above, OPM's revised access control protocols mandate that, for new employees and contractors, prior to the provision of access to an OPM system or systems containing PII, OPM data system owners must confirm the person has completed relevant training, been properly appointed and vetted, must provide an explanation for need to access the system(s), and receive written approval from OPM's SAOP confirming that the grant of access meets the criteria of the Privacy Act. While Plaintiffs may assert that these changes "resulted purely as a response to this litigation," OPM's decision to update its access control policies "nevertheless renders the Court incapable of providing 'effective relief.'" *California ex rel. Lockyer v. U.S. Forest Serv.*, No. 04 Civ. 02588, 2006 WL 2038491, at *1-2 (N.D. Cal. July 20, 2006). "Accordingly, the Court need not address whether an exception to the mootness doctrine applies, because even if it did, the Court would only be capable of issuing an impermissible advisory opinion." *Id.*

Plaintiffs' request for declaratory relief concerning OPM's "decision to implement a system by which DOGE Defendants may access OPM's records and obtain personal information about individuals" Compl., Prayer for Relief § A, does not save their challenge from mootness. *Cf. City of Houston v. HUD*, 24 F.3d 1421, 1429 (D.C. Cir. 1994) (even "if a plaintiff's specific claim has been mooted, it may nevertheless seek declaratory relief forbidding an agency from imposing a disputed policy in the future, so long as the plaintiff has standing to bring such a forward-looking challenge and the request for declaratory relief is ripe"). Here, Plaintiffs have not challenged any

ongoing policy by OPM to grant access to individuals in violation of the Privacy Act—rather, they attacked OPM's isolated decisions to grant access to certain individuals in January 2025. Even if those decisions could amount to an unwritten access "policy," OPM has since updated its access control policies to ensure adherence with the Privacy Act. Thus, Plaintiffs' claim for declaratory relief is moot as well. *See, e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 479 (1990) ("Even in order to pursue the declaratory and injunctive claims," plaintiffs must establish a "specific live grievance" and "not just an abstract disagreement" (cleaned up and citations omitted)); *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 394-95 (2d Cir. 2022) ("[T]he Supreme Court [has] made clear that a request for a declaratory judgment as to a past violation cannot itself establish a case or controversy to avoid mootness." (citing *Green v. Mansour*, 474 U.S. 64, 73-74 (1985))). Plaintiffs continued challenge concerning OPM's compliance with the Privacy Act "amounts to a request for advice as to what the law would be upon a hypothetical state of facts, or with respect to contingent future events that may not occur as anticipated, or indeed may not occur at all." *Lewis*, 494 U.S. at 479-80 (cleaned up and citations omitted); *see also Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 459 (S.D.N.Y. 2021) (Cote, J.) ("Federal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinion[s] advising what the law would be upon a hypothetical state of facts." (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013))).

At bottom, there is no longer a real and substantial controversy for which the Court can grant effective relief. *See Preiser*, 422 U.S. at 401 (stating that the judgments of federal courts "must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts" (internal quotations and citations omitted)). Given that no "DOGE

Agent" has access to Plaintiffs' PII and OPM has revised it access controls, there is no longer any ongoing controversy—let alone a possible violation of the Privacy Act, and Plaintiffs cannot ask this Court to serve in the untenable position as OPM's de facto Privacy Act compliance monitor pursuant to the Administrative Procedure Act ("APA"). *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990) (plaintiffs "cannot demand a general judicial review of the [agency]'s day-to-day operations" under the APA); *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (under the APA, courts do not "adjudicate generalized grievances asking us to improve an agency's performance or operations," and cannot "engage in day-to-day oversight of the executive's administrative practices"). Put another way, "the APA does not make federal courts 'roving commissions' assigned to pass on how well federal agencies are satisfying their statutory obligations." *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 780-81 (D.C. Cir. 2025) ("*NTEU*") (quoting Broadrick v. Oklahoma, 413 U.S. 601, 610-11 (1973)).

The APA similarly does not permit a court to order an agency to conduct a series of forensic audits that the agency is not required by law to undertake. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004) ("*SUWA*") ("The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law." (emphasis in original)). While Plaintiffs may continue to insist that OPM should be required to "identify any copies of records or copies of information from records,"[6] that could have been made at the direction of "DOGE Agents," *see* ECF No. 129-1 at 5, Section 706 of the APA only empowers courts to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and that

---

[6] In their Complaint, Plaintiffs requested that the Court "[o]rder the impoundment and destruction of all copies of individuals' personal information that has been unlawfully disclosed," Compl., Prayer for Relief § E; however, they have never even *alleged* that any impermissible copies of Plaintiffs' PII were made. Nor could they—there is no evidence in the record that anyone's PII has been extracted from OPM data systems and disseminated in violation of the Privacy Act.

section applies only where "an agency failed to take a discrete agency action that it is *required to take*," *SUWA*, 542 U.S. at 64 (emphasis in original). That provision of the APA is not at issue in this litigation—Plaintiffs have not brought a section 706(1) claim. And "where an agency is *not required* to do something, [a court] cannot compel the agency to act—let alone to act faster." *Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021) (emphasis in original). The only statutory mandate concerning an accounting of disclosures under the Privacy Act is found at 5 U.S.C. § 552a(c), and specifically exempts disclosures made pursuant to § 552a(b)(1)—the provision at issue in this litigation. Accordingly, the Court cannot provide the relief Plaintiffs continue to seek.

In its preliminary injunction opinion (ECF No. 121), the Court identified alleged deficiencies with OPM's compliance with the Privacy Act, and OPM's subsequent removal of access permission and updates to its access control policies have remedied those issues. Even if Plaintiffs remain unsatisfied, they cannot ask the Court to direct the agency how best to achieve compliance with the Privacy Act. *See Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1111 (D.C. Cir. 2014) ("[T]he court erred by directing the Secretary how to calculate the hospitals' reimbursements, rather than just remanding after identifying the error." (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 201 (1947)). Neither can Plaintiffs ask this Court to impose their preferred methodology on OPM to fulfill its duties under the Privacy Act. *See Cobell v. Norton,* 392 F.3d 461, 476 (D.C. Cir. 2004) (vacating district court's order where it "seem[ed] a specification not of [the agency's] duties but of the court's preferred methodology for assuring [the agency's] fulfillment of those duties"). Plaintiffs have received all the relief they are due, and there is no more effective relief this Court can provide.

### B.  No Exception to the Mootness Doctrine Applies

Although there are exceptions to the mootness doctrine under which a court may retain jurisdiction even when it can no longer grant the relief sought, none apply here. The Second Circuit

has recognized "exceptions to the mootness doctrine includ[ing] voluntary cessation cases and cases capable of repetition but evading review." *Srour v. New York City, New York*, 117 F.4th 72, 81 (2d Cir. 2024) (internal citation and quotation omitted).

The exception for conduct that is capable of repetition, yet evading review involves challenged conduct that "is too short in duration to be fully litigated before it ceases, and it is probable that the pleading party will need to seek the same relief from the defendant's same conduct again in the future." *Town of Newburgh v. Newburgh EOM LLC*, 151 F.4th 96, 102 (2d Cir. 2025) (internal quotation and citation omitted). Here, although it may be theoretically possible for OPM to disregard its updated, mandatory access control policies in the future, such "mere speculation" about OPM's future actions and their possible effects on Plaintiffs "does not rise to the level of a reasonable expectation or demonstrated probability of recurrence." *Id.* (quoting *Dennin v. Conn. Interscholastic Athletic Conf., Inc.*, 94 F.3d 96, 101 (2d Cir. 1996) (internal quotation marks and citation omitted)). And to the extent OPM decides to grant access to certain systems in the future to OPM-2, OPM-3, and OPM-5—the three current employees of OPM who previously had access to Plaintiffs' PII—they have all been properly appointed, vetted, and received the appropriate training, *see* ECF No. 148 ¶¶ 2, 4, & 6, and are subject to the same access control protocols.[7] Accordingly, the exception for cases capable of repetition but evading review does not apply here.

---

[7] To be clear, OPM does not believe that institution of these specific access control policies is *required* by the Privacy Act, and OPM does not concede that its prior grants of access were in violation of the Privacy Act or the APA; however, OPM has determined that such access control policies are warranted, and Defendants have elected not to appeal this Court's preliminary injunction order. Accordingly, there is no reasonable expectation that the conduct at issue in the present litigation will recur. *See, e.g.*, *Exxon Mobil*, 28 F.4th at 396 (challenge to state attorney general's investigation was moot and not capable of repetition, yet evading review—despite attorney general continuing to defend the legality of its prior conduct—where investigation and lawsuit had concluded, and attorney general had decided not to appeal adverse court decision).

The same is true for the voluntary cessation exception. Under that exception, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Neurological Surgery*, 145 F.4th at 223 (internal quotation and citations omitted). "Instead, to render the case moot, a defendant must demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (internal quotation and citation omitted). Here, OPM has demonstrated that there is no reasonable expectation that the alleged violation will recur—OPM has updated its mandatory access control policies to ensure adherence to the Privacy Act, and OPM's Director has committed to full implementation of these updated policies.[8] Also, there is no suggestion in the record that the same course of events—urgent requests for access at the start of a presidential transition—are likely to recur at OPM. Given OPM's updates to its Cybersecurity and Privacy Policy, which mandate access controls to ensure adherence to the Privacy Act, the likelihood of another urgent grant of access to individuals who have not been properly vetted or appointed, have not yet undergone appropriate training, or do not have the requisite "need to know" is "only a theoretical and speculative possibility." *Neurological Surgery*, 145 F.4th at 224 (internal quotation and citation omitted);[9] *see also Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451-52

---

[8] OPM's updated Cybersecurity and Privacy Policy was officially approved by OPM's Director Scott Kupor, "who has expressed full support and commitment to its implementation. Director Kupor has emphasized that security and privacy must be woven into every fabric of our agency's mission and operations." Ashmore Decl., Ex. A.

[9] Unlike in *Neurological Surgery*, Plaintiffs have not raised other claims that have not been mooted by the removal of access permissions and updates to OPM's access control protocols. *Cf. Neurological Surgery*, 145 F.4th at 224 (noting that "there is nothing in the record to suggest that the reopening of the portal resolved the other issues alleged by [plaintiffs]").

(2d Cir. 2002) ("[T]here is no reason to think that, having completely revised its regulations through proper procedures, [defendant] has any intention of returning to the prior regulatory regime.").

Moreover, OPM's removal of access permissions for all "DOGE Agents" who had access to OPM systems containing PII, coupled with OPM's updated access control protocols, means that any effects of the alleged impermissible grant of access have been eradicated. Such individuals no longer have access to Plaintiffs' PII, and thus, any impermissible intrusion on Plaintiffs' personal privacy has ceased. And as noted above, *supra* footnote 6, there is no evidence in the record that anyone's PII has been extracted from OPM data systems and disseminated in violation of the Privacy Act.

Finally, the voluntary cessation exception does not apply when the challenged conduct is "highly fact-and-context-specific, rather than conduct that is likely to 'recur' on similar facts and in the same context." *Audubon of Kansas, Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1104 (10th Cir. 2023) (quotation and citation omitted). Now that OPM has updated its access control protocols, the majority of the "DOGE Agents" are no longer employees of OPM, and OPM has concluded that the remainder who are still employed by OPM do not currently need access to OPM data systems containing Plaintiffs' PII, it is exceedingly unlikely that anything similar to OPM's challenged conduct will recur. *See, e.g.*, *Unified Sch. Dist. No. 259, Sedgwick Cnty., Kan. v. Disability Rts. Ctr. of Kansas*, 491 F.3d 1143, 1150 (10th Cir. 2007) (where complained of behavior is "highly fact-specific," the voluntary cessation doctrine is inapplicable, because review of future instances of "wrongful behavior" may be "quite different than the complained-of example that already has ceased"); *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 23 (D.C. Cir. 2006) ("[T]he essential point is that the case before us is highly dependent upon a series of

facts unlikely to be duplicated in the future." (internal quotation and citation omitted)). As a result, the voluntary-cessation exception does not apply.

## II.    Plaintiffs' Claims Are No Longer Ripe for Review

Even if Plaintiffs' claims were not moot, their current APA challenge to OPM's adherence to the Privacy Act is no longer ripe for review. OPM's previous decision to grant access is no longer in place, and OPM has updated its access controls for future grants of access. The propriety of any future grant of access to OPM employees will turn on the particular facts at issue in a decidedly different context. Simply put, "regularly moving targets do not raise issues fit for review." *NTEU*, 149 F.4th at 786.

"The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted). A central purpose of this doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). To determine whether a challenge to administrative action is ripe for judicial review, a court proceeds with a two-step inquiry, "'requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *New York C.L. Union v. Grandeau*, 528 F.3d 122, 131-32 (2d Cir. 2008) (quoting *Abbott Labs.*, 387 U.S. at 149)).

### A.  Plaintiffs' Challenge Is No Longer Fit for Review

Plaintiffs' challenge is no longer fit for review because it necessarily depends on the highly fact-specific nature of any future grant of access by OPM. Thus, unlike "a purely legal question that is eminently fit for judicial review," *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 227

(2d Cir. 1998), the propriety of any future grant of access "is distinctly a matter of fact beyond the prescience of this court and is thus currently subject to abstract disagreements over matters that are premature for review." *United States v. Balon*, 384 F.3d 38, 46 (2d Cir. 2004) (internal quotation marks and citation omitted).

Plaintiffs' claim for declaratory relief is similarly not ripe for review. "[E]ven assuming that [Plaintiffs'] request for declaratory relief is not moot, it is plain that such a challenge is not ripe for review." *City of Houston*, 24 F.3d at 1430. First, Plaintiffs' challenge concerns OPM's prior decision to grant access, a decision which is no longer in effect. Second, this Court has "no means to evaluate in the abstract the myriad circumstances that might" implicate a future alleged violation of the Privacy Act. *Id.* at 1431. Indeed, were the Court to rule on Plaintiffs' challenge with respect to any hypothetical future grants of access, "it would be required to conduct a pseudo-rulemaking proceeding by examining and weighing all of the considerations that might lead the agency to [grant access to individuals] in the future." *Id.* (internal quotation and citation omitted).

The withdrawal of access permissions for all "DOGE Agents," coupled with OPM's updates to its mandatory access control protocols, "removes any semblance of a relevant and applicable factual record that can be analyzed to determine whether and to what extent relief is appropriate." *California ex rel. Lockyer*, 2006 WL 2038491, at *2. "Any injunction at this point would be untethered to an existing controversy or factual record." *Id.* The Court cannot issue a declaratory judgment regarding OPM's past grant of access—that would undoubtedly be an impermissible advisory opinion. And further review of OPM's adherence to the Privacy Act going forward would not only be impermissible under the APA, "[t]hat review would have to take place

19

without benefit of the focus that a particular [decision to grant access] could provide." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 736 (1998).

### B. Plaintiffs Will Not Suffer Hardship

Plaintiffs similarly will not suffer any cognizable hardship if the Court declines further review of OPM's past grant of access for compliance with the Privacy Act. OPM's removal of access permissions for all "DOGE Agents" who had access to OPM systems containing Plaintiffs' PII, along with OPM's decision to update its mandatory access control protocols, has removed any concrete threat to Plaintiffs' personal privacy. Even were their personal privacy still at stake, such an "abstraction" is not the type of hardship that may make a claim ripe because it is "inadequate to support suit unless the person's primary conduct is affected." *Texas v. United States*, 523 U.S. 296, 302 (1998). "Unlike in cases allowing pre-enforcement review, the actions challenged here do not require [Plaintiffs] 'to engage in, or to refrain from, any conduct.'" *NTEU*, 149 F.4th at 786 (quoting *Texas v. United States*, 523 U.S. at 301). "And if their fears come to pass"—*e.g.*, for some unforeseen reason OPM decides to grant access to "DOGE Agents" in contravention of its mandatory access control protocols—Plaintiffs "may 'protect all of their rights and claims by returning to court when the controversy ripens.'" *Id.* (quoting *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 285 (D.C. Cir. 2003)).

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss this action.

Dated: New York, New York
December 5, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for Defendants

By:    /s/ David E. Farber
JEFFREY OESTERICHER
DAVID E. FARBER
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2695/2772

21

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 6,574 words.

*/s/ David E. Farber*
Assistant United States Attorney
