**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. OFFICE OF PERSONNEL MANAGEMENT, *et al*., <br><br> Defendants. | Case No. 1:25-cv-01237-DLC |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

Pages(s)

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 1

FACTS ........................................................................................................................... 2

STANDARD OF REVIEW .......................................................................................... 9

ARGUMENT ................................................................................................................. 10

    I.      DEFENDANTS IMPROPERLY BROUGHT THIS MOTION BEFORE
           DISCOVERY ................................................................................................. 11

    II.     PLAINTIFFS' CLAIMS ARE NOT MOOT ........................................................ 12

           A.     Defendants Fail to Show They Ended the Challenged Program .............. 13

           B.     The Voluntary Cessation Doctrine Bars Dismissal ................................. 16

                     1.     Defendants fail to show they won't reinstate the challenged
                             program ......................................................................................... 16

                              a.     Defendants continue to defend the challenged program .... 16

                              b.     The timeline shows Defendants modified the challenged
                                    program in response to this litigation ................................. 17

                              c.     The challenged program is continuous and deliberate. ...... 19

                     2.     Defendants fail to show they remedied the continuing injuries
                               caused by the challenged program. ................................................ 20

                     3.     Defendants' voluntary cessation cases do not apply ..................... 22

           C.     This Case is Capable of Repetition But Evading Review ........................ 24

    III.    PLAINTIFFS' CLAIMS ARE RIPE ................................................................. 25

           A.     Plaintiffs' Claims Are Fit for Judicial Resolution ................................... 26

            B.     Plaintiffs Will Endure Hardships if Decision is Withheld ........................ 28

CONCLUSION ............................................................................................................... 29

CERTIFICATE OF COMPLIANCE ............................................................................. 30

# TABLE OF AUTHORITIES

Pages(s)

**Cases**

*Abbot Labs. v. Gardner*,
387 U.S. 136 (1967) .......................................................................................... 24, 26

*AFGE v. Hawley*,
543 F. Supp. 2d 44 (D.D.C. 2008) .......................................................................... 27

*AFGE v. OPM*,
777 F. Supp. 3d 253 (S.D.N.Y. April 3, 2025) ................................................... 10, 25

*AFGE v. OPM*,
786 F. Supp. 3d 647 (S.D.N.Y. June 9, 2025) ............................................... *passim*

*Ahrens v. Bowen*,
852 F.2d 49 (2d Cir. 1988) ........................................................................ 10, 17, 18

*Already LLC v. Nike*,
568 U.S. 85 (2013) ................................................................................................. 15

*AT&T Corp. v. FCC*,
349 F.3d 692 (D.C. Cir. 2003) ............................................................................... 28

*Audubon of Kansas, Inc. v. U.S. Dep't of Interior*,
67 F.4th 1093 (10th Cir. 2023) ............................................................................. 23

*Authors Guild, Inc. v. HathiTrust*,
755 F.3d 87 (2d Cir. 2014) .................................................................................... 26

*Califano v. Sanders*,
430 U.S. 99 (1977) ................................................................................................. 24

*California v. U.S. Forest Serv.*,
No. C-04-2588, 2006 WL 2038491 (N.D. Cal. July 20, 2006) ................................ 22

*Callahan v. Cnty. of Suffolk*,
96 F.4th 362 (2d Cir. 2024) ................................................................................... 12

*Carter v. HealthPort*,
822 F.3d 47 (2d Cir. 2016) ...................................................................................... 9

*Chafin v. Chafin*,
568 U.S. 165 (2013) ........................................................................................ 12, 13

*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982) ........................................................................................ 10, 18

*Conn. Parents Union v. Russell-Tucker*,
8 F.4th 167 (2d Cir. 2021) ....................................................................................... 9

*Cook v Colgate Univ.*,
992 F.2d 17 (2d Cir. 1993) .................................................................................... 25

*Davis v. FEC,*
    554 U.S. 724 (2008)................................................................................ 24

*Dennin v. Conn. Interscholastic Athletic Conf.,*
    94 F.3d 96 (2d Cir. 1996) ..................................................................... 25

*Doe v. Civil Serv. Commn.,*
    483 F. Supp. 539 (S.D.N.Y. 1980) ....................................................... 14

*Exch. Natl. Bank v. Touche Ross,*
    544 F.2d 1126 (2d Cir. 1976) ........................................................... 9, 10

*Exxon v. Healey,*
    28 F.4th 383 (2d Cir. 2022) ................................................................. 23

*Farez-Espinoza v. Napolitano,*
    No. 08-cv-11060, 2009 WL 1118098 (S.D.N.Y. Apr. 27, 2009) ......... 10

*FBI v. Fikre,*
    601 U.S. 234 (2024)................................................... 9, 10, 12, 16

*Friends of the Earth v. Laidlaw Srvcs.,*
    528 U.S. 167 (2000)......................................................................... 9, 16

*Fund for Animals v. BLM,*
    460 F.3d 13 (D.C. Cir. 2006) .............................................................. 23

*Giammatteo v. Newton,*
    452 F. App'x 24 (2d Cir. 2011) ............................................................. 9

*Gonzalez v. Cuccinelli,*
    985 F.3d 357 (4th Cir. 2021) ............................................................... 23

*Granite State Advertising v. Orange,*
    303 F.3d 450 (2d Cir. 2002) ................................................................ 22

*Guadagno v. Leviathan Assocs.,*
    932 F. Supp. 94 (S.D.N.Y. 1996) ....................................................... 10

*Guarasio v. FBI,*
    No. 18-cv-2791, 2023 WL 7182057 (D.D.C. Nov. 1, 2023).............. 17

*Hecht Co v. Bowles,*
    321 U.S. 321 (1944).............................................................................. 24

*Houston v. HUD,*
    24 F.3d 1421 (D.C. Cir. 1994) ............................................................ 25

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,*
    725 F.3d 65 (2d Cir. 2013) .................................................................. 26

*Kamen v. Am. Tel. & Tel. Co.,*
    791 F.2d 1006 (2d Cir. 1986) .............................................................. 11

*Kingdomware v. U.S.,*
    579 U.S. 162 (2016).............................................................................. 24

*Lacewell v. Off. of Comptroller of Currency*,
   999 F.3d 130 (2d Cir. 2021) ............................................................. 28

*Leopold v. DOD*,
   752 F. Supp. 3d 66 (D.D.C. 2024) ................................................... 19

*Lewis v. Continental Bank*,
   494 U.S. 472 (1990)........................................................................... 24

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983).............................................................................. 9

*Makarova v. U.S.*,
   201 F.3d 110 (2d Cir. 2000) ............................................................... 9

*Mhany Mgt. v. Nassau County*,
   819 F.3d 581 (2d Cir. 2016) ...................................................... *passim*

*N.Y. Civil Liberties Union v. Grandeau*,
   528 F.3d 122 (2d Cir. 2008) ....................................................... 26, 28

*Nat'l Mining Ass'n v. Interior Dept.*,
   251 F.3d 1007 (D.C. Cir. 2001) ........................................................ 22

*Nat'l Org. for Marriage, Inc. v. Walsh*,
   714 F.3d 682 (2d Cir. 2013) ............................................................. 26

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) .......................................................................... 28

*Neurological Surgery Prac. v. HHS*,
   145 F.4th 212 (2d Cir. 2025) ............................................................ 24

*New York v. Raimondo*,
   No. 19-cv-9380, 2021 WL 1339397 (S.D.N.Y. Apr. 9, 2021) ............... 22

*New Yorkers for Religious Liberty v. City of New York*,
   125 F.4th 319 (2d Cir. 2025) ............................................................ 20

*Norton v. Utah Wilderness All.*,
   542 U.S. 55, 61-62 (2004) ................................................................ 23

*Norwegian Cruise Line v. State Surgeon General*,
   55 F.4th 1312 (11th Cir. 2022) ................................................ 14, 15, 17

*NRDC v. Energy Dept.*,
   362 F. Supp. 3d 126 (S.D.N.Y. 2019) ..................................... 10, 17, 18

*Palmer v. Amazon*,
   51 F.4th 491 (2d Cir. 2022) ............................................................. 13

*Parents Involved v. Seattle Sch. Dist.*,
   551 U.S. 701 (2007)..................................................................... 10, 16

*Parker v. Columbia Pictures Indus.*,
   204 F.3d 326 (2d Cir. 2000) ............................................................. 12

*Parra Rodriguez v. Noem*,
No. 25-cv-616, 2025 WL 1284722 (D. Conn. May 1, 2025) ............................................. 13, 20

*Preiser v. Newkirk*,
422 U.S. 395 (1975)............................................................................................................. 23

*Princeton Univ. v. Schmid*,
455 U.S. 100 (1982)............................................................................................................. 24

*Reno v. Catholic Soc. Services, Inc.*,
509 U.S. 43 (1993)............................................................................................................... 26

*Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*,
10 F.4th 87 (2d Cir. 2021) ................................................................................................... 26

*Rosemere Neighbors v. EPA*,
581 F.3d 1169 (9th Cir. 2009) ............................................................................................. 19

*Sch. Dist. 259 v. Disability Rts. Ctr.*,
491 F.3d 1143 (10th Cir. 2007) ........................................................................................... 23

*Sheely v. MRI Network*,
505 F.3d 1173 (11th Cir. 2007) ..................................................................................... 17, 19

*Soto-Lopez v. New York City Civ. Serv. Comm'n*,
840 F.2d 162 (2d Cir. 1988) ............................................................................................... 20

*Srour v. NYC*,
117 F.4th 72 (2d Cir. 2024) ................................................................................................ 23

*Texas v. U.S.*,
523 U.S. 296 (1998)............................................................................................................. 26

*Thomas v. Union Carbide Agric. Prods. Co.*,
473 U.S. 568 (1985)............................................................................................................. 26

*Town of Newburgh v. Newburgh LLC*,
151 F.4th 96 (2d Cir. 2025) ................................................................................................ 25

*Trinity Lutheran Church v. Comer*,
582 U.S. 449 (2017)............................................................................................................. 10

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)............................................................................................................. 24

*Tsombanidis v. West Haven Fire Dept.*,
352 F.3d 565 (2d Cir. 2003) ............................................................................................... 10

*U.S. v. W.T. Grant*,
345 U.S. 629 (1953)............................................................................................................. 19

*Variscite NY Four, LLC v. New York State Cannabis Control Bd.*,
152 F.4th 47 (2d Cir. 2025) ................................................................................................ 26

*Video Tutorial Services v. MCI*,
79 F.3d 3 (2d Cir. 1996) ...................................................................................................... 10

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ................................................................. 9, 10, 12, 16

*WildEarth Guardians v. Zinke,*
    368 F. Supp. 3d 41 (D.D.C. 2019) ............................................................... 11

*Wildlife Preserves, Inc. v. Romero,*
    153 F.4th 192 (2d Cir. 2025) ....................................................................... 28

**Statutes**

5 U.S.C. § 552a(b)(1) .................................................................................... 27

5 U.S.C. § 552a(e)(10) .................................................................................. 27

5 U.S.C. § 703 ............................................................................................... 24

5 U.S.C. § 706(1) .......................................................................................... 23

5 U.S.C. § 706(2)(A) ..................................................................................... 23

**Other Authorities**

*DOGE Isn't Dead. Here's What Its Operatives Are Doing Now*, Wired (Dec. 2, 2025) ............ 14

Exec. Order No. 14,158, 90 C.F.R. 8441 (2025) .................................................. *passim*

Government Accountability Project, Protected Whistleblower Disclosure to Congress
    (Aug. 26, 2025) .................................................................................................. 5

*The "Presumption of Regularity" in Trump Administration Litigation*, Just Security
    (Nov. 20, 2025) .................................................................................................. 9

**Rules**

Fed. R. Civ. P. 12(b) ..................................................................................... 11

Fed. R. Civ. P. 12(c) ..................................................................................... 11

Fed. R. Civ. P. 12(d) ..................................................................................... 11

Fed. R. Civ. P. 16(b)(4) ................................................................................. 12

# INTRODUCTION

This case continues to present a live controversy and is ripe for adjudication. Defendants do not meet their heavy burden to prove this case is moot, particularly after Plaintiffs have already twice established their standing.

The government conduct that gave rise to this lawsuit has not ended. DOGE still operates. The DOGE Executive Order remains in force and continues to demand "full and prompt access" to agency records. The Office of Personnel Management ("OPM") continues to wrongly assert the power to disclose millions of government-employee records to DOGE agents simply because those agents "may" have an unidentified need at some future point. Defendants' updated privacy and cybersecurity policy, timed for this motion, does not say otherwise. And Defendants' "current" purported removal of DOGE agents from OPM records systems can be undone at any moment with a few keystrokes. Defendants' minor changes to the challenged program should be seen for what they are—a tactic timed to evade the merits of this case.

Throughout this litigation, the Court has acknowledged the ongoing harms to Plaintiffs: OPM's reckless and needless disclosure of millions of government employees' records to DOGE; the still-unmitigated cybersecurity risks those administrative grants of access created; and DOGE and its agents' continued retention of Plaintiffs' records outside of OPM systems. Defendants have not proved those harms have been addressed because, among other reasons, they chose not to investigate.

The one thing Defendants' motion proves is the need for extra-record discovery, which Plaintiffs currently seek in a pending motion. It would be improper to grant Defendants' jurisdictional motion without allowing Plaintiffs the opportunity to gather evidence and test

Defendants' representations, particularly given that the Administrative Record has proved incomplete, misleading, and incorrect throughout this litigation.

## FACTS

**Defendants' Ongoing Policy of PII Disclosure to DOGE Agents**

On January 20, 2025, President Trump signed an executive order establishing the U.S. DOGE Service ("DOGE" or "USDS") ostensibly for "modernizing federal technology and software." Exec. Order No. 14,158, 90 C.F.R. 8441 (2025) ("E.O."). Among other things, the E.O. mandates that "Agency Heads shall take all necessary steps, in coordination with the USDS Administrator and to the maximum extent consistent with law, to ensure USDS has *full and prompt access to all unclassified agency records*, software systems, and IT systems." E.O. § 4(b) (emphasis added).

OPM acted quickly and unlawfully to implement the E.O., which remains in effect today. Starting on January 20, OPM gave dozens of DOGE agents administrative access to its computer systems, and OPM disclosed the highly sensitive records of millions of Americans. OPM-000089 - 000091.[1] OPM tried to justify the disclosure of records to DOGE agents by claiming the agency needed to be prepared for some unknown event. This justification was first articulated by former OPM Director Charles Ezell on January 27: "Right now we don't have immediate plans to change anything but if we need to we might need to move quickly." OPM-000028-000029.

---

[1] When citing to the Administrative Record, this brief uses the Bates number affixed to the bottom right-hand side of the record, such as OPM-000001. When citing to other documents on the docket, this brief uses the ECF number and the ECF-stamped blue page numbers on the top right-hand corner of the document. When referring to a particular DOGE agent, this brief uses the previously agreed upon monikers, like "OPM-2." When referring to the pending motion to dismiss (ECF No. 163), this brief uses the term "MTD."

Continuing through today, Defendants maintain that the "need" to "be prepared" justifies OPM's past and future disclosures of personal records to DOGE agents under the Privacy Act. *See* Opp. to P.I. Motion, ECF No. 95 at 36 ("The initial justification for granting access permissions was thus appropriate."); May 29, 2025, Tr., Examination of Greg Hogan, ECF No. 125 at 123:9–10 ("[T]he intention was that they may have a need to use those permissions."); Revised Second Report, ECF No. 148 at 6–7 ("access was granted in order to be prepared to implement changes to this system"); MTD at 21 n.7 ("OPM does not concede that its prior grants of access were in violation of the Privacy Act or the APA."). Finding such a "need" sufficient to justify disclosure under the Privacy Act would render the Act meaningless.

**The Preliminary Injunction Against OPM**

On June 9, this Court held that Plaintiffs were entitled to a preliminary injunction, finding that OPM likely violated the Privacy Act's disclosure and cybersecurity requirements. *AFGE v. OPM (PI)*, 786 F. Supp. 3d 647, 677 (S.D.N.Y. June 9, 2025). On June 20, this Court ordered Defendants to file two reports: one describing OPM's procedures adopted since March 6 to ensure compliance with the Privacy Act, with respect to new grants of access to personally identifiable information (PII); and the other describing DOGE agents' continued access to OPM systems. ECF No. 134.

**OPM's Updated Policies**

On July 18, then-OPM CIO Greg Hogan sent a memo to OPM's security and human resources leaders outlining a series of "interim" requirements for DOGE agents. Those requirements addressed training, appointment, vetting, and documentation of a need for future access to certain data systems. ECF No. 140-1. OPM told this Court on that same day that these changes were "not required," and that its old procedures were "adequate to ensure compliance

with the Privacy Act." ECF No. 140. Defendants now acknowledge they adopted the new procedures "in response to this Court's preliminary injunction opinion." MTD at 9.

On November 18, OPM updated its Cybersecurity and Privacy Policy in a section titled "Access Control." ECF No. 168-2. This was only a week before Defendants' deadline to move to dismiss on grounds of mootness. ECF No. 156. Among other things, this updated policy outlined certain steps that an OPM System Owner ("SO") must take before allowing a new employee or contractor to gain access to a system that contains PII. ECF No. 168-2 at 3. The SO must: (1) confirm that the employee completes cybersecurity training; (2) confirm that the employee is properly appointed or detailed; (3) confirm that the employee is appropriately vetted; (4) provide an explanation for the employee's "need" for access to any system; and (5) receive written approval that the access "fits within the 'need to know' criteria of the Privacy Act." *Id.*

OPM's updated policy neither explains what makes for a legitimate "need to know," nor how the decisionmaker should determine that need. The updated policy also does not disclaim OPM's continued position that its past disclosures of records to DOGE agents did not violate the Privacy Act. MTD at 21 n.7.

And OPM's updated policy does not include cybersecurity-mitigation measures for past illegal disclosures. Indeed, OPM explicitly chose not to investigate any movement of records from OPM systems to DOGE systems or elsewhere.[2] *See* ECF No. 148 at 5 ("No further mitigation procedures are contemplated with respect to past access granted to such DOGE Agents.").

---

[2] The movement of records from OPM to DOGE is detailed throughout the Complaint. *See, e.g.*, ECF. 1 ¶¶ 5, 31, 34, 36–44, 48–49, 54, 62–63, 70.

Despite the lack of investigation, the record shows that DOGE agents accessed OPM systems many times (OPM-000103); OPM employees extracted data from OPM systems and gave it to DOGE agents (ECF No. 98 ¶ 12; ECF No. 125 at 171:8–11, 171:24–173:3); DOGE itself has the goal of obtaining "full and prompt" access to OPM records (E.O. § 4(b)); and numerous DOGE agents (including OPM-4, OPM-6, OPM-10, OPM-14, and OPM-16) were detailed to DOGE when they had access to OPM systems. Also, detail agreements between OPM and DOGE did not meaningfully limit how DOGE agents could share records with DOGE itself. For example, the detail agreements for OPM-10 and OPM-16 allowed them to disclose records if DOGE itself gave approval, whether or not OPM gave it. *See* OPM-000252; OPM-000285 ("The Detailee will not disclose nonpublic information to outside parties without prior approval from USDS."). And at other agencies like the Social Security Administration, DOGE agents (including OPM-4) have been accused of copying records to an unauthorized cloud environment.[3]

Plaintiffs' cybersecurity expert Bruce Schneier highlighted that DOGE's high-level, administrative access to OPM systems has made those systems "more vulnerable to attack" and "likely left behind vulnerabilities that could be exploited in future attack." ECF No. 88 at 9–14. Revoking DOGE agents' access is merely the first step in eliminating the ongoing harm. *Id.* at 15–16. According to Schneier, full remediation requires forensic analysis, compromise recovery in line with NIST standards, potential system rebuilds, and independent security assessments. *Id.* at 16. This is especially true for an agency like OPM, which suffered one of the largest

---

[3] Government Accountability Project, Protected Whistleblower Disclosure to Congress at 2–3 (Aug. 26, 2025), https://whistleblower.org/wp-content/uploads/2025/08/08-26-2025-Borges-Disclosure-Sanitized.pdf. Declaration of F. Mario Trujillo dated December 14, 2025, ("Trujillo Decl."), Ex. A.

cybersecurity breaches in U.S. government history, *id.* at 10—and remains a target for foreign adversaries.

**OPM's Removal of DOGE Agent Access**

On August 1, OPM submitted a Second Report as mandated by the Preliminary Injunction. ECF No. 141. That report contained errors requiring correction. On September 30, new OPM CIO Perryn Ashmore submitted a Revised Second Report, which describes access for four individual DOGE agents (OPM-2, OPM-3, OPM-5, and OPM-6). ECF No. 148 at 9.

As of December 5, OPM claims five DOGE agents currently work for OPM (OPM-2, OPM-3, OPM-5, OPM-10, and OPM-18). MTD at 13. But there is not simply a static list of 17 DOGE agents (OPM-2 through OPM-18). Rather, there is also a rotating cast of characters who at different times qualify as DOGE agents under this Court's criteria. ECF No. 134 at 3.

On December 5, Ashmore submitted another declaration. Citing to the Revised Second Report, Ashmore declares that no DOGE agents "currently" have access to Plaintiffs PII "in OPM Data Systems." ECF No. 168 at 3. The declaration fails to address three important points:

- First, it is unclear if this statement is current as of Ashmore's December 5 declaration, or as of the cited September 30 report.

- Second, it does not address DOGE and its agents' access to data not "in OPM Data Systems"—especially data that has already been extracted and moved elsewhere.

- Third, the statement identifies nothing that would prevent OPM from re-issuing access to DOGE agents again, if OPM deemed it necessary to "be prepared."

**Further Problems With the Administrative Record**

Throughout this litigation, the Administrative Record has proved incomplete, misleading, and incorrect. This undermines the credibility of Defendants' evidence, new and old. For example:

1. Despite telling the Court it would "complete" the Administrative Record, ECF No. 139 at 1, Defendants *still* have failed to certify that the record is complete. *Compare* ECF No. 168 at 5 ("I hereby certify, to the best of my knowledge, that the supplemental administrative record consists of the accompanying documents attached hereto[.]") *with AFGE v. Bessent,* 8:25-cv-430-DBL, ECF No. 51-1 (D. Md. March 7, 2025) ("I hereby certify, to the best of my knowledge, that the accompanying administrative record is complete[.]")

2. Rather than seek an extension of time to file its new Motion to Dismiss, Defendants chose to ignore its agreed deadline. ECF No. 157. That avoided the need for Defendants to promptly explain to the Court and opposing counsel that it was continuing through November 26 to investigate a DOGE agent's access to OPM records. ECF No. 168 at 3–4. Defendants were investigating at that time despite Ashmore's earlier September 30 declaration that "[c]urrently, none of the DOGE agents listed in this report have access permissions to OPM data systems containing plaintiffs' PII." ECF No. 148 at 5.

3. Defendants' Second Report filed on August 1 initially omitted information about OPM-3's access to OPM systems and contained other errors. ECF No. 151. It was corrected two months later. *Id.*

4. Defendants omitted from the Administrative Record any documents that discuss the extraction of records from OPM systems, including the movement of those records to

DOGE systems. Defendants chose not to investigate any such movement. *See* ECF No. 148 at 5 ("No further mitigation procedures are contemplated with respect to past access granted to such DOGE Agents.").

5. Only after multiple supplements did Defendants finally reveal that OPM-10 and OPM-16 were detailed to DOGE. *See* OPM-000251-000253; OPM-000284-000286. And even now, the Administrative Record fails to disclose that OPM-4 and OPM-14 were detailed to DOGE. *See* ECF No. 85-1 at 12, 15.

6. Defendants' Revised Second Report contradicts earlier record evidence about OPM-2's and OPM-6's access to the Enterprise Human Resources Integration (EHRI) database. According to that Report, OPM-2 and OPM-6 were given administrative access to "OPM Data: Enterprise Human Resources Integration (EHRI) – Databricks" on February 5, and access was removed on July 30 and July 21, respectively. ECF No. 148 at 9. But then-CIO Greg Hogan had declared on May 16 that EHRI permissions had been "disabled" in early February; a March audit made the same claim. ECF No. 98 at 5; OPM-000103. Defendants created a separate "false impression that EHRI had never been at issue or at risk." *AFGE (PI)*, 786 F. Supp. at 688.

7. Despite describing updated training procedures, the supplement to the Administrative Record contains no evidence that nine DOGE agents (OPM-10 through OPM-18) ever completed training. *See* ECF No. 168 at 6–8. Both OPM-10 and OPM-18, who still work at OPM, previously had access to at least one OPM system with PII. OPM-000103.

8. As the Court already noted, "there are unexplained discrepancies" between two audits in February and March 2025 describing DOGE agent access. *AFGE (PI)*, 786 F. Supp. at 672.

9. As the Court also noted, then-CIO Greg Hogan's February 19 Declaration "created the false impression that there were no irregularities" in training DOGE agents. *Id.* at 688.

10. The Court ruled that Plaintiffs had "rebutted any presumption of regularity on which the defendants seek to rely" about DOGE agents' need for OPM records. *Id.*[4]

### STANDARD OF REVIEW

"[T]he government, not petitioners, bears the burden to establish that a once-live case has become moot." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022). Further, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth v. Laidlaw Srvcs.*, 528 U.S. 167, 190 (2000). This burden of proof serves important policies. First, "a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off." *FBI v. Fikre*, 601 U.S. 234, 241 (2024). Second, it may be "more wasteful than frugal" to dismiss a case "at an advanced stage" on grounds of mootness. *Friends of the Earth*, 528 U.S. at 191–92.

Defendants' burden-of-proof cases are not to the contrary. *See* MTD at 13–14. One is *Friends of the Earth*. Another briefly discusses mootness but not the burden of proof. *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). The remainder do not address mootness at all. *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 175 (2d Cir. 2021); *Carter v. HealthPort*, 822 F.3d 47, 57 (2d Cir. 2016); *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011); *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000); *Exch. Natl. Bank v. Touche Ross*, 544 F.2d

---

[4] Many other federal judges in the past year have likewise rejected the presumption of regularity when asserted by the federal government. *The "Presumption of Regularity" in Trump Administration Litigation*, Just Security (Nov. 20, 2025), https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation/. Trujillo Decl., Ex. B.

1126, 1131 (2d Cir. 1976); *Guadagno v. Leviathan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996).

"[F]or governmental defendants no less than for private ones," a defendant asserting mootness "must prove no reasonable expectation remains that it will return to its old ways." *Fikre*, 601 U.S. at 241 (cleaned up). This burden is "heavy," *West Virginia*, 597 U.S. at 719, and "stringent," *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982). Many governmental defendants fail to meet it. *See, e.g., Fikre*, 601 U.S. at 242; *West Virginia*, 597 U.S. at 719–20; *Parents Involved v. Seattle Sch. Dist.*, 551 U.S. 701, 719 (2007); *Trinity Lutheran Church v. Comer*, 582 U.S. 449, 457 n.1 (2017); *City of Mesquite*, 455 U.S. at 289; *Mhany Mgt. v. Nassau County*, 819 F.3d 581, 604 (2d Cir. 2016); *Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565, 574 (2d Cir. 2003) (superseded on other grounds by regulation); *Ahrens v. Bowen*, 852 F.2d 49, 52–53 (2d Cir. 1988); *NRDC v. Energy Dept.*, 362 F. Supp. 3d 126, 137–42 (S.D.N.Y. 2019); *Farez-Espinoza v. Napolitano*, No. 08-cv-11060, 2009 WL 1118098, at *4 (S.D.N.Y. Apr. 27, 2009).

On the other hand, a party asserting that a case is "capable of repetition, yet evading review" must prove this exception to mootness. *Video Tutorial Services v. MCI*, 79 F.3d 3, 6 (2d Cir. 1996). Plaintiffs do so below.

## ARGUMENT

This case presents a live controversy, fit for the extra-record discovery Plaintiffs seek, ECF No. 159, leading to consideration of the merits of Plaintiffs' Privacy Act and APA claims on summary judgment. Plaintiffs have twice demonstrated their standing. *AFGE v. OPM (MTD)*, 777 F. Supp. 3d 253, 266 (S.D.N.Y. April 3, 2025); *AFGE (PI)*, 786 F. Supp. 3d at 677.

Defendants cannot now evade a reckoning with erroneous assertions about mootness and ripeness. As this Court earlier explained:

> Congress enacted the Privacy Act in light of government abuse, including improper searches by government authorities during the Colonial Era, government investigations of federal employees in the McCarthy Era, and government wiretapping during the Watergate Era. The plaintiffs have an interest in avoiding the "Big Brother' government monitoring that the Privacy Act is designed to prevent.

*Id.* at 694.

## I.    DEFENDANTS IMPROPERLY BROUGHT THIS MOTION BEFORE DISCOVERY

The Court should deny Defendants' motion to dismiss and grant Plaintiffs' pending discovery motion. ECF No. 158. It is improper to "deny plaintiff limited discovery" and rely on "conclusory" declarations when a moving party presents evidence to support a jurisdictional motion. *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (requiring "party asserting jurisdiction be permitted discovery of facts demonstrating jurisdiction, at least where the facts are peculiarly within the knowledge of the opposing party."). Even in APA cases, Plaintiffs are entitled to "extra-record evidence to establish standing." *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 61 (D.D.C. 2019).

Moreover, because Defendants answered Plaintiffs' complaint (ECF No. 76), the proper procedural vehicle for Defendants' motion is Fed. R. Civ. P. 12(c), which is used "[a]fter the pleadings are closed." On the other hand, Fed. R. Civ. P. 12(b) is not appropriate because those motions are made "before pleading." And under Fed. R. Civ. P. 12(d), "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to" a Fed. R. Civ. P. 12(c) motion. Discovery is particularly essential here given the credibility problems with Defendants' record. *See supra* at 7–9 ("Further Problems With the Administrative Record").

Finally, the Court should dismiss Defendants' motion as untimely. Defendants simply ignored the parties' agreed upon schedule (ECF No. 156), rather than requesting an extension of time to file their motion later. *See* Individual Practices in Civil Cases, Judge Cote § 1(E). Defendants also failed to show the typical "good cause" required to modify a schedule. *See, e.g.,* Fed. R. Civ. P. 16(b)(4); *Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 370 (2d Cir. 2024) ("Whether good cause exists turns on the diligence of the moving party."). Defendants already "had all the information necessary," *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000), to support their motion on August 1—their deadline to produce their access report to the Court. *See* ECF No. 134. Or at least they should have.

## II. PLAINTIFFS' CLAIMS ARE NOT MOOT

"The doctrine of mootness … addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *West Virginia*, 597 U.S. at 719 (cleaned up). "The limited authority vested in federal courts to decide cases and controversies means that they may no more pronounce on past actions that do not have any 'continuing effect' in the world than they may shirk decision on those that do." *Fikre*, 601 U.S. at 241.

A case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Even when a defendant can show such impossibility, there are "exceptions to mootness, particularly [i] voluntary cessation cases and [ii] cases capable of repetition but evading review." *Mhany*, 819 F.3d at 603. To prevail on a claim of voluntary cessation, a defendant must show both "that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* *Accord* MTD at 22.

Here, for four independent reasons, this Court should not dismiss the case on grounds of mootness. First, Defendants cannot show "it is impossible for [this Court] to grant any effectual relief," *Chafin*, 568 U.S. at 172, so this case is not moot. Rather, Defendants' new policy and recent data-access decisions have not ended the challenged program, which continues to violate Plaintiffs' rights. Second, Defendants cannot show "there is no reasonable expectation that the alleged violation will recur," *Mhany*, 819 F.3d at 603, as required by the voluntary cessation doctrine. The risk is too great that if this Court turns its back, Defendants will return to their old ways. Third, Defendants cannot show that their recent actions "have completely and irrevocably eradicated the effects of the alleged violation," *id.*, as also required by the voluntary cessation doctrine. Harms caused by the challenged program continue: there has been no accounting for what DOGE agents have done with the PII they wrongfully accessed (such as retain, use, and/or disclose it) and no repair of the dangerous cybersecurity vulnerabilities Defendants created by these reckless disclosures. Fourth, the challenged program is "capable of repetition but evading review," *Mhany*, 819 F.3d at 603, another exception to mootness. In the time it takes for OPM to wrongfully grant PII access to DOGE agents and then withdraw that access, it is difficult if not impossible to litigate that unlawful disclosure.

### A. Defendants Fail to Show They Ended the Challenged Program

A case becomes moot "only when it is impossible for a court to grant any effectual relief." *Chafin*, 568 U.S. at 172. *Accord* MTD at 16. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin*, 568 U.S. at 172. Courts regularly reject mootness when the challenged conduct continues. *See, e.g., Palmer v. Amazon*, 51 F.4th 491, 503–04 (2d Cir. 2022); *Parra Rodriguez v. Noem*, No. 25-cv-616, 2025 WL 1284722, at *9 (D. Conn. May 1, 2025) (APA case; appeal withdrawn); *Doe v.*

*Civil Serv. Commn.*, 483 F. Supp. 539, 551 (S.D.N.Y. 1980) (APA case); *Norwegian Cruise Line v. State Surgeon General*, 55 F.4th 1312, 1316 (11th Cir. 2022).

Here, Defendants cannot show it is "impossible" for this Court to grant effectual relief because the challenged program continues. The E.O. still commands OPM and other federal agencies to establish "DOGE Teams" to implement "the President's DOGE Agenda," and to grant DOGE "full and prompt access" to agency records. 90 C.F.R. 8441. Five DOGE agents still work at OPM. MTD at 13. Others like OPM-4 continue to be affiliated with DOGE.[5] And OPM still claims that the "need" to "be prepared" justifies its past and future disclosures of personal records to DOGE agents under the Privacy Act.

Defendants' mootness argument boils down to two assertions about the challenged program. *See, e.g.,* MTD at 7, 15–16, 20. First, OPM on November 18, 2025, promulgated a new "Access Control" section of its Cybersecurity and Privacy Policy. MTD at 9-10; ECF Nos. 168-1 & -2. Second, OPM asserts it has "currently" withdrawn from DOGE agents any access to Plaintiffs' PII. MTD at 7, 12, 16, 23.

In fact, OPM's new policy does nothing to address a core defect of the challenged program: OPM grants DOGE agents access to Plaintiffs' records on the unlawful grounds that these agents *might* later need these records—a theory this Court rejected. *See AFGE (PI)*, 786 F. Supp. 3d at 687 ("[A] belief that there may be a need for access in the future does not qualify as a showing of need under" the Privacy Act.). The new policy states that before an OPM employee or contractor (including a DOGE agent) may have access to an OPM record system, the OPM's

---

[5] *DOGE Isn't Dead. Here's What Its Operatives Are Doing Now*, Wired (Dec. 2, 2025), https://www.wired.com/story/what-is-doge-doing-now/. Trujillo Decl., Ex. C.

Senior Agency Official for Privacy must determine that "the access fits within the 'need to know' criteria of the Privacy Act." ECF No. 168-2 § N(iv).

But OPM's updated policy does not explain what criteria justify a legitimate "need to know." Nor does it disclaim OPM's continuing position that the need to "be prepared" justifies under the Privacy Act OPM's wholesale disclosure of records to DOGE agents or others. *See* ECF No. 95 (Opposition to P.I. Motion) at 36 ("The initial justification for granting access permissions was thus appropriate."); ECF No. 125 (May 29, 2025 Transcript), Examination of Hogan at 123: 9–10 ("[T]he intention was that they may have a need to use those permissions."); ECF No. 148 (Revised Second Report) at 6–7 ("access was granted in order to be prepared to implement changes to this system"); MTD at 21 n.7 ("OPM does not concede that its prior grants of access were in violation of the Privacy Act or the APA.").[6]

Nor can Defendants moot the case with the carefully qualified assertion (four times in one brief) that OPM has "currently" withdrawn from DOGE agents their access to Plaintiffs' PII. MTD at 7, 12, 16, 23. Such fleeting changes, couched in wording that suggests that Defendants reserve the prerogative to reactivate DOGE agents' access at any time, leave the challenged program fully in place. *See Norwegian Cruise Line*, 55 F.4th at 1315 (a "live dispute" remained where a party did not change its practice "permanently or categorically," but only "for now and for the foreseeable future"). Moreover, given the Administrative Record's continuing infirmities, Defendants' untested assertions about current access permissions granted to DOGE agents are

---

[6] The new policy also requires sign-offs regarding an OPM employee's or contractor's training, appointment, and vetting, before they may have access to PII. ECF No. 168-2 at 3. But this does not address Defendants' asserted prerogative to disclose PII to DOGE agents because they might need it later. And OPM can withdraw the new policy with the stroke of a pen and return to its old ways. Accordingly, this case is unlike *Already LLC v. Nike*, 568 U.S. 85 (2013), where mootness rested on an "unconditional and irrevocable covenant." *Cf.* MTD at 17.

not credible and must be tested by the discovery that Plaintiffs now seek. *See supra* at 7–9 ("Further Problems With the Administrative Record").

## B.    The Voluntary Cessation Doctrine Bars Dismissal

Even if Defendants could show that their recent acts ended the challenged program (they cannot), the doctrine of "voluntary cessation" bars dismissal, unless Defendants prove both "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany*, 819 F.3d at 603. Defendants can prove neither, and either failure alone defeats dismissal.

### 1.    Defendants fail to show they won't reinstate the challenged program.

Defendants' burden is high: "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190. Defendants cannot meet this burden, because as explained below:

  a.   they have not repudiated the challenged program, and in fact continue to defend it;

  b.   the timeline shows Defendants have repeatedly modified the program in response to this litigation; and

  c.   the challenged program is continuous and deliberate rather than isolated and unintentional.

On this record, "[t]here are simply too many questions … to conclude that it is 'absolutely clear' that the parties will not resume the challenged conduct." *Mhany*, 819 F.3d at 605.

### a.    Defendants continue to defend the challenged program.

When a defendant asserts voluntary cessation, courts examine whether "a party[]repudiat[es]…its past conduct," *Fikre*, 601 U.S. at 243–44, or whether it "vigorously defends" it. *West Virginia*, 597 U.S. at 720 (citing *Parents Involved*, 551 U.S. at 719). Many

courts cite this factor when rejecting dismissal on grounds of voluntary cessation. *See, e.g.,*
*Ahrens*, 852 F.2d at 53 (defendant's "insistence on the validity of the challenged practice makes
it reasonable to expect that the conduct will be repeated"); *NRDC*, 362 F. Supp. 3d at 139
(defendant's failure to "categorically" state that it will not resume conduct creates reasonable
expectation that the conduct will recur); *Doe*, 483 F. Supp. at 551 (government's offer to provide
the relief requested "without an admission of wrongdoing" supports the conclusion that the case
is not moot); *Sheely v. MRI Network*, 505 F.3d 1173, 1186–87 (11th Cir. 2007); *Norwegian*
*Cruise Line*, 55 F.4th at 1317; *Guarasio v. FBI*, No. 18-cv-2791, 2023 WL 7182057, at *5
(D.D.C. Nov. 1, 2023). Here, Defendants have not repudiated the challenged program and, in
fact, insist their prior disclosures—and even the manner of disclosure—were lawful. Defendants'
pending motion to dismiss states: "OPM does not believe the institution of these specific access
control policies [the ones that supposedly moot this case] is *required* by the Privacy Act, and
OPM does not concede that its prior grants of access were in violation of the Privacy Act or the
APA." MTD at 21 n.7 (emphasis in original). Defendants' July 18 report to the Court says much
of the same: their pre-litigation protocols supposedly were "adequate to ensure compliance with
the Privacy Act," and their additional protocols supposedly were "not required." ECF No. 140.

Defendants' insistence that their action is lawful has not changed, even after the urging
from this Court during the June hearing about the preliminary injunction. ECF No. 135 at 7:14–
18 (the Court: "Again, I would hope the government would be more forthright in acknowledging
that and assuring the Court that that is not its intention going forward.").

> **b.** **The timeline shows Defendants modified the challenged**
> **program in response to this litigation.**

Courts should be particularly skeptical of claims of voluntary cessation that "appear to
track the development of th[e] litigation." *Mhany*, 819 F.3d at 604. In *Mhany*, the Second Circuit

rejected a county's argument that it had mooted a fair housing act claim by deciding to build a courthouse on the disputed site. 819 F.3d 603-05. The court reasoned that "suspicious timing and circumstances pervade the County's decision to build a courthouse," including its announcement "only on the eve of summary judgment," the project's "dorman[cy]" after the trial judge dismissed the county, and the placement of construction fences around the site "around the time" of appeal. *Id.* at 604. *See also, e.g., City of Mesquite*, 455 U.S. at 287, 289 (repeal of challenged ordinance was "in obvious response" to an adverse lower court ruling because it was less than a month earlier); *Ahrens*, 852 F.2d at 53 (defendant changed course "on the eve of plaintiffs' motion for summary judgment"); *NRDC*, 362 F. Supp. 3d at 140 (the "timing" of defendant's change was "two days before oral argument").

Here, the timeline shows that defendants have repeatedly modified the challenged program in response to this litigation. For example:

- On February 11, Plaintiffs filed this lawsuit. ECF No. 1. A day later, OPM's Acting Chief Information Security Officer began conducting an audit of "all internal OPM user accounts" created from January 20 to February 12. OPM-000054; *see also* OPM-000089– 102 (Account Creation Audit).

- On February 19—the same day that Defendants filed their TRO Opposition—three DOGE agents completed their privacy and cybersecurity training. *AFGE (PI)*, 786 F. Supp. at 687–88. Defendants then tried to hide that "troubling chronology." *Id.* at 688.

- On July 29 and 30—just days before an August 1 deadline to update the Court— Defendant OPM removed some database access permissions from OPM-2 and OPM-3. *See* ECF No. 148 at 9.

- On July 21, OPM "deactivated" access for a DOGE agent (OPM-3) to OPM databases, ECF No. 141 ¶ 6, just nine days before Defendants filed their First Report regarding such access. *Id*. On August 8, OPM "reactivated" this DOGE agent's access, ECF No. 148 ¶ 1(d), just eight days after the First Report was filed. ECF No. 141. On September 29, OPM re-deactivated this DOGE agent's access, ECF No. 148 at 9, just one day before the Second Report was filed. *Id. See also* MTD at 11 (acknowledging that for three DOGE agents, "access was removed as of September 29").

### c. The challenged program is continuous and deliberate.

When a defendant asserts that its voluntary cessation of the challenged conduct has mooted the case, a "relevant…factor" is "whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice." *Sheely*, 505 F.3d at 1184. *See also U.S. v. W.T. Grant*, 345 U.S. 629, 632 n.5 (1953) ("When defendants are shown to have settled into a continuing practice…courts will not assume that it has been abandoned without clear proof."); *Rosemere Neighbors v. EPA*, 581 F.3d 1169, 1175 (9th Cir. 2009) (in a case against an agency for failure to timely investigate complaints, the agency's post-litigation resolution of the plaintiff's complaint did not moot case, because the agency's "pattern of delay" towards other parties "can be relevant to the mootness analysis"); *Leopold v. DOD*, 752 F. Supp. 3d 66, 94 (D.D.C. 2024) (in a "pattern and practice case" against an agency for violating FOIA by failing to provide estimated response times, "a claim for injunctive relief is not rendered moot simply because the agency has complied with the FOIA request at issue in the litigation").

Here, the challenged program is continuous and deliberate as opposed to isolated and unintentional. The program derives from an executive order that remains operative. 90 C.F.R. 8441. It also derives from OPM's continuous (though flawed) position that the need to "be

prepared" justifies disclosure of records in defiance of the Privacy Act. *Supra* at 3. And it applies to millions of government employees.

### 2. Defendants fail to show they remedied the continuing injuries caused by the challenged program.

The second independent prong of the "voluntary cessation" doctrine requires the defendant to prove they have "completely and irrevocably eradicated the effects of the alleged violation." *Mhany*, 819 F.3d at 603; *see also New Yorkers for Religious Liberty v. City of New York*, 125 F.4th 319, 334–35 (2d Cir. 2025) (challenge to policy not moot because "backpay remains an available remedy for [plaintiff's] alleged wrongful termination"); *Soto-Lopez v. New York City Civ. Serv. Comm'n*, 840 F.2d 162, 168 (2d Cir. 1988) (challenge to government hiring preference not moot because defendants "wish to continue to use the current [hiring] lists that reflect the [discontinued hiring] requirements"); *Parra Rodriguez*, 2025 WL 1284722, at *9 (challenge to revocation of foreign student's SEVIS record not mooted by reinstatement, because the agency's past actions left the student "without a visa and with a gap in her SEVIS record").

Here, Defendants cannot meet this burden. Rather, there are two ongoing harms to Plaintiffs from Defendants' past violations of the Privacy Act and the APA: ongoing cybersecurity vulnerabilities and unrecovered copies of records extracted from OPM systems.

First, given the challenged program's flagrant violations of longstanding cybersecurity protocols, there is great risk of continuing cybersecurity vulnerabilities. Plaintiffs' expert Bruce Schneier concluded that DOGE agents' high-level access to OPM systems made its systems "more vulnerable to attack" and "likely left behind vulnerabilities that could be exploited in future attack." ECF No. 88 at 9–14. Revoking DOGE agents' access alone is merely the first step in eliminating the ongoing harm. *Id*. at 15-16. According to Schneier, full remediation requires forensic analysis, compromise recovery in line with NIST standards, potential system rebuilds,

and independent security assessments. *Id.* at 16. This is especially true for an agency like OPM, which suffered one of the largest cybersecurity breaches in U.S. government history in 2015. *Id.* at 12–13. Notably, that breach involved a hacker using a contractor's credentials to log in to OPM's system and create a backdoor, which was not immediately discovered. *Id.* at 9.

Second, given OPM's widespread disclosure of records to DOGE agents without ordinary oversight and vetting, it is likely that DOGE agents and DOGE itself retain copies of Plaintiffs' records, and they must be ordered to delete these copies. There is strong circumstantial evidence that data was extracted from OPM systems, and Defendants have failed to investigate this. DOGE agents accessed OPM systems many times. OPM-000103. Then-OPM CIO Greg Hogan testified that career OPM staff extracted personal data from OPM systems and gave it to DOGE employees. ECF No. 125 at 171–73. DOGE itself has the goal of obtaining "full and prompt" access to OPM records. E.O. § 4(b). Many DOGE agents (including OPM-4, OPM-6, OPM-10, OPM-14, and OPM-16) were detailed to DOGE when they had access to OPM systems, and the detail agreements between OPM and DOGE did not meaningfully limit how DOGE agents could share data with DOGE itself. For example, OPM-10 and OPM-16's detail agreements allowed them to disclose data if DOGE itself, not OPM, gave approval. *See* OPM-000252 & OPM-000285 ("The Detailee will not disclose nonpublic information to outside parties without prior approval from USDS.").

The likelihood of cybersecurity vulnerabilities and ongoing retention is further demonstrated by recent news that DOGE staff at another agency (including OPM-4) uploaded a sensitive Social Security database to a vulnerable cloud server, putting millions of Americans' data at risk of theft. *See* Trujillo Decl., Ex. A.

As this Court ruled in granting Plaintiffs' preliminary injunction motion: "plaintiffs have shown irreparable harm due to both [i] the unlawful disclosure of OPM records to employees working on the DOGE agenda and [ii] the increased risk to cybersecurity because of the unlawful disclosure." 786 F. Supp. 3d at 693. Plaintiffs seek an injunction tailored to remedy these harms, including an order commanding OPM to retrieve any records DOGE or its agents retained, and to audit and repair its cybersecurity systems.

### 3. Defendants' voluntary cessation cases do not apply.

Plaintiffs' voluntary cessation cases are just like this case. They show Defendants simply cannot meet their burden of proof on risk of recurrence and continuing harm. Defendants' voluntary cessation cases, on the other hand, are factually inapposite to this case. *See* MTD at 15-18, 21-23.

Defendants here follow the unaltered E.O. and a new agency policy that fails to address the gravamen of this lawsuit (PII disclosure without legitimate "need"), unlike cases in which the defendant agency "completely revised" the challenged rules. *Granite State Advertising v. Orange*, 303 F.3d 450, 451–52 (2d Cir. 2002); *New York v. Raimondo*, No. 19-cv-9380, 2021 WL 1339397, at *2–3 (S.D.N.Y. Apr. 9, 2021); *see also Nat'l Mining Ass'n v. Interior Dept.*, 251 F.3d 1007, 1009–10 (D.C. Cir. 2001) (a regulatory agency "published a rule…replacing the…rule at issue"); *California v. U.S. Forest Serv.*, No. C-04-2588, 2006 WL 2038491, at *1 (N.D. Cal. July 20, 2006) (a regulatory agency "withdr[e]w the [challenged] Plan in its entirety").

Moreover, Defendants here repetitively commit the same standardized violation of the Privacy Act and the APA pursuant to the challenged program: disclosure of PII to DOGE agents absent "need" and in a manner that degrades cybersecurity protections. Indeed, OPM

acknowledges disclosing PII in three of its record systems (Agency Talent Portal, OPM Data: EHRI Databricks, and USA Performance) to four DOGE agents (OPM-2, OPM-3, OPM-5, and OPM-6) for the identical unlawful reason: "in order to be prepared to implement changes to this system." ECF No. 148 at 6–7. This is unlike Defendants' "highly fact-specific" cases. *Audubon of Kansas, Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1104 (10th Cir. 2023) (water rights on particular land); *Sch. Dist. 259 v. Disability Rts. Ctr.*, 491 F.3d 1143, 1149–50 (10th Cir. 2007) (access to particular student records); *Fund for Animals v. BLM*, 460 F.3d 13, 22–23 (D.C. Cir. 2006) (removal of animals from particular land).

Plaintiffs here also continue to suffer irreparable harm—unmitigated cybersecurity vulnerabilities and continued retention of records—unlike cases where the plaintiff obtained complete relief. *Preiser v. Newkirk*, 422 U.S. 395 (1975) (plaintiff inmate was transferred back to minimum security, suffered no adverse action in the next ten months, enjoyed a file notation that his transfers did not bear on parole, and was up for parole within days); *Srour v. NYC*, 117 F.4th 72, 82 (2d Cir. 2024) (plaintiff applicant received contested permit, "subject to *automatic* renewal every three years," pursuant to "new implementing regulations") (emphasis in original); *Exxon v. Healey*, 28 F.4th 383, 395 (2d Cir. 2022) (plaintiff defeated a government enforcement action and government stipulated to destroying investigative documents, thereby mooting its challenge to a government investigation).

Finally, Plaintiffs did not bring a "failure to act" claim under Section 706(1) of the APA, *see* 5 U.S.C. § 706(1), so Defendants' cases decided under this statutory provision are irrelevant. *See* MTD at 19-20 (discussing *Norton v. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004), and *Gonzalez v. Cuccinelli*, 985 F.3d 357, 365–66 (4th Cir. 2021)). Rather, Plaintiffs bring a 706(2)(A) claim that Defendants *did* act—in violation of the Privacy Act's non-disclosure and

cybersecurity rules. Now Defendants must remedy those violations at the Court's command. The APA's remedies include "writs of prohibitory and mandatory injunction," 5 U.S.C. § 703, and these remedies "are equitable in nature." *Abbot Labs. v. Gardner*, 387 U.S. 136, 155 (1967), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 105 (1977). *See generally Trump v. CASA, Inc.*, 606 U.S. 831, 834 (2025) (noting "the complete-relief principle has deep roots in equity"); *Hecht Co v. Bowles*, 321 U.S. 321, 329 (1944) (the "essence of equity jurisdiction" is judicial power "to mould each decree to the necessities of the particular case").[7]

## C.     This Case is Capable of Repetition But Evading Review

Separate from voluntary cessation, there is another exception to the mootness doctrine: when a controversy is "capable of repetition, yet evading review." *Kingdomware v. U.S.*, 579 U.S. 162, 170 (2016). This applies "where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (cleaned up). Courts have rejected governmental assertions of mootness on this basis. *See, e.g., id.* (a bidder could continue to challenge a contract award to another business, though performance was complete); *Davis v. FEC*, 554 U.S. 724, 735–36 (2008) (a candidate could continue to challenge campaign finance laws, though the election was over).

Here, OPM recurringly provides DOGE agents with short-term access to records in periods too brief to litigate a case. *See* OPM-000103 (reporting intervals as short as one week between granting and removing access). Even brief access causes irreparable harm to Plaintiffs

---

[7] Defendants' other "voluntary cessation" cases are inapposite. *Lewis v. Continental Bank*, 494 U.S. 472, 482 (1990) (case moot where Congress changed "the legal framework governing the case"); *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (short per curiam opinion addressing none of the types of facts here); *Neurological Surgery Prac. v. HHS*, 145 F.4th 212, 224 (2d Cir. 2025) (defendant changed course "for reasons wholly unrelated to this litigation").

by compromising cybersecurity and allowing for the unlawful extraction of Plaintiffs' PII. Moreover, for the reasons discussed above, there is a "reasonable expectation" that OPM will again violate the Privacy Act's non-disclosure and cybersecurity requirements. Finally, the victims of these violations will include some of the nearly one million federal employees represented by the Plaintiff unions.

The facts here are unlike those in Defendants' "capable of repetition" cases. *See* MTD at 16-17, 21. Plaintiffs represent nearly one million workers, whose information remains in OPM systems, unlike cases where individual plaintiffs graduated, leaving no plaintiff subject to the challenged educational rules. *Dennin v. Conn. Interscholastic Athletic Conf.*, 94 F.3d 96, 100–01 (2d Cir. 1996); *Cook v Colgate Univ.*, 992 F.2d 17, 19–20 (2d Cir. 1993). Defendants here are breaking the law on their own initiative, not reacting to the actions of a third party, as in *Town of Newburgh v. Newburgh LLC*, 151 F.4th 96 (2d Cir. 2025) (defendant upstate city was unlikely to resume its unlawful limits on housing immigrants, because third-party downstate city stopped sending immigrants upstate). Plaintiffs here sued within weeks after Defendants created the challenged program, unlike a case where the plaintiff failed to "expeditiously" sue, delaying two years after the disputed funding was reduced and six months after the appropriation lapsed. *Houston v. HUD*, 24 F.3d 1421, 1427 (D.C. Cir. 1994).

## III.   PLAINTIFFS' CLAIMS ARE RIPE

Defendants' assertions that Plaintiffs' claims are somehow both too late (moot) and too early (unripe) are mistaken for largely the same reasons: this Court has twice determined that Plaintiffs have an ongoing injury. *AFGE v. OPM (MTD)*, 777 F. Supp. 3d at 266; *AFGE (PI)*, 786 F. Supp. 3d at 677. And none of the other facts introduced by Defendants alter that conclusion.

The ripeness doctrine is meant "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985). Serving similar goals as other justiciability doctrines, ripeness is derived from both Article III's constitutional limits and courts' own prudential considerations. *Reno v. Catholic Soc. Services, Inc.*, 509 U.S. 43, 58, n.18 (1993).

The Article III "'aspect of the ripeness doctrine overlaps with the standing doctrine,' and usually a determination 'that a plaintiff has Article III standing is enough to render its claim constitutionally ripe.'" *Variscite NY Four, LLC v. New York State Cannabis Control Bd.,* 152 F.4th 47, 58 (2d Cir. 2025) (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013)); *see also Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) ("Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing.").

Meanwhile, in determining whether a claim is "prudentially ripe," the Second Circuit employs a two-part test: "whether the claim is fit for judicial resolution and whether and to what extent the parties will endure hardship if decision is withheld." *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 10 F.4th 87, 100 (2d Cir. 2021); *N.Y. Civil Liberties Union v. Grandeau,* 528 F.3d 122, 132 (2d Cir. 2008) (citing *Gardner*, 387 U.S. at 148).

A.      **Plaintiffs' Claims Are Fit for Judicial Resolution**

The primary concern of the "fitness analysis" is "whether the issues sought to be adjudicated are contingent on unknowable future events." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 104 (2d Cir. 2014); *see also Texas v. U.S.,* 523 U.S. 296, 300 (1998) (unripe claim "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all").

Here, Plaintiffs continue to suffer from ongoing harms caused by Defendants' past actions. Section II(B)(2), *supra*. The decision in *AFGE v. Hawley*, 543 F. Supp. 2d 44 (D.D.C. 2008), which like this case involved Privacy Act subsection (e)(10) claims, is highly instructive. The plaintiffs in that case claimed that TSA violated the Privacy Act by failing to ensure the security of a missing hard drive containing the personal data of 100,000 employees. *Id.* at 46. The government argued this claim was unripe because "neither plaintiffs nor defendants can account for the hard drive's location and there is no evidence of unauthorized use of plaintiffs' information." *Id.* at 51. The court disagreed, writing that "[d]efendants' ripeness argument suffers from the same infirmity as its standing argument: future unauthorized use is not the basis of plaintiffs' claim." *Id.* Rather, "Plaintiffs are asking the court to determine whether defendants violated § 552a(e)(10) by failing to establish appropriate safeguards to insure the security of the hard drive, which, plaintiffs allege, resulted in the hard drive's loss and plaintiffs' injury." *Id.*

Here, an identical analysis should apply to Defendants' actions giving rise to the § 552a(e)(10) claim: their failure to institute appropriate safeguards on OPM systems. Defendants' past cybersecurity failures "likely left behind vulnerabilities" in OPM systems that, according to Plaintiffs' expert, now make Plaintiffs' records insecure. ECF No. 88 at 10. And Defendants' past disclosures of Plaintiffs' records in violation of § 552a(b)(1) mean those copies are essentially lost to Plaintiffs. As described above, there is strong circumstantial evidence that copies of Plaintiffs' records have been extracted from OPM systems and that unauthorized parties—specifically, DOGE and its agents—hold them. *See* Section II(B)(2), *supra*. Defendants provide no contrary evidence because they did not investigate. ECF No. 148 at 5 ("No further mitigation procedures are contemplated with respect to past access granted to such DOGE Agents.").

### B.      Plaintiffs Will Endure Hardships if Decision is Withheld

As an initial matter, this case presents "no institutional interests favoring postponement of review," and therefore Plaintiffs "need not satisfy the hardship prong" of the ripeness inquiry. *AT&T Corp. v. FCC,* 349 F.3d 692, 700 (D.C. Cir. 2003). "In the administrative context," the institutional interests served by the ripeness doctrine are to "'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies," and to "protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 148 (2d Cir. 2021) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003)).

Here, the Court has already ruled that Plaintiffs' claims concern "final agency action," and there is nothing abstract or "tentative" about OPM's decision to grant access to DOGE agents. *AFGE (PI)*, 786 F. Supp. 3d at 691. "It was also a decision from which legal consequences flow." *Id.*

Regardless, delaying adjudication would create serious hardship to Plaintiffs. Plaintiffs' personal privacy interests are not, as Defendants claim, an "abstraction," MTD at 26. This Court has already found that Plaintiffs "demonstrated a concrete injury analogous to intrusion upon seclusion. The records at issue concern the plaintiffs' most sensitive private affairs." *AFGE (PI)*, 786 F. Supp. 3d at 679. And these harms, particularly cybersecurity vulnerabilities and the retention of previously extracted data, persist despite any future agency changes to access protocols. So "the challenged action creates a direct and immediate dilemma" for Plaintiffs, and this Court should decline to dismiss on ripeness grounds. *Wildlife Preserves, Inc. v. Romero*, 153 F.4th 192, 201 (2d Cir. 2025) (quoting *Grandeau*, 528 F.3d at 134).

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

Dated: December 15, 2025

Respectfully submitted,

/s/*Mario Trujillo*

F. Mario Trujillo (admitted pro hac vice)
Victoria Noble
Cindy Cohn (admitted pro hac vice)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

Rhett O. Millsaps II
Mark A. Lemley (admitted pro hac vice)
Mark P. McKenna (admitted pro hac vice)
Christopher J. Sprigman
LEX LUMINA LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
(646) 898-2055

Norman L. Eisen (admitted pro hac vice)
Andrew Warren
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003

Subodh Chandra (admitted pro hac vice)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 W. 6th Street, Suite 400
Cleveland, OH 44113

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing contains 8,583 words, calculated using Microsoft Word for Mac, which complies with Rule 7.1(c) if the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

/s/*Mario Trujillo*
F. Mario Trujillo (admitted pro hac vice)
ELECTRONIC FRONTIER FOUNDATION