UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN FEDERATION OF<br>GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*,<br><br>                              Plaintiffs,<br><br>                           v.<br><br>U.S. OFFICE OF PERSONNEL<br>MANAGEMENT, *et al.*,<br><br>                              Defendants. | No. 25 Civ. 1237 (DLC) |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:    (212) 637-2695/2772
*Attorney for Defendants*

JEFFREY OESTERICHER
DAVID E. FARBER
Assistant United States Attorneys
     - Of Counsel -

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 1

    I.   Plaintiffs' Claims Are Moot Because the Court Cannot Grant Any Effective Relief ........... 1

    II.  No Exception to Mootness Applies ........................................................................ 5

        A.   The Voluntary Cessation Exception Does Not Apply ....................................... 5

        B.   This Case Is Not Capable of Repetition, Yet Evading Review ........................ 8

    III. This Case Is No Longer Ripe for Review ............................................................... 9

    IV. Plaintiffs Have Not Shown Limited Jurisdictional Discovery Is Appropriate ..................... 10

CONCLUSION ................................................................................................................. 11

CERTIFICATE OF COMPLIANCE ............................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                  **Page(s)**

*AFGE v. Hawley*,
   543 F. Supp. 2d 44 (D.D.C. 2008) ................................................................................... 9

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) .............................................................................................................. 5

*AT&T Corp. v. FCC*,
   349 F.3d 692 (D.C. Cir. 2003) ......................................................................................... 10

*Audubon of Kansas, Inc. v. DOI*,
   67 F.4th 1093 (10th Cir. 2023) .......................................................................................... 8

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973) ........................................................................................................... 5

*California ex rel. Lockyer v. U.S. Forest Serv.*,
   No. 04 Civ. 02588, 2006 WL 2038491 (N.D. Cal. July 20, 2006) ............................................ 1

*City of New York v. DoD*,
   913 F.3d 423 (4th Cir. 2019) .............................................................................................. 5

*Coalition for Underground Expansion v. Mineta*,
   333 F.3d 193 (D.D.C. 2003) .............................................................................................11

*FBI v. Fikre*,
   601 U.S. 234 (2024) ........................................................................................................... 5

*Hecht Co v. Bowles*,
   321 U.S. 321 (1944) ........................................................................................................... 4

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ........................................................................................................... 4

*Mhany Mgmt., Inc. v. Cnty. of Nassau*,
   819 F.3d 581 (2d Cir. 2016) ........................................................................................... 7, 8

*Nat'l Treasury Emps. Union v. Vought*,
   149 F.4th 762 (D.C. Cir. 2025) .......................................................................................... 5

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ......................................................................................................... 3, 4

*NRDC v. DOE*,
   362 F. Supp. 3d 126 (S.D.N.Y. 2019) ............................................................................... 6

*Simmonds v. INS*,
   326 F.3d 351 (2d Cir. 2003) ............................................................................................ 10

*Texas v. United States*,
   523 U.S. 296 (1998) ........................................................................................................ 10

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ........................................................................................................... 4

*Vermont Yankee Nuclear Power Corp. v. NRDC*,
    435 U.S. 519 (1978) ............................................................................................... 4

*W. Virginia v. EPA*,
    597 U.S. 697 (2022) ............................................................................................... 6

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ............................................................................... 6

*WildEarth Guardians v. Zinke*,
    368 F. Supp. 3d 41 (D.D.C. 2019) ...................................................................... 10

*Wilderness Watch v. Ferebee*,
    445 F. Supp. 3d 1313 (D. Colo. 2020) ................................................................ 11

**Statutes**

5 U.S.C. § 552a(e)(10) ................................................................................................. 9

5 U.S.C. § 703 .............................................................................................................. 4

5 U.S.C. § 706(1) ......................................................................................................... 3

5 U.S.C. § 706(2) ..................................................................................................... 3, 4

**PRELIMINARY STATEMENT**

OPM heard the Court's stated concerns in its preliminary injunction opinion and at the subsequent conferences. The agency chose not to appeal the preliminary injunction and provided the requested reports. OPM has since removed the access of all "DOGE Agents" to Plaintiffs' PII in OPM data systems, and it has formalized its permanent access control protocols, taking into account the Court's stated concerns. These events have mooted this case, and no exception to mootness applies. Plaintiffs' insistence that this Court can order the wide-ranging injunctive relief they seek is incorrect. Plaintiffs have received all the relief they are due, and there is no more effective relief this Court can provide.

**ARGUMENT**

**I.    Plaintiffs' Claims Are Moot Because the Court Cannot Grant Any Effective Relief**

This case is moot because OPM has removed access permissions and updated its access control protocols such that this Court cannot grant the relief Plaintiffs continue to seek, and Plaintiffs offer no indication otherwise. Even if OPM's actions "resulted purely as a response to this litigation," these intervening events "nevertheless render[] the Court incapable of providing 'effective relief.'" *California ex rel. Lockyer v. U.S. Forest Serv.*, No. 04 Civ. 02588, 2006 WL 2038491, at *1-2 (N.D. Cal. July 20, 2006). "Accordingly, the Court need not address whether an exception to the mootness doctrine applies, because even if it did, the Court would only be capable of issuing an impermissible advisory opinion." *Id.*

Plaintiffs' arguments to the contrary are without merit. First, Plaintiffs argue that "the challenged program continues." Opp. at 14. That is facially incorrect. No "DOGE Agent" currently

has access to Plaintiffs' PII contained in OPM data systems.[1] As such, the original decision to grant access—the "final agency action" in this case—has been unwound, and OPM has formalized its access control protocols governing future grants of access. Plaintiffs appear to take issue with OPM's permanent access control protocols because they do not "explain what criteria justify a legitimate 'need to know.'" Opp. at 15. But that does not mean that the final agency action— OPM's *past* decision to grant access—is continuing. If Plaintiffs wish to challenge the formalized access control protocols, then they can file a fresh lawsuit. Plaintiffs' assertion that OPM could again grant access to DOGE Agents in the future, Opp. at 15, is actually an argument that the case is capable of repetition, not that "the challenged program continues," and is addressed below, *see infra* at 8-9.

Second, Plaintiffs argue that the declaration of OPM's CIO does not address DOGE Agents' access to data not "in OPM Data systems"—postulating that data may have "been extracted and moved elsewhere." Opp. at 6. But this litigation challenges OPM's prior decision to grant DOGE Agents access to Plaintiffs' PII in OPM data systems. The Complaint contains no plausible allegations that any data has been extracted and moved elsewhere. And if Plaintiffs had any non-speculative basis for alleging that data had been extracted from OPM systems and provided to DOGE, then they should have amended their complaint accordingly.[2]

---

[1] Plaintiffs claim that the declaration of OPM's CIO is "unclear" as to whether DOGE Agents "currently" have access to Plaintiffs' PII in OPM data systems. Opp. at 6. The declaration is clear: OPM's CIO "verified that no individuals falling within the category of 'DOGE Agent,' . . . currently have access to PII of plaintiffs in this matter in any OPM data systems," as represented in OPM's revised DOGE Access Report, dated September 30, 2025, *see* ECF No. 148.

[2] Plaintiffs assert that "Defendants omitted from the [a]dministrative [r]ecord any documents that discuss the extraction of records from OPM systems, including the movement of those records to DOGE systems." Opp. at 7-8. The administrative record does not "discuss" this issue because Plaintiffs put forward no plausible allegation that such extraction or "movement" to "DOGE systems" occurred. Such baseless allegations—raised in briefing, not in pleadings—cannot save their challenge from mootness.

Third, Plaintiffs argue that there are two "ongoing harms" for which this Court can provide effective relief: "ongoing cybersecurity vulnerabilities and unrecovered copies of records extracted from OPM systems," Opp. at 20. But this exposes their true aims—complete, court-supervised remediation and oversight of OPM's compliance with the Privacy Act. Plaintiffs assert that they seek "an order commanding OPM to retrieve any records DOGE or its agents retained, and to audit and repair its cybersecurity systems." Opp. at 22. The question remains: what source of law supports Plaintiffs' request that the Court issue such sweeping injunctive relief? Despite this issue being fronted by the Defendants since June of this year, *see* ECF No. 131 at 2-4, Plaintiffs still have no answer.

Nothing in the APA allows for the wide-ranging injunctive relief Plaintiffs have requested. Plaintiffs acknowledge that they have only brought claims under Section 706(2) of the APA, and that provision only allows this Court to "hold unlawful and set aside" unlawful or inadequately reasoned agency action. 5 U.S.C. § 706(2). But they already have that relief. No "DOGE Agent" currently has access to Plaintiffs' PII. There is nothing left to "hold unlawful and set aside," and Plaintiffs do not have the right to have the Court compel OPM to conduct a forensic audit of its systems (or order discovery *in lieu* thereof).

The only provision of the APA concerned with compelling agency action is 5 U.S.C. § 706(1), but Plaintiffs rightfully disclaim reliance on that section. *See* Opp. at 23. That is because that section only concerns agency action "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). And even under that provision, the Court may only order *required* agency action demanded by law. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004) ("*SUWA*") ("The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law." (emphasis in original)). Plaintiffs assert that *SUWA* is irrelevant

3

(Opp. at 23), but offer no other plausible basis for the wide-ranging relief they seek. Moreover, the Supreme Court has made clear that "[t]he limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan v. National Wildlife Federation*," in which plaintiffs "couched" the challenged agency conduct "as unlawful agency 'action' that the plaintiffs wished to have 'set aside' under § 706(2)." *SUWA*, 542 U.S. at 64.

Finally, Plaintiffs assert that because the Court found, for purposes of a preliminary injunction, past violations of the Privacy Act, the "Defendants must remedy those violations at the Court's command," Opp. at 24. They cite to 5 U.S.C. § 703, entitled "Form and venue of proceeding," apparently claiming that Section 703's reference to "writs of prohibitory or mandatory injunction," means that available remedies under the APA include any form of injunctive relief the Court desires to order—*i.e.*, the full panoply of traditional equitable powers. Opp. at 24.[3] Such a broad assertion of judicial power and oversight over agency action is breathtaking in scope, untethered to any case law, and clearly incorrect. That is because decades of APA precedent categorically forbid a court from implementing the wide-ranging relief they seek. *See, e.g., Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 549 (1978) (courts should "not stray beyond the judicial province . . . to impose upon the agency its own notion of which procedures are 'best' or most likely to further some vague, undefined public good"); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990) (plaintiffs "cannot demand a general judicial review of the [agency]'s day-to-day operations" under the APA); *City of New York v. DoD*, 913 F.3d 423, 431

---

[3] Plaintiffs also cite (Opp. at 24) to the syllabus of the Supreme Court's opinion in *Trump v. CASA, Inc.*, 606 U.S. 831, 834 (2025), for the proposition that "the complete-relief principle has deep roots in equity." It is unclear how that case, which did not deal with the APA, *see id.* at 847 n.10, has any bearing on the propriety of the wide-ranging remedial measures Plaintiffs seek pursuant to the APA. Equally unclear is the relevance of Plaintiffs' citation (Opp. at 24) to *Hecht Co v. Bowles*, 321 U.S. 321, 329 (1944), a case decided two years before the passage of the APA.

4

(4th Cir. 2019) (under the APA, courts do not "adjudicate generalized grievances asking us to improve an agency's performance or operations," and cannot "engage in day-to-day oversight of the executive's administrative practices"); *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 780-81 (D.C. Cir. 2025) ("[T]he APA does not make federal courts 'roving commissions' assigned to pass on how well federal agencies are satisfying their statutory obligations.'" (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973))). Those admonitions against unlimited judicial direction and oversight of agency practices are all the more appropriate where, as here, the Court is no longer faced with the necessary controversy to sharpen the issues for review. Accordingly, the Court should dismiss this action as moot.

## II.    No Exception to Mootness Applies

The exceptions to mootness are inapplicable because this Court cannot provide Plaintiffs with any further effective relief. Nonetheless, no exception to mootness applies.

### A. The Voluntary Cessation Exception Does Not Apply

First, Plaintiffs assert that the voluntary cessation doctrine applies because the government has not sufficiently repudiated its past conduct. Opp. at 16. Through selective quoting, Plaintiffs claim that under this exception, "courts examine whether 'a party[] repudiat[es] … its past conduct.'" *Id.* (quoting *FBI v. Fikre*, 601 U.S. 234, 243-44 (2024)). However, in *Fikre*, the Supreme Court made clear that repudiation of past conduct is *not required* for purposes of showing the voluntary cessation exception is inapplicable. *See Fikre*, 601 U.S. at 244 ("What matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct. It is on that consideration alone—the potential for a defendant's future conduct—that we rest our judgment."); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the

5

plaintiffs' particular legal rights." (internal quotation and citation omitted)). Here, OPM heard the Court's concerns as expressed in the preliminary injunction opinion and at the subsequent conferences, and addressed them in its formalized access control protocols. And OPM has made clear that it will adhere to those permanent access control protocols going forward. *See* ECF No. 163 at 16 n.8. Thus, any "allegedly wrongful behavior could not reasonably be expected to recur." *W. Virginia v. EPA*, 597 U.S. 697, 720 (2022).

Furthermore, OPM's election not to appeal this Court's preliminary injunction decision shows that OPM is not "vigorously defend[ing]" its prior conduct. *Id*. And, as Plaintiffs' cited cases note, when a government agency makes its stated intent to change its conduct "binding," a case may properly be moot. *See, e.g., NRDC v. DOE*, 362 F. Supp. 3d 126, 138-39 (S.D.N.Y. 2019). Indeed, OPM's Director has committed to full implementation of OPM's updated access control policies. Thus, this is not a case where the government's conduct in this lawsuit or its "insistence on the validity of the challenged practice," Opp. at 17, suggest it might return to its "old ways." *Cf. W. Virginia*, 597 U.S. at 720 ("Here the Government nowhere suggests that if this litigation is resolved in its favor it will not reimpose emissions limits predicated on generation shifting." (internal quotation and citation omitted)).[4] Accordingly, OPM's adoption of formalized access control protocols and its stated intention to fully comply with those policies brings this case outside of the voluntary cessation doctrine. *See, e.g., White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) (voluntary cessation exception did not apply where adoption of HUD policy during litigation

---

[4] Plaintiffs note (Opp. at 17) that OPM has made clear that it does not believe institution of the updated access control protocols is *required* by the Privacy Act, *see* ECF No. 163 at 15 n.7, but that does not mean OPM intends not to follow those binding, permanent protocols. On the contrary, OPM has determined that those updated access control protocols are warranted, *id.*, and the agency is committed to their full implementation.

"represents a permanent change in the way HUD conducts FHA investigations, not a temporary policy that the agency will refute once this litigation has concluded").

Second, Plaintiffs assert that the timing of OPM's formalization of its access control protocols suggests that they are temporary changes designed specifically to moot this litigation. OPM at 17-18. No doubt the formalization of OPM's access control protocols was spurred by this and other Privacy Act-related litigation, but making those access control protocols a permanent part of OPM's policy was not designed to deprive the Court of jurisdiction. Indeed, the timing of OPM's updates to its access control protocols is not "suspicious." *Cf.* Opp. at 18 (citing *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 604 (2d Cir. 2016)). On July 18, 2025, OPM delivered its first report in response to the preliminary injunction order, outlining certain interim protocols governing "DOGE"-related access and noting OPM would review whether those interim protocols should remain in place after 90 days—*i.e.*, by mid-October. *See* ECF No. 140 at 2. The intervening government shutdown pushed that review back, and on November 18, 2025, OPM formalized those access control protocols as a permanent part of OPM's Cybersecurity and Privacy Policy, which was undergoing other, unrelated revisions. *See* ECF No. 168 ¶ 5. As a result, nothing about the timing of OPM's formalization of its access control protocols is "suspicious," and nothing about OPM's conduct in this litigation suggests that it is not "committed to this course permanently." *Mhany*, 819 F.3d at 604.[5]

Finally, Plaintiffs assert that Defendants cannot show that interim relief or events have "completely and irrevocably eradicated the effects of the alleged violation." Opp. at 20 (quoting

---

[5] Plaintiffs also claim that OPM's past grants of access are "continuous and deliberate." Opp. at 19-20. That is demonstrably incorrect. Plaintiffs only support for this proposition is that the USDS Executive Order has not been rescinded and their re-packaged argument that OPM has not sufficiently repudiated its legal positions. *See id.* Neither shows a continuous, deliberate decision to continue granting "DOGE Agents" access to Plaintiffs' PII in contravention of the Privacy Act.

7

*Mhany*, 819 F.3d at 603). But the effects of the alleged violation—intrusion into Plaintiffs' personal privacy caused by OPM's decision to grant access to DOGE Agents—have been eradicated. No "DOGE Agents" have access to Plaintiffs' PII in OPM data systems. To the extent Plaintiffs claim (Opp. at 21) that copies of extracted data may have been taken by "DOGE Agents" or "DOGE itself," in violation of the Privacy Act, there is no basis, in the record or otherwise, to claim this occurred. *See* ECF No. 131 at 5-6. And Plaintiffs' continued desire for an impermissible court-ordered-and-supervised audit of OPM's data systems (through discovery or otherwise) cannot keep this controversy alive. *See supra* at 3-5. Accordingly, the voluntary cessation exception to mootness is inapplicable.

## B. This Case Is Not Capable of Repetition, Yet Evading Review

Plaintiffs next assert that this case is capable of repetition, yet evading review because "OPM recurringly provides DOGE agents with short-term access to records in periods too brief to litigate a case." Opp. at 24. But Plaintiffs err in arguing that *each* grant of access to a *specific* individual is in and of itself final agency action subject to APA review. Indeed, that is not the law. As this Court found, and Plaintiffs have conceded, the challenged final agency action in this case was OPM's "decision to give access to DOGE agents," specifically "administrative access to multiple OPM systems for DOGE agents," and "*not* discrete decisions as to individual employees." ECF No. 121 at 88-89 (emphasis added). Were it otherwise, a plaintiff could challenge each and every grant of access by OPM to every government employee.

As Defendants have asserted, the original decision to grant access occurred in a "highly fact-and-context-specific" situation—at the beginning of the current administration when operational needs were unclear—and is not "conduct that is likely to 'recur' on similar facts and in the same context." *Audubon of Kansas, Inc. v. DOI*, 67 F.4th 1093, 1104 (10th Cir. 2023). Plaintiffs provide no response to this point. The reality is that the unique facts surrounding OPM's

past decision to grant access to "DOGE Agents" is not capable of repetition, yet evading review. That past decision is no longer operative, and there is no indication it will recur on similar facts or in a similar context.

### III.     This Case Is No Longer Ripe for Review

Plaintiffs' claim that their challenge is still ripe for review because they "continue to suffer from ongoing harms caused by Defendants' past actions," Opp. at 27, is incorrect. This Court cannot offer an advisory opinion on OPM's past decision to grant access that is no longer operative, and the Court cannot grant the wide-ranging remedial relief they seek.

Plaintiffs assert that their claim predicated on a violation of 5 U.S.C. § 552a(e)(10)—"challenging the decision by OPM to depart radically from its established safeguards and to give access to DOGE agents in violation of the law," ECF No. 72 at 49-50—is ripe because they "continue to suffer from ongoing harms caused by Defendants' past actions." Opp. at 27. On this point, Plaintiffs cite the decision in *AFGE v. Hawley*, 543 F. Supp. 2d 44 (D.D.C. 2008), as "highly instructive." Opp. at 27. However, Plaintiffs fail to note that *Hawley* involved a direct claim under the Privacy Act—not under the APA. *See Hawley*, 543 F. Supp. 2d at 50-51. Here, Plaintiffs' Privacy Act claims have been dismissed. *See* ECF No. 72 at 42. Moreover, Plaintiffs inexplicably fail to cite to the *Hawley* court's dismissal of plaintiffs' claims for injunctive and declaratory relief—holding that the Privacy Act's "civil remedies provision authorizes two specific forms of injunctive relief," and neither applied. *See Hawley*, 543 F. Supp. 2d at 54 (dismissing plaintiffs' request for ten types of injunctive and declaratory relief). Similarly here, the APA does not authorize the wide-ranging injunctive and remedial relief that Plaintiffs continue to seek, *see supra* at 3-5.

Plaintiffs' APA claim predicated on a violation of § 552a(e)(10) is not ripe at all. Again, no DOGE Agent currently has access to Plaintiffs' PII in OPM data systems. And OPM's adoption of

formalized access control protocols means that any grant of access to "DOGE Agents" that may, hypothetically, occur in the future will "not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation and citation omitted). To the extent Plaintiffs wish to challenge those updated access control protocols as somehow insufficient, *see* Opp. at 15, they should institute a new action.

Finally, Plaintiffs assert that they need not satisfy the hardship prong because the Court has already ruled that Plaintiffs' challenge concerns "final agency action." Opp. at 28. They are incorrect. The constitutional ripeness inquiry "prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003). At present, there is no actual dispute because no "DOGE Agents" have access to Plaintiffs' PII and OPM's access control protocols have been updated.

In the alternative, Plaintiffs argue that the Court should decline to dismiss on ripeness grounds because "the challenged action creates a direct and immediate dilemma" for them. Opp. at 28 (citation omitted). However, they fail to delineate what that dilemma could possibly be. The only hardship that Plaintiffs might face is the burden of participating in future judicial proceedings, but that burden "does not constitute sufficient hardship to overcome the agency's challenge to ripeness." *AT&T Corp. v. FCC*, 349 F.3d 692, 702 (D.C. Cir. 2003).

## IV. Plaintiffs Have Not Shown Limited Jurisdictional Discovery Is Appropriate

Finally, Plaintiffs assert that the Court should grant them "limited discovery" to respond to Defendants' jurisdictional motion. Opp. at 11. However, Plaintiffs cited cases do not support a request for such discovery in APA matters. *See WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 61 (D.D.C. 2019) ("plaintiffs *may submit* extra-record evidence to establish standing" (emphasis added)). Furthermore, Plaintiffs have not alleged any facts or evidence they believe jurisdictional

discovery would reveal "that would make this case not moot." *Wilderness Watch v. Ferebee*, 445 F. Supp. 3d 1313, 1327 (D. Colo. 2020); *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.D.C. 2003) ("As for the lack of discovery, the Coalition has made no allegation which, if substantiated, would establish standing to sue."). Accordingly, Plaintiffs' request for limited jurisdictional discovery should be denied.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss this case.

Dated: New York, New York
December 17, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By:    */s/ David E. Farber*
      JEFFREY OESTERICHER
      DAVID E. FARBER
      Assistant United States Attorneys
      86 Chambers Street, 3rd Floor
      New York, New York 10007
      Tel: (212) 637-2695/2772

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,500 words.

<em>/s/ David E. Farber</em>
Assistant United States Attorney