UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. OFFICE OF PERSONNEL MANAGEMENT, *et al.*<br><br>Defendants. | Case No. 25-cv-1237-DLC |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR EXTRA-RECORD DISCOVERY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    DISCOVERY IS NECESSARY TO DETERMINE THE NATURE AND EXTENT OF DEFENDANTS' APA VIOLATIONS ................................................................................. 2

    II.    DISCOVERY IS WARRANTED REGARDING PLAINTIFFS' ULTRA VIRES ............ 4

    CLAIM ................................................................................................................................... 4

    III.    PLAINTIFFS ARE ENTITLED TO EXTRA-RECORD DISCOVERY ....................... 5
        A.    The Administrative Record is Inadequate for Judicial Review ..................................... 5
        B.    Defendants Exercised Bad Faith and Improper Behavior ............................................... 6

    IV.    PLAINTIFFS' DISCOVERY REQUEST IS AIMED AT RESOLVING RECORD DISCREPANCIES, NOT SUPERVISING AGENCY COMPLIANCE ..................................... 9

    V.    THE PROPOSED EXTRA-RECORD DISCOVERY IS APPROPRIATE AND NARROWLY TAILORED ............................................................................................................ 10

## TABLE OF AUTHORITIES

**CASES**

*AFGE v. OPM*,
777 F. Supp. 3d 253 (S.D.N.Y. 2025) (Cote, J.)................................................................ 4

*AFGE v. OPM*,
786 F. Supp. 3d 647 (S.D.N.Y. 2025) (Cote, J.)........................................................ 5, 7, 8

*Bellion Spirits, LLC v. U.S.*,
335 F.Supp. 3d 32 (D.D.C. 2018) ..................................................................................... 4

*Beta Analytics Int'l, Inc. v. U.S.*,
61 Fed. Cl. 223 (2004) ...................................................................................................... 7

*Clark Cty. v. FAA*,
522 F.3d 437 (D.C. Cir. 2008)........................................................................................... 6

*Earth Island Inst. v. Evans*,
256 F. Supp. 2d 1064 (N.D. Cal. 2003) ............................................................................ 7

*Lands Council v. Powell*,
395 F.3d 1019 (9th Cir. 2005)........................................................................................... 5

*Latecoere Int'l, Inc. v. U.S. Dep't of Navy*,
19 F.3d 1342 (11th Cir. 1994)........................................................................................... 6

*Nat'l Ass'n of Postal Supervisors v. U.S.*,
 No. 1:19-CV-2236-RCL, 2023 WL 5221367 (D.D.C. Aug. 15, 2023)........................... 4

*New York v. Salazar*,
701 F. Supp. 2d 224 (N.D.N.Y. 2010).............................................................................. 8

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ........................................................................................................... 9

*Portland Audubon Soc'y v. Endangered Species Comm.*,
984 F.2d 1534 (9th Cir. 1993).......................................................................................... 6

*Sokaogon Chippewa Cmty. v. Babbitt*,
961 F. Supp. 1276 (W.D. Wis. 1997) ........................................................................................ 7, 8

*Styrene Info. & Research Ctr., Inc. v. Sebelius,*
851 F. Supp. 2d 57 (D.D.C. 2012) ................................................................................................ 5

*Tummino v. Hamburg,*
936 F. Supp. 2d 162 (E.D.N.Y. 2013) ......................................................................................... 8

*Tummino v. Torti*,
603 F. Supp. 2d 519 (E.D.N.Y. 2009) ......................................................................................... 7

*U.S. v. Shaffer Equip. Co.*,
11 F.3d 450 (4th Cir. 1993) .......................................................................................................... 6

*U.S. Dep't of Com. v. New York*,
588 U.S. 752 (2019) .................................................................................................................. 1, 8

**INTRODUCTION**

Although APA challenges are normally adjudicated without discovery on the basis of a complete administrative record, extra-record discovery is permissible in limited circumstances, including where the record is insufficient to effectuate judicial review or where the defendants acted in bad faith. Both circumstances exist here. The administrative record is too sparse to permit thorough evaluation of the extent of Defendants' legal violations and fashion appropriate relief. Defendants' rushed and reckless decisions, made in violation of both the Privacy Act and the APA, evidence bad faith, especially when viewed in light of the Defendants' shifting explanations that are "incongruent" with the record. *U.S. Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019).

Additionally, whereas two of the three pending causes of action allege violations of the APA, Plaintiffs' ultra vires claim is a distinct cause of action dependent on a different factual analysis than the APA claims, for which limited discovery is appropriate.

Defendants' opposition to discovery rests on two mistaken contentions. First, they improperly narrow the dispute to "whether OPM's decision to grant access to DOGE agents was in violation of the APA." Defs.' Memorandum in Opposition, ECF. No. 170 ("Opp.") at 1. While the current, limited record unequivocally establishes that the initial decision to grant access violated the Privacy Act (and therefore the APA), Defendants' misconduct is not confined to that single question, and Plaintiffs have never agreed that it is. The nature and scope of Defendants' multiple legal violations are essential to effective judicial review. Without additional information beyond the administrative record, the Court cannot assess the full extent and nature of those violations or determine the appropriate relief to which Plaintiffs are entitled.

Second, Defendants ignore specific allegations and evidence of bad faith, and they instead erroneously claim Plaintiffs are conflating "alleged errors in the decisionmaking process" with bad

faith. Opp. at 14. To the contrary, Plaintiffs have provided multiple illustrations of Defendants' bad faith and improper behavior, and there is ample evidence to suggest that Defendants' proffered justifications are contrived, thereby warranting discovery.

The proposed motion for extra-record discovery is necessary, limited in scope, and narrowly tailored to fill the gaps in the administrative record. Additionally, it would be improper to grant Defendants' jurisdictional motion without allowing Plaintiffs the opportunity to gather evidence and test Defendants' representations, particularly given that the administrative record has proved incomplete, misleading, and incorrect throughout this litigation.[1]

## ARGUMENT

### I.  DISCOVERY IS NECESSARY TO DETERMINE THE NATURE AND EXTENT OF DEFENDANTS' APA VIOLATIONS

The administrative record contains gaps and inconsistencies regarding four categories of information: (1) the scope and need for access granted; (2) the current security of OPM systems; (3) the use of data unlawfully accessed; and (4) mitigation steps taken, if any. ECF No. 159 at 6-10. Defendants do not contend that the record contains this information, nor do they attempt to explain these deficiencies. Instead, they argue that this information is not necessary for judicial review because, as they mistakenly claim, "[t]he question in this case is whether OPM's grant of access to 'DOGE agents" in January and February 2025 constituted final agency action in violation of the Privacy Act." Opp. at 6-7. That is but one of several ultimate issues for adjudication. Plaintiffs allege Defendants violated the Privacy Act (in violation of the "contrary to law" provision of the APA) not only by improperly granting "access" but also by allowing DOGE and

---

[1] Defendants argue that the Court should deny the motion for discovery because the case is now moot. Opp. at 3-5. Plaintiffs address this argument in full in their Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pls' Opp. to MTD"). ECF No. 171.

2

its agents to "collect" and "maintain" records, and by failing to establish appropriate safeguards for records access. Compl. ¶¶ 63-64 (Third Claim for Relief). Also at issue is whether the OPM Defendants "failed to engage in reasoned-decision making when they implemented a system under which DOGE Defendants could access OPM's records for purposes other than those authorized by the Privacy Act." *Id.* ¶ 74 (Fourth Claim for Relief).

Although the parties apparently agree that the current record is sufficient to establish that Defendants violated the Privacy Act by granting access to the DOGE Defendants, Opp. at 1, the four categories of information sought by Plaintiffs through discovery would assist the Court in determining Defendants' other violations of the Privacy Act (under its Third Claim for Relief) and violation of the APA for arbitrary and capricious action (Fourth Claim for Relief). Furthermore, this information is necessary to determine the precise extent of those violations, the harm caused, and the ongoing risks—which would assist the Court's determination of the specific injunctive relief warranted.

Defendants also claim Plaintiffs have agreed the "proper bounds of the administrative record are January 20, 2025, through February 1, 2025—the date of filing of the[] Complaint." Opp. at 1. This assertion is incorrect. First, while Plaintiffs have accepted the scope of the record for purposes of identifying the final agency action, they have never agreed to any limitation on the scope of the allegations in the Complaint, and Defendants tellingly cite none. Second, although the scope of relevant evidence for Plaintiff's arbitrary and capricious claim is arguably limited to that time period, the Third Claim for Relief specifically alleges ongoing violations of the Privacy Act: "OPM Defendants have disclosed *and are disclosing* Plaintiffs' and their members' records to DOGE Defendants …" Compl. ¶ 62 (*emphasis added*). The complaint also describes ongoing conduct in alleging violations regarding the collection and maintenance of records, and the failure

3

to establish appropriate safeguards, all stemming from the chaotic way that Defendants granted and then used DOGE access. *Id.* ¶¶ 63-64.

## II. DISCOVERY IS WARRANTED REGARDING PLAINTIFFS' ULTRA VIRES CLAIM

Plaintiffs' third remaining cause of action alleges ultra vires actions by the DOGE Defendants who had no authority in law to direct and control the use and administration of OPM data systems. Compl. ¶¶ 76-83 (Fifth Claim for Relief).

Review of non-APA claims brought in parallel with APA claims is limited to the administrative record "only when it is appropriate to do so"—such as when the non-APA claim is an attempt to "'avoid' the strictures of the APA." *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, No. 1:19-CV-2236-RCL, 2023 WL 5221367, at *3 (D.D.C. Aug. 15, 2023) (quoting *Bellion Spirits, LLC v. United States*, 335 F.Supp. 3d 32, 43 (D.D.C. 2018)). That is not the case here. In denying Defendants' motion to dismiss, the Court already rejected the argument that the ultra vires claim is "coextensive" with the Privacy Act claims. *AFGE v. OPM*, 777 F. Supp. 3d 253, 283 (S.D.N.Y. 2025) (Cote, J.). The Court distinguished the issue of whether there was a "massive disclosure" of OPM records to unauthorized individuals from the question of whether that "intrusion was directed and controlled by the DOGE Defendants," who lacked "statutory authority" over such records. Under this analysis, evidence relevant to the ultra vires claim—who directed the DOGE defendants and under what authority—is distinct from evidence concerning the disclosure, collection, and maintenance of the OPM records themselves.

The administrative record contains no information about the role that Defendant Musk and other senior DOGE officials played in directing the conduct that resulted in violations of the Privacy Act, as well as arbitrary and capricious decision-making in violation of the APA. That information is essential to judicial review of the ultra vires claim.

**III.     PLAINTIFFS ARE ENTITLED TO EXTRA-RECORD DISCOVERY**

As Defendants concede, extra-record discovery is available when the administrative record is insufficient to allow for effective judicial review or where there is a strong showing of bad faith or improper behavior. Although Plaintiffs need to establish only one of those two exceptions to proceed, the current record demonstrates that both are met here.

Additionally, Defendants urge the Court to apply a presumption of regularity in accepting the administrative record. Opp. at 5-6. That ship, however, has sailed. Throughout this case, the administrative record furnished by the Defendants has proved incomplete, misleading, and incorrect. Pls' Opp. to MTD (ECF No. 171) at 7-9. As the Court already found, Plaintiffs "have rebutted any presumption of regularity on which the defendants seek to rely." *AFGE v. OPM*, 786 F. Supp. 3d 647, 688 (S.D.N.Y. 2025) (Cote, J.).

**A.     The Administrative Record is Inadequate for Judicial Review**

Defendants argue that Plaintiffs have failed to show that discovery is necessary to effectuate judicial review. However, the "record rule" exceptions are specifically designed to "identify and plug holes in the administrative record." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). These exceptions apply with full force where, as here, "extra-record information is necessary to enable judicial review to become effective." *Styrene Info. & Research Ctr., Inc. v. Sebelius,* 851 F. Supp. 2d 57, 63 (D.D.C. 2012) (quotation and alteration omitted).

Plaintiffs have identified ambiguities resulting from the deficient record. In response, Defendants assert that "ambiguity" is not the legal standard for justifying extra-record discovery. Opp. at 8. This misses the point: discovery is necessary here precisely to "plug the holes" that plague the record. *Lands Council*, 395 F.3d at 1030. Defendants have conceded that the initial administrative record was incomplete by providing three supplemental reports—yet substantial

5

questions of material fact remain unresolved. The Court cannot fulfill is duty to conduct a probing, in-depth review and fashion appropriate injunctive relief based on a shifting and deficient record.

Conflicting audits and unexplained discrepancies necessitate discovery. The administrative record is facially deficient in multiple respects. For example, Defendants assert that "to the extent any discrepancies exist, the more comprehensive February spreadsheet obliviously applies," Opp. at 8, yet they fail to address the specific, material discrepancies between the February and March 2025 audits. Furthermore, Defendants summarily contend—without legal support—that the March audit is not subject to inclusion in the administrative record. *Id*. In doing so, Defendants ignore that the very existence of these conflicting audits illustrates the inadequacy of the administrative record for effective judicial review. If the record is incomplete or contradictory, "the requirement that the agency decision be supported by 'the record' becomes almost meaningless." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) *see also Clark Cty. v. FAA*, 522 F.3d 437, 441 (D.C. Cir. 2008) (a court must assess whether the agency "engaged in reasoned decision-making" by determining whether "its decision is adequately explained and supported by the record").

Ultimately, the current record fails to answer foundational "who, what, where, when, and why" questions regarding the disclosure, collection, and maintenance of OPM data, as well as the appropriate safeguards to ensure proper access. Because the record is inconsistent, misleading, and incomplete, extra-record discovery is the appropriate mechanism to ensure effective judicial review.

B.  **Defendants Exercised Bad Faith and Improper Behavior**

While judicial review is ordinarily confined to the administrative record, a showing of agency bad faith or improper behavior "justifies inquiry beyond the record compiled." *U.S. v.*

6

*Shaffer Equip. Co.*, 11 F.3d 450, 460 (4th Cir. 1993); *see Latecoere Int'l, Inc. v. U.S. Dep't of Navy*, 19 F.3d 1342, 1357 (11th Cir. 1994). As courts have noted, evidence of such misconduct is "unlikely to ever appear within the four corners of the official administrative record." *Earth Island Inst. v. Evans*, 256 F. Supp. 2d 1064, 1078 n.16 (N.D. Cal. 2003); *see Beta Analytics Int'l, Inc. v. U.S.*, 61 Fed. Cl. 223, 226 (2004) ("rare indeed would be the occasions when evidence of bad faith will be placed in an administrative record.") Indeed, requiring bad faith to be self-evident in the record would irrationally limit discovery to only those cases involving officials who are both "sinister *and* stupid." *Beta Analytics Int'l*, 61 Fed. Cl. at 226 (*emphasis in* original). Instead, a plaintiff need only "supply sufficient evidence of improper political influence on agency decisionmaking as to raise suspicions that defy easy explanations." *Sokaogon Chippewa Cmty. v. Babbitt*, 961 F. Supp. 1276 (W.D. Wis. 1997). Plaintiffs have met that burden here.

Defendants' shifting justifications and post-hoc apologies suggest pretext. They dispute that OPM offered shifting explanations for the DOGE agents' access to records, Opp. at 9-10, but the Court has found otherwise—that Defendants "have to some extent switched gears and now argue that access to OPM systems was needed not to implement the DOGE Executive Order and its goal of IT modernization, but to implement the federal hiring freeze …." *AFGE*, 786 F. Supp. 3d at 688. Defendants also attempt to explain away inconsistencies in former CIO Gregory Hogan's testimony, Opp. at 15, but the Court also found otherwise—describing Mr. Hogan's declarations as "incomplete," "misleading" and "not credible." *AFGE*, 786 F. Supp. 3d at 687. Where agency accounts are shifting and proceedings irregular, the decision-making process "cannot be fully understood" without deposition testimony of key decision-makers and related materials. *Tummino v. Torti*, 603 F. Supp. 2d 519, 544 (E.D.N.Y. 2009).

7

Defendants attempt to excuse these failures by "apologizing for omissions in the Hogan declaration" and expressing "regret" for failing to provide a complete history of training and access. Opp. at 15. While Defendants characterize these as mere "errors", *id.* at 14, such concessions do not establish good faith. On the contrary, when evidence "tells a story that does not match" the agency's explanations, a court can find the proffered rationale to be contrived in bad faith. *Dep't of Com.*, 588 U.S. at 755-56.

Unusual procedural irregularities and violations of the Privacy Act also indicate bad faith. The record reveals a decision-making process that was extremely unusual. Defendants' reckless disregard for basic Privacy Act compliance reflects significant departures from established agency practices. Where an agency's processes are "unusual in [several] significant respects," the "necessary showing of bad faith … has been made." *Tummino v. Hamburg,* 936 F. Supp. 2d 162, 196 (E.D.N.Y. 2013).

The record further suggests that OPM's actions were "predetermined and influenced" by factors outside the lawful administrative process. *New York v. Salazar*, 701 F. Supp. 2d 224, 243 (N.D.N.Y. 2010). Defendants characterized the granting of systems access to DOGE agents as "ordinary" and necessity-based, ECF No. 95, at 21, 26-30, and they still insist "OPM's explanations are supported by the administrative record," Opp. at 14-15. But the Court already has found the onboarding process to be "chaotic, irregular, and risky." *AFGE*, 786 F. Supp. 3d at 680. Indeed, the evidence strongly suggests that DOGE agents did not require access to any OPM systems, "much less the administrative access that they were granted." *Id.* at 682. Defendants' account ignores the "911-esque call" on the evening of the inauguration demanding immediate access, *id.* at 691, as well as the role played by Defendant Musk and DOGE leadership. Because

8

this improper behavior "def[ies] easy explanations," extra-record discovery is warranted. *Sokaogon Chippewa Cmty. v. Babbitt*, 961 F. Supp. 1276, 1281 (W.D. Wis. 1997).

### IV. PLAINTIFFS' DISCOVERY REQUEST IS AIMED AT RESOLVING RECORD DISCREPANCIES, NOT SUPERVISING AGENCY COMPLIANCE

Defendants incorrectly characterize Plaintiffs' request as an attempt to conduct a broad audit of OPM's compliance with the Privacy Act. Opp. at 17-18. That misstates Plaintiffs' position. Extra-record discovery is warranted here not to enforce statutory oversight but because of the deficiency of the administrative record and Defendants' bad faith and improper behavior.

The information Plaintiffs seek is necessary to permit effective judicial review in the face of an inconsistent and incomplete administrative record. Plaintiffs do not seek to supervise Defendants' general compliance with the Privacy Act. Rather, they seek to clarify a record that Defendants themselves have made opaque and inadequate. Moreover, the audits that Defendants themselves included in the record conflict with one another, underscoring the need for clarification rather than foreclosing it.

Defendants' reliance on *Norton v. SUWA* for the proposition that a court cannot order an agency to conduct a series of audits is inapposite. Opp. at 17. That case limits a court's authority to compel an agency to take discrete actions unlawfully withheld under APA § 706(1); it does not, however, bar discovery or record supplementation where, as here, the administrative record is internally inconsistent, unclear, and inadequate for review. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004). Unlike the plaintiffs in *Norton* who sought to compel broad programmatic changes, Plaintiffs here seek only the information necessary to evaluate the specific agency actions at issue—actions that cannot be thoroughly reviewed on the current deficient record.

9

## V. THE PROPOSED EXTRA-RECORD DISCOVERY IS APPROPRIATE AND NARROWLY TAILORED

Plaintiffs' request for extra-record discovery is appropriate and narrowly tailored. It is expressly limited to the four categories of information absent from the administrative record but essential for effective judicial review: (1) the scope and need for access granted; (2) the current security of OPM systems; (3) the use of data unlawfully accessed; and (4) mitigation steps taken, if any. Defendants' assertion that Plaintiffs failed to tailor their requests ignores these precise limitations. Defendants instead argue that the request is overbroad because discovery ends as of the complaint's filing date, but the relevant conduct and alleged violations extend beyond that point. *See supra* at 3.

Plaintiffs can secure the information needed for the Court to fashion appropriate permanent and declaratory relief through targeted document requests, interrogatories, and limited depositions. This discovery is necessary to enable meaningful judicial review and resolve core issues material to the Privacy Act violations, the APA arbitrary-and-capricious claim, and the ultra vires claim.

For these reasons, Plaintiffs' motion should be granted.

Dated: December 17, 2025                    Respectfully submitted,

*/s/ Rhett O. Millsaps II*
Rhett O. Millsaps II
Mark P. McKenna*
Christopher J. Sprigman
Mark A. Lemley*
LEX LUMINA LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
(646) 898-2055

F. Mario Trujillo*
Victoria Noble
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street

10

San Francisco, CA 94109
(415) 436-9333

Norman L. Eisen\*
Andrew H. Warren\*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003

*Counsel for Plaintiffs*

*\*Admitted pro hac vice*

## CERTIFICATE OF COMPLIANCE

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Reply Memorandum of Law in Support of Plaintiffs' Motion for Extra-Record Discovery contains 2,913 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: December 17, 2025            */s/ Andrew H. Warren*
                                    Andrew H. Warren