# EXHIBIT 1

CRAIG H. MISSAKIAN
United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748

ERIC J. HAMILTON (CABN 296283)
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
ANDREW M. BERNIE
Trial Attorney
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-7203
andrew.m.bernie@usdoj.gov

Counsel for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Defendants. | Case No. 3:25-cv-03698-SI <br><br> **DECLARATION OF NOAH PETERS** |

I, Noah Peters, declare, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am the Senior Advisor to the Director of the U.S. Office of Personnel Management ("OPM"), headquartered in Washington, D.C.  I have served in this position since January 20, 2025.  This declaration is based on my personal knowledge and information provided to me in my official capacity by others.

2.  In planning a reduction-in-force (RIF) in the Federal government, there are many steps that an agency must take before sending a RIF notice.

3.  One initial step is to identify the "competitive area" subject to the RIF action. *See* 5 C.F.R. § 351.402(a) ("Each agency shall establish competitive areas in which employees compete for retention under this part.").

4.  Pursuant to long-standing OPM regulations, "When a competitive area will be in effect less than 90 days prior to the effective date of a reduction in force, a description of the competitive area shall be submitted to the OPM for approval in advance of the reduction in force." *Id*. § 351.402(c).

5.  The joint guidance issued by OPM and the U.S. Office of Management and Budget ("OMB") on February 26, 2025, titled *Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative* ("OPM-OMB Guidance")*,* similarly recognized both the identification of a competitive area, and the need for OPM approval of a modified competitive area definition, as initial steps in RIF planning.

6.  On page 7 of that guidance, OPM and OMB presented (attached as "Appendix 1"), a "Sample RIF Timeline."

7.  The "Sample RIF Timeline" identifies 4 stages of RIF planning: 1) "Identification of Competitive Areas and Levels," 2) "Planning, Preparation & Analysis," 3) "Formal RIF Notice Period" and 4) "RIF Implementation & Separation." These stages were based on OPM's *Workforce Reshaping Operations Handbook: A Guide for Agency Management and Human Resources Offices* ("*Workforce Handbook*"), published in March 2017 and available at https://www.opm.gov/policy-data-oversight/workforce-restructuring/reductions-in-force-

Declaration of Noah Peters
3:25-cv-03698-SI

1

rif/workforce_reshaping.pdf. The *Workforce Handbook* "provides agencies with guidance, options, and, where necessary, specific operational procedures designed to ensure that reshaping efforts comply with merit system laws and regulations." (p. 3).

8.　The "Sample RIF Timeline" identifies the first step in the first stage as: "Identify competitive areas and levels and determine which positions may be affected. If applicable, seek OPM waiver approval to adjust competitive areas within 90 days of the RIF effective date."

9.　The "Sample RIF Timeline" includes many subsequent steps necessary to plan and execute a RIF. Much later in the process, after competitive area identification, a waiver application (if necessary) and 8 other steps, are the final two stages: "Formal RIF Notice Period" and "RIF Implementation & Separation."

10.　I am also familiar with the statement in the government's Supreme Court brief filed in this matter on May 16, 2025, which stated that "this Office has been informed by OPM that about 40 RIFs in 17 agencies were in progress and are currently enjoined by the TRO." Stay Application, *Trump v. AFGE* (Sup. Ct. No. 24A1106, May 16, 2025).

11.　The estimate of "about 40 RIFs in 17 agencies" (provided in the May 16 application) reflects results from an early, initial step in RIF planning: submitting a request to OPM pursuant to 5 C.F.R. § 351.402(c) for approval of a competitive area that had been in effect for less than 90 days.

12.　The estimate of "about 40 RIFs in 17 agencies" did not derive from how many RIFs were mentioned in any Agency RIF and Reorganization Plans (ARRPs), as the Court suggested in its July 9 order.

13.　OPM did not use the ARRPs as the basis for its estimate of planned RIFs because the ARRPs are pre-decisional planning documents, and the fact that a RIF may have been mentioned in an ARRP did not in any way mean that the RIF would actually occur. It would have been entirely speculative, in OPM's view, to leap from the mention of a RIF in an ARRP to a conclusion that the RIF was in progress or imminent.

14.　To the best of my knowledge, between February 21, 2025 and May 9, 2025 (when the Court entered a temporary restraining order), OPM approved 70 competitive area waivers

Declaration of Noah Peters
3:25-cv-03698-SI

2

submitted by 19 defendant agencies (AmeriCorps, the Department of Agriculture, the Department of Commerce, the Department of Energy, the Department of Education, the Department of Health and Human Services, the Department of Homeland Security, the Department of Housing and Urban Development, the Department of the Interior, the Department of Labor, the Department of Transportation, the Environmental Protection Agency, the General Services Administration, the Small Business Administration, the Social Security Administration, the State Department, the National Science Foundation, the Office of Personnel Management and the Department of the Treasury). OPM lacks complete information on the scope of any such RIFs, including how many positions would have been affected.

15. Thus, the government's estimate of "about 40 RIFs in 17 agencies" likely understated the number of contemplated RIFs that were enjoined by the Court's injunction.

16. It has been publicly reported that since this Court's May 2025 temporary restraining order, some agencies have decided that they will not proceed with a reduction in force. *See* Lindsay Ellis & Ken Thomas, "Cleared to Lay Off Workers, Some Federal Agencies Find Many Already Left," *The Wall Street Journal* (July 12, 2025).

17. Further, I have been informed in the past week that several agencies are now not planning to proceed with several of the RIFs that had been planned at other times. Instead of proceeding with RIFs reflected in competitive area waiver requests, several agencies are now planning to reassess their workforce needs following intervening events – deferred resignations, natural attrition, and other voluntary separations.

18. The fact that several agencies have chosen not to proceed with RIFs that they may have contemplated at other times underscores that ARRPs are not final agency actions, but rather non-final planning documents.

19. As the government has stated before in this litigation, ARRPs are high-level internal agency planning documents that lack any immediate force or effect. ARRPs are living documents that are always subject to change as agency needs and circumstances may dictate, or simply due to an agency rethinking or reconsidering an issue. They are deliberative in nature, subject to change

Declaration of Noah Peters
3:25-cv-03698-SI

3

at any moment as the agency's needs, missions, and staffing evolve or as new leadership joins an agency. Nothing in an ARRP binds the agency to any particular course of action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct based on my personal knowledge.

Dated: July 14, 2025

<u>/s/ Noah Peters</u>
NOAH PETERS

Declaration of Noah Peters
3:25-cv-03698-SI

4