UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO, *et al.,*

                Plaintiffs,

          v.

U.S. OFFICE OF PERSONNEL
MANAGEMENT, *et al.*,

                Defendants.

No. 25 Civ. 1237 (DLC)

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO UNREDACT THE NAMES OF SIXTEEN DOGE AGENTS

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:   (212) 637-2822
*Attorney for Defendants*

ALYSSA B. O'GALLAGHER
*Assistant United States Attorney*
    - Of Counsel -

Defendants respectfully submit this memorandum of law in opposition to Plaintiffs' motion to unredact the names of sixteen DOGE Agents, ECF No. 194 ("Mot.").[1]

## PRELIMINARY STATEMENT

On March 19, 2025, Defendants requested that the Court enter their proposed stipulated protective order, which, among other things, provided for the "replacement of the names of certain DOGE [Agents] with anonymized monikers."  In making their request, Defendants expressed concerns that "identifying certain OPM employees and DOGE [Agents] publicly would be an unwarranted invasion of privacy and could lead to potential threats and harassment."  The Court entered the proposed stipulated protective order that same day.

Since entry of the stipulated protective order, Defendants have requested—and the Court has granted—leave to file certain documents with limited redactions to protect the identifying information of certain DOGE Agents based on these concerns.  Now, nearly a year after entry of the parties' stipulated protective order, Plaintiffs request that the Court order Defendants to file twelve previously filed documents "with the unredacted and deanonymized names of the DOGE agents referenced therein."

The Court should deny Plaintiffs' request.  Maintaining the anonymized monikers will not prevent Plaintiffs from citing to or relying on the twelve previously filed documents, and doing so properly balances any interest Plaintiffs may have in the information, the public's presumption of access to judicial documents, and the importance of protecting nonparties from harms caused by unwanted invasions of privacy.

## BACKGROUND

On March 19, 2025, Defendants asked the Court to enter the parties' proposed stipulated

---

[1] The term DOGE Agent refers to the sixteen "DOGE agents at OPM [that] remain anonymized in this action and have been referred to in filings as OPM-2 to -7, and OPM-9 to -18."  ECF No. 190 at 1.

protective order.  ECF Nos. 64, 65.  In doing so, Defendants expressed concerns that "identifying certain OPM employees and DOGE [Agents] publicly would be an unwarranted invasion of privacy and could lead to potential threats and harassment."  ECF No. 65 at 1.  The Court entered the stipulated protective order that same day.  *See* ECF No. 66.

The stipulated protective order allows Defendants to redact the personally identifying information ("PII") of "DOGE [Agents]" contained in the administrative record.  *Id.* ¶ 3. Redactions must be labeled with an "anonymized moniker for any DOGE [Agent] whose [PII] is redacted."  *Id.*  Defendants must—and already did—produce to Plaintiffs' counsel a list of names identifying which named individual corresponds to which anonymized moniker, as well as an unredacted copy of the administrative record.  *Id.*  Defendants' redaction or anonymization of PII designates it as "Covered Information" and triggers protections against disclosure under the stipulated protective order.  *Id.* ¶¶ 4–11.  Any filings that include Covered Information must be made under seal pursuant to the applicable rules of the Court.  *Id.* ¶¶ 4, 7.

On five separate occasions, Defendants requested leave to file certain documents with limited redactions, consistent with the stipulated protective order, to protect the names of certain DOGE Agents based on concerns that publicly identifying them would be an unwarranted invasion of their privacy and could lead to potential threats and harassment.  *See* ECF Nos. 79, 99, 142, 149, 165.  In each instance, Defendants argued that the limited redactions and anonymization requested would "protect the strong privacy interest of non-parties" while still allowing the "public to understand the issues in the litigation."  *See* ECF Nos. 79, 99, 142, 149, 165 (alteration and citations omitted).  The Court accepted these arguments and granted each of these requests despite Plaintiffs' withholding their consent.  *See* ECF Nos. 82, 104, 144, 152, 169.

On March 13, 2026, Plaintiffs filed the motion to unredact the names of sixteen DOGE

Agents now before the Court.  *See generally* Mot.

## ARGUMENT

Rule 26(c) provides that a district court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  The Court entered such an order here, which, among other things, provided for the "replacement of the names of certain DOGE [Agents] with anonymized monikers," after Defendants explained that "identifying certain . . . DOGE [Agents] publicly would be an unwarranted invasion of privacy and could lead to potential threats and harassment."  ECF No. 65. Defendants did not seek to withhold information from Plaintiffs through that order, but rather to protect certain information from being publicly disclosed.

While judicial documents are accorded a presumption of public access, *see Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006), courts may issue protective orders permitting the withholding of information from the public for "good cause," Fed. R. Civ. P. 5.2(e)(2).  Moreover, "[n]ot every document generated in a lawsuit is a 'judicial document.'" *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007); *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) (*Amodeo II*) ("Unlimited access to every item turned up in the course of litigation would be unthinkable.").

"The Second Circuit has set forth a three-part analysis for determining whether documents relating to a lawsuit must be made available to the public."  *Stern*, 529 F. Supp. 2d at 420.  First, the court must determine whether the documents at issue are "judicial documents."  *Id.* (quoting *Lugosch*, 435 F.3d at 119) (quotation marks omitted).  A document must be "relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."  *Stern*, 529 F. Supp. 2d at 420 (quoting *United States v. Amodeo*,

3

44 F.3d 141, 145 (2d Cir. 1995) (*Amodeo I*)) (internal quotation marks omitted). "[D]ocuments that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach." *Stern*, 529 F. Supp. 2d at 421 (quoting *Amodeo II*, 71 F.3d at 1050) (emphasis and quotation marks omitted).

Second, if the document is a judicial document, the court must determine the "weight of the presumption" of public access. *Stern*, 529 F. Supp. 2d at 420. "The presumption of access varies according to the nature of the judicial document to which access is sought" and is "strongest when the documents play a substantial role in determining litigants' substantial rights." *Zhang Jingrong v. Chinese Anti-Cult World All.*, No. 15 Civ. 1046 (SLT) (VMS), 2016 WL 11671639, at *2 (E.D.N.Y. June 2, 2016) (citations omitted); *accord Mirlis v. Greer*, 952 F.3d 51, 60 (2d Cir. 2020).

Third, the Court must weigh countervailing interests against the presumption. *Stern*, 529 F. Supp. 2d at 420. Countervailing factors include "the danger of impairing law enforcement or judicial efficiency," *Amodeo II*, 71 F.3d at 1050, "public[] safety," *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017), and the privacy interests of those resisting disclosure, *Stern*, 529 F. Supp. 2d at 420; *see also Amodeo II*, 71 F.3d at 1050–51.

## I. THE COURT SHOULD DENY PLAINTIFFS' MOTION TO UNREDACT THE NAMES OF SIXTEEN DOGE AGENTS NOT IN PUBLIC-FACING ROLES

Even assuming the twelve documents at issue constitute judicial documents, the weight of presumption of public access to the information that Defendants seek to keep redacted and anonymized is low. Indeed, the information sought to be protected is "largely unrelated to the public interest" and not necessary to adjudication of this action. *See In re Savitt/Adler Litig.*, No. 95 Civ. 1842 (RSP), 1997 WL 797511, at *4 (N.D.N.Y. Dec. 23, 1997). Moreover, Defendants' use of redactions and anonymized monikers is narrowly tailored to protect legitimate privacy

4

interests of nonparties.  Upholding Defendants' use of anonymized monikers in the twelve documents identified by Plaintiffs will properly balance any interest Plaintiffs may have in using those documents in litigation, the public's interest in access to information relevant to the litigation, and the privacy interest of nonparties.

As an initial matter, the Court already found good cause to enter the stipulated protective order for the purpose of protecting DOGE Agents from an unwarranted invasion of privacy and potential threats and harassment, and the redactions and anonymized monikers at issue (1) serve that purpose and (2) fall squarely within the definition of Covered Information in the stipulated protective order.  *See* ECF No. 65; ECF No. 66 ¶ 4.

Moreover, the Second Circuit's test for determining whether documents relating to a lawsuit must be publicly available is not satisfied with respect to the identities of DOGE Agents "who are not in public-facing roles."  ECF No. 177 at 10 n.4.  First, even assuming that the documents at issue are judicial documents, the weight of the presumption of public access to the information Defendants seek to redact and anonymize is quite low.  *See Amodeo II*, 71 F.3d at 1050 ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption [of public access] is low and amounts to little more than a prediction of public access absent a countervailing reason.").  As the procedural history of this case amply demonstrates, the names of DOGE Agents are unnecessary to adjudicating any dispute between the parties.  *See* ECF Nos. 72, 121, 177 (resolving motions by the parties and referring to DOGE Agents using anonymized monikers).  Moreover, information such as the names and other identifying information of low-level government employees is "largely unrelated to the public interest," and may properly be withheld.  *In re Savitt/Adler Litigation*, 1997 WL 797511, at *4. Indeed, contrary to Plaintiffs' contention, Mot. at 8–9, "the public can assess the . . . actions [of

5

DOGE Agents] without the[ir] names." *Id.*; *see also Kelly v. City of New York*, No. 01 Civ. 8906 (AGS) (DF), 2003 WL 548400, at *6 (S.D.N.Y. Feb. 24, 2003) ("[T]he public can assess the City's actions in discharging Plaintiffs without the names of the individual employees."). Accordingly, the names of the employees being withheld here warrant only a limited presumptive right of access.

Second, a significant countervailing interest supports maintaining the limited redactions and anonymized monikers—the privacy interests of nonparties. *See Amodeo II*, 71 F.3d at 1050–51. Defendants redacted the names at issue and used anonymized monikers to protect the identities of nonparty federal employees in light of threats of harm received by DOGE employees over the past year. The Second Circuit has repeatedly observed that the privacy interests of third parties should weigh heavily in balancing the presumption of access against privacy interests. *See id.*; *cf. In re Candor Diamond Corp.*, 26 B.R. 847, 849 (S.D.N.Y. Feb. 4, 1983) ("Restrictions on discovery may be broader where a non-party is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information."). And courts have specifically recognized a "privacy interest" by federal employees "in avoiding the unwanted contact or harassment that would result from the release of their names." *Elec. Priv. Info. Ctr. v. DHS*, 384 F. Supp. 2d 100, 118 (D.D.C. 2005); *Long v. OPM*, 692 F.3d 185, 196 (2d Cir. 2012) (explaining that "[r]edaction of names" can protect "individuals' physical safety"); *Massey v. FBI*, 3 F.3d 620, 624 (2d Cir. 1993) ("[I]ndividuals, including government employees and officials, have privacy interests in the dissemination of their names."), *abrogated on other grounds by Milner v. Dep't of Navy*, 562 U.S. 562 (2011); *Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstruction*, No. 18 Civ. 2622 (ABJ), 2021 WL 4502106, at *15 (D.D.C. Sept. 30, 2021) ("[I]t is well-established that lower-level government employees in general have a privacy interest in their identities."). Courts have also explained that "low-level

government employees . . . have a heightened privacy interest." *Insider, Inc. v. U.S. GSA*, 635 F. Supp. 3d 1, 4 (D.D.C. 2022) (citing *Common Cause v. NRC*, 674 F.2d 921, 938 (D.C. Cir. 1982)).

For these reasons, courts have entered protective orders restricting the public dissemination of government employee names or images, particularly where, as here, the employees' identities have little or no bearing on the outcome of the litigation. *See e.g.*, *D.J.C.V. v. United States*, No. 20 Civ. 5747 (PAE), 2023 WL 3775283, at *2–3  (S.D.N.Y. June 2, 2023) (permitting the government to redact names of Department of Homeland Security personnel who were not deposed and were not probative to the relevant issues after the government pointed to a news report regarding threats to DHS staff and argued that redactions were necessary to "safeguard their privacy, safety, and security"); *Poulos v. City of Los Angeles*, No. 19 Civ. 496 (MWF) (AFM), 2020 WL 4108433, at *1–2 (C.D. Cal. June 23, 2020) (entering an order protecting visual images of third-party district attorneys in light of the "legitimate danger posed by public distribution" of such images); *In re Savitt/Adler Litigation*, 1997 WL 797511, at *3 (concluding that "privacy interests" of non-party Assistant Attorneys General were "strong factor weighing against disclosure of their identities" and ordering that their names be removed from public filings); *Kelly*, 2003 WL 548400, at *6 ("[R]edacting the employees' names will have minimal consequence on the public's ability to determine whether the City's stated policies regarding tax submissions were uniformly applied.").  In doing so, one district court noted that individuals do not "forfeit[] all privacy rights by engaging in public service." *Poulos*, 2020 WL 4108433, at *2.

Contrary to Plaintiffs' contention, Defendants' concerns are not speculative and also satisfy the First Amendment framework (assuming it applies) requiring specific, on the record findings to justify continued sealing. *See* Mot. at 12–13.  Not only has this case already generated significant press interest, *see, e.g.*, *Federal Workers Launch New Lawsuit to Fight DOGE's Data Access*,

7

Wired, Feb. 11, 2025, https://www.wired.com/story/government-employees-lawsuit-privacy-doge/; *Trump and DOGE Are 'Trying to Get Around' Privacy Laws to Gather Your Personal Info*, Rolling Stone, Apr. 8, 2025, https://www.rollingstone.com/politics/politics-features/trump-musk-doge-privacy-personal-info-data-social-security-1235312853/; *Trump Administration Must Face Lawsuit Over DOGE Data Access,* Bloomberg Law, Dec. 22, 2025, https://news.bloomberglaw.com/daily-labor-report/trump-administration-must-face-lawsuit-over-doge-data-access; *OPM Must Face DOGE Data Access Suit*, Dec. 22, 2025, https://www.law360.com/employment-authority/articles/2424402, but recent developments in a similar case also demonstrate with specificity the privacy harms that may result from unsealing here, especially in light of this press interest.  Indeed, in *Authors Guild v. National Endowment for the Humanities*, No. 25 Civ. 3923 (CM) (S.D.N.Y.), the plaintiffs published video depositions of four government witnesses on the internet.  *See Authors Guild*, No. 25 Civ. 3923, ECF Nos. 149, 150.  One witness was subsequently "subject to harassment and has received a number of death threats since the videos and video clips were publicized and circulated."  *Authors Guild*, No. 25 Civ. 3923, ECF No. 150 (letter from the government describing harassment).  Given these concrete threats in a similar case, this Court should exercise its power to continue to limit access to the names of DOGE Agents to protect the privacy interests of nonparty government employees.  *See Amodeo II*, 71 F.3d at 1050–51 (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).[2]

In light of the lack of probative value of the names of DOGE Agents and the legitimate

---

[2] Plaintiffs argue that the DOGE Agents' privacy interests are diminished because they have been publicly identified in "news reports, court documents, and public records." Mot. at 9.  But with the exception of very limited information inadvertently disclosed in the administrative record, *see id.* at 10, they continue to fail to point to anything publicly identifying the DOGE Agents "*in connection with the allegations in this action*," *see* ECF No. 190 at 2 (emphasis added).

privacy concerns of nonparties, maintaining the redactions and anonymization in question balances Plaintiffs' interests in the information sought to be protected, the public's interest in disclosure, and the privacy interests of nonparties.  Accordingly, the Court should deny Plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion to unredact the names of sixteen DOGE Agents.

Dated: March 17, 2026
    New York, New York

           Respectfully submitted,

           JAY CLAYTON
           United States Attorney for the
           Southern District of New York

By: */s/ Alyssa B. O'Gallagher*
           ALYSSA B. O'GALLAGHER
           Assistant United States Attorney
           86 Chambers Street, 3rd Floor
           New York, New York 10007
           Tel.: (212) 637-2822
           Email: alyssa.o'gallagher@usdoj.gov

           *Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned hereby certifies that, measured by the word processing program used to prepare this brief, this brief complies with the word-count limitation of the rule, which is a maximum of 8,750. Excluding the caption, table of contents, table of authorities, signature blocks, or any required certificates, but including material contained in footnotes or endnotes, there are 2,622 words in this brief.

Dated: March 17, 2026
      New York, New York

                                       */s/ Alyssa B. O'Gallagher*
                                       ALYSSA B. O'GALLAGHER
                                       Assistant United States Attorney