**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*, <br><br>   Plaintiffs, <br><br> v. <br><br> U.S. OFFICE OF PERSONNEL MANAGEMENT, *et al.*, <br><br>   Defendants. | Case No. 1:25-cv-01237-DLC |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO UNREDACT**
**THE NAMES OF SIXTEEN DOGE AGENTS**

**INTRODUCTION**

The identities of the DOGE agents in this case have long been public—yet redactions to conceal their identities still hamper the public's ability to monitor this case. Absent compelling justifications for the redactions—which Defendants' Opposition Brief confirms do not exist—the public is entitled to review this information, under both the common law and First Amendment. To resist transparency, Defendants fall back on purported privacy interests in *public* information, unspecified "threats" allegedly received by unidentified federal employees affiliated with DOGE, and public backlash to DOGE affiliates' controversial statements in deposition videos, which bear no relation to this case. These purported "interests" are no match for the strong presumption of public access to these materials. Continuing to tiptoe around this public information on summary judgment will not protect anyone's privacy, nor will continuing to restrict the public's access to relevant evidence in this case.

Plaintiffs' Motion to Unredact the Names of Sixteen DOGE Agents should thus be granted.

**ARGUMENT**

I.     **RECORDS THAT CONTAIN THE IDENTITIES OF DOGE AGENTS ARE "JUDICIAL DOCUMENTS" THAT MAY NOT BE CONCEALED UNDER THE "GOOD CAUSE" STANDARD.**

The materials Plaintiffs seek to unseal constitute "judicial documents," and Defendants do not argue otherwise. *See* Plfs' Br., 6–7; Op. 4–5.[1] Nor do Defendants contest that the documents at issue are subject to both the common law presumption of access and the stronger presumption under the First Amendment. Op., 7.

---

[1] Citations to Plaintiffs' Brief in Support of its Motion to Unredact the Names of Sixteen DOGE Agents, ECF No. 194 ("Plfs' Br.") and Defendants' Opposition Brief, ECF No. 196 ("Op.") refer to the black page numbering on the bottom of the motion, not the blue ECF number.

However, Defendants misstate the legal standards for sealing "judicial documents." Defendants erroneously assert that a showing of "good cause" to enter a protective order is sufficient to withhold judicial documents from the public. Op., 3, 5. The Second Circuit has rejected this false equivalency between "good cause for a protective order applicable to…documents that are not yet implicated in judicial proceedings" and "the higher threshold imposed by the First Amendment with respect to judicial documents." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 166 (2d Cir. 2013); *see also Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982). Thus, relying on a "prior finding of good cause to determine that the First Amendment right did not apply or was outweighed by countervailing factors" amounts to legal error. *Newsday*, 730 F.3d at 166.

**II.     THE PRESUMPTION OF ACCESS TO THE DOCUMENTS AT ISSUE, AND REDACTED INFORMATION THEREIN, IS EXTREMELY STRONG HERE.**

Notwithstanding Defendants' arguments to the contrary, the redacted names of DOGE agents are subject to a strong presumption of access. *See* Plfs' Br., 8–9. Defendants contend that the weight of the presumption of access to this information is "quite low" due to the purported lack of "probative value" or public interest in this information. Op., 5, 6, 8. Defendants' efforts to discount the weight of the presumption misconstrues both the law and facts.

**A.     The redacted names have been presented to the Court for consideration in connection with rights-determining motions.**

The presumption of access "is at its zenith" here, because the redacted information has already been "presented to the [C]ourt to invoke its powers or affect its decisions" on motions that asked the Court to "determine litigants' substantive legal rights," *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (quotation omitted), including Plaintiffs' motion for a preliminary injunction and Defendants' motion to dismiss. It is well established that "dispositive motions that qualify as judicial documents bear a particularly

strong presumption of public access." *Giuffre v. Maxwell*, 146 F.4th 165, 177 (2d Cir. 2025).

Moreover, Defendants do not contest that both Defendants and Plaintiffs intend to rely on this information in support of their respective summary judgment motions, to be filed on March 20, 2026, and April 15, 2026, respectively. *See* ECF No. 197. The presumption of access to documents used by parties moving for, or opposing, summary judgment is "of the highest" weight; these documents "should not remain under seal *absent the most compelling reasons*." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006) (citing *Joy*, 692 F.2d at 893) (emphasis original).

**B.      The identities of DOGE agents are central to the merits of Plaintiffs' claims.**

The names and identities of DOGE agents are essential to any substantive determination of this action. Contrary to Defendants' arguments, *see* Op., 5, the Court's use of monikers, rather than names, does not negate the importance of DOGE agents' identities to the merits of Plaintiffs' claims. While the strength of the presumption does not depend on the "extent" to which a court's decision "relied upon" information presented by a party, *see Lugosch*, 435 F3d at 123; *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019), the Court's orders have recognized the relevance of DOGE agents' identities to the merits of Plfs' claims, *see* Plfs' Br., 8–9.

The names and identities of DOGE agents are integral to Plaintiffs' claims that Defendants violated the Privacy Act. To evaluate Plaintiffs claim that Defendants unlawfully disclosed Plaintiffs' PII, in violation of 5 U.S.C. § 552a(b), and Defendants' assertion of the statutory exemption under § 552(a)(b)(1), the court must conduct an individual-by-individual analysis to determine whether each DOGE agent was an employee of OPM employee, as opposed to an employee of another federal agency. *Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Pers. Mgmt.*, 786 F. Supp. 3d 647, 686 (S.D.N.Y. 2025) ("*AFGE I*") (noting that "employment status is relevant"). Much of the evidence related to DOGE agents' relationships

3

with other agencies has come from public sources that identify DOGE agents by name—not moniker.

Additionally, the identities and backgrounds of individual DOGE agents are relevant to Plaintiffs' claim that OPM violated 5 U.S.C. § 552a(e)(10), including by failing to follow its established procedures for vetting and background checks. For example, the Court's June 9, 2025, opinion pointed to OPM's failure to "act to ensure the fitness of OPM-4 for employment at OPM and access to PII," even after a *New York Times* report regarding a concerning incident at a previous job. *Id.*, at 680, 689–90. This evidence also comes from a public source that identifies OPM-4 by name, rather than moniker. Identifying the monikers associated with the names in public sources requires reference to the sealed list of names associated with each moniker.

The identities of DOGE agents are thus essential to the adjudication of Plaintiffs' claims, giving the public a strong presumptive right to access this information.

### C. The public has a strong interest in this information.

Defendants' assertions that the public has little-to-no interest in the identities of DOGE agents is belied by their own brief. The public's interest in DOGE's privacy violations at OPM— and indeed across the federal government—are a matter of undeniable public concern, particularly for the millions of Americans whose data may have been compromised by unlawful access to OPM systems.[2] Moreover, the intense public debate surrounding, and extensive press coverage of, federal agencies' data disclosures to DOGE agents demonstrates the public's

---

[2] OPM's failures to follow established security protocols in vetting, onboarding, training, and granting systems permissions to DOGE agents increases the risks of another catastrophic data breach, which would seriously implicate the public interest. History demonstrates the impact of failing to protect the privacy and security of OPM systems. A 2015 breach compromised tens of millions of individuals' personal information, resulting in "grave" threats to national security, and direct federal costs exceeding $500 million, as the Court has previously observed. *AFGE I*, 786 F. Supp. 3d at 663–64. The public has an interest in preventing such a breach.

interest in this issue. Defendants concede that that the press is closely following this case. Op. 7–8 ("this case has already generated significant press interest"). At least three national news outlets have reported the names and backgrounds of the DOGE agents. Plfs' Br., 3 & nn.5–6. Such disclosures are also the subject of multiple lawsuits against federal agencies.

Moreover, the cases that Defendants rely on for the proposition that the public lacks an interest in this information both predate *Lugosch* and did not apply the standards established in that case. *See In re Savitt/Adler Litig.*, No. 95-cv-1842, 1997 WL 797511, at *3–4 (N.D.N.Y. Dec. 23, 1997), *modified by* 1998 WL 51994 (N.D.N.Y. Feb. 5, 1998); *Kelly v. City of New York*, 1-cv-8906, 2003 WL 548400, at *4–7 (S.D.N.Y. Feb. 24, 2003). In addition, these cases are highly distinguishable, as they concerned the public's interest in linking individuals to their traditionally private information, such as personnel files, tax claims, or disciplinary records, as opposed to simply identifying the individual government employees involved in government activities that affect the public. The redactions at issue in *In re Savitt/Adler Litig.* involved names appearing in government employees' *personnel files*—traditionally private documents—not the public's legitimate interest in knowing who worked for a particular agency. 1997 WL 797511, at *1–2; 1998 WL 51994, at *3 n.1. *Kelly v. City of New York* similarly involved personally identifying information in documents generally deemed confidential, including tax records and records of investigations and disciplinary actions related to tax violations. 2003 WL 548400, at *4–5.

Moreover, cases decided after *Lugosch* have rejected the proposition the courts may withhold the names of "low-ranking" government employees contained in judicial documents. *New York v. Mayorkas*, No. 20-cv-1127, 2021 WL 2850631, at *12–13 (S.D.N.Y. July 8, 2021) (noting the "presumption of public access is not outweighed by any privacy interest the relevant federal employees may have in their names alone"); *see also Authors Guild v. Nat'l Endowment for Humans.,* No. 25-cv-3657, 2026 WL 412620, at *3 (S.D.N.Y. Feb. 13, 2026) ("Absent some specific

5

and articulable privacy or safety concern, the public is entitled to know who works for its government and in what capacity.")

Finally, even if the public *didn't* have an interest in identifying "low-level" government employees—which is not the law in this Circuit—DOGE agents are not "low-level" government employees. They have been given broad discretion and power over federal policy, spending, and staffing; their titles include expert or senior advisor to the director in OPM's Office of the Director; and those who were paid received the highest GS-15 pay scale. *See, e.g.*, OPM-000010; OPM-000017. The public has a clear interest in identifying and holding accountable the individuals entrusted with such authority.

**III.  DOGE AGENTS' PRIVACY INTERESTS ARE NOT ENOUGH TO OVERCOME THE PRESUMPTION OF ACCESS.**

**A.  DOGE agents' limited privacy interests in their already-public identities do not justify concealing this information.**

The DOGE agents do not have strong privacy interests in their identities, given their involvement in the incidents at issue in this case, and the public impact of their government activities. Defendants contend that the "privacy interests" of nonparties, *i.e.* DOGE agents, weigh heavily against disclosure. Op., 6. However, the DOGE agents "are not equivalent to a third party who is unassociated" with Defendants' allegedly illegal activities, and "their third-party status should be placed in context" of their role in the incidents at issue. *See Olson v. Major League Baseball*, 29 F.4th 59, 91 (2d Cir. 2022).

Defendants' reliance on courts' recognition that government employees have at least some privacy interests in their names is similarly misplaced. Op., 6. This "unremarkable proposition" is "rarely" sufficient to justify treating the identities of government officials as confidential. *Authors Guild*, 2026 WL 412620, at *3–4; *see also Mayorkas,* 2021 WL 2850631, at *13.

> In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public. Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public.

*United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("*Amodeo II*"). The identities of government officials are not "traditionally considered private," particularly where, as here, the actions of these officials have significant "public ramifications." *See Id.*; *see also Authors Guild*, 2026 WL 412620, at *4.

**B.      Defendants do not contest that all DOGE agents have already been publicly identified both by the press and by Defendants themselves.**

More importantly, any limited privacy interests that DOGE agents may have had are attenuated by the uncontested fact that they have already been identified as DOGE agents working at OPM, including by Defendants themselves. *See* Plfs' Br., 3–4, 9–10. For example, OPM disclosed the names and positions of every DOGE agent in this case, except OPM-4, in response to a Freedom of Information Act request. *Id.*, 3 & n.6. And this Court itself has cited to public sources that identify OPM-4. *AFGE I*, 786 F. Supp. 3d at 673 (citing *New York Times* and *Musk Watch* articles). The federal government has publicly disclosed the identities of numerous DOGE agents in numerous other cases; OPM-18 even made a declaration in his capacity as an OPM official. Plfs' Br., 3–4, 3 n.7; Declaration of Victoria J. Noble dated March 13, 2026 ("Second Noble Decl."), Ex. 1.

Defendants do not explain why these public disclosures do not severely diminish any privacy interests that DOGE agents may have otherwise had or preclude redacting this information altogether. Second Circuit precedent, and several cases Defendants rely on, suggest they should. *See Olson*, 29 F.4th at 91–92 (noting privacy interest in relevant information was substantially diminished because it "had already been made public"); *Gambale v. Deutsche Bank*

7

*AG*, 377 F.3d 133, 144 (2d Cir. 2004).

Defendants counter this argument solely by asserting that, "with the exception of…information inadvertently disclosed in the administrative record," Plaintiffs "continue to fail to point to anything publicly identifying the DOGE agents '*in connection with the allegations in this action*,'" Op., 8 n.2. However, this position is inaccurate. To start, this action challenges the actions of each and every DOGE agent associated with OPM, as each one of them received administrative access to at least one sensitive record system. OPM-000103. The public news reports, court documents, and public records that identify each of these individuals as DOGE agents associated with OPM thus necessarily implicate them in this action. Separately, the Court itself has cited heavily to a news report—where DOGE agents are named—that helped form the factual basis of this action. *AFGE I*, F. Supp. 3d at 673 (citing *Musk Watch* article).

### C. Defendants have not identified a concrete harm plausibly attributable to unsealing in this case.

Finally, Defendants still have not identified any concrete harm that is even plausibly traceable to the disclosure of identities that have already been made public. Defendants merely point to unidentified "threats of harm" received by unspecified "DOGE employees" at some time within the past year. Op., 6. This does nothing to demonstrate which redactions, if any, are necessary to mitigate threats against specific DOGE agents. Moreover, as another district court recently recognized, because the identities of DOGE agents have already been publicly reported, the risks of threats or harassment that DOGE officials may face do not warrant redacting their identities. *AFL-CIO v. U.S. Dep't of Labor*, No. 25-cv-339, ECF No. 59, at 3 (D.D.C. Mar. 17, 2025); *see also Eletson Holdings, Inc. v. Levona Holdings Ltd.,* No. 23-cv-7331, 2023 WL 5956144, at *4 (S.D.N.Y. Sept. 13, 2023) (rejecting redactions of individuals' "already publicly known" identities).

8

Defendants claim that threats received after the disclosure of previously unreleased videos of depositions of other DOGE affiliates in *Authors Guild* "demonstrate with specificity the privacy harms that may result from unsealing here." Op., 8. These deposition videos—which contained highly controversial, previously unreported admissions by other DOGE affiliates—are not analogous to merely disclosing already public names of the DOGE agents in court filings. In fact, the government filed an unsealed list of DOGE affiliates in *Authors Guild* over one month ago, see Second Noble Decl., Ex. 2, yet Defendants do not claim that these disclosures led to threats of harassment. Nor has the federal government asserted that identifying DOGE agents in other cases resulted in threats or harassment. Thus, the public deposition videos in *Authors Guild* are not a reasonable indication of harm that may result from unredacting the identities of DOGE agents in this case.[3]

## CONCLUSION

For the forgoing reasons, Plaintiffs' Motion to Unredact the Names of Sixteen DOGE Agents should be GRANTED.

Dated:  March 19, 2026                        Respectfully submitted,

*/s/ Victoria J. Noble*
Victoria J. Noble
Cindy Cohn (admitted pro hac vice)
F. Mario Trujillo (admitted pro hac vice)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

---

[3] Moreover, the court in *Authors Guild* has not determined that any threats to DOGE agents stemming from the public release of the deposition videos override the public's right of access to the videos. The court merely entered an interim order "solely to preserve the status quo" only until the issues could be fully argued and considered by the court. *See* Order, *Authors Guild*, No. 25-cv-3923, ECF No. 151.

9

Rhett O. Millsaps II
Mark A. Lemley (admitted pro hac vice)
Mark P. McKenna (admitted pro hac vice)
Christopher J. Sprigman
LEX LUMINA LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
(646) 898-2055

Norman L. Eisen (admitted pro hac vice)
Andrew H. Warren (admitted pro hac vice)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003

Subodh Chandra (admitted pro hac vice)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 W. 6th Street, Suite 400
Cleveland, OH  44113

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing reply contains 2,834 words, calculated using Microsoft Word for Mac, which complies with Rule 7.1(c) if the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated:  March 19, 2026                              */s/ Victoria J. Noble*
                                                          Victoria J. Noble