UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X
                                           :
AMERICAN FEDERATION OF GOVERNMENT          :
EMPLOYEES, AFL-CIO, et al.,                :
                                           :
                          Plaintiffs,      :        25cv1237 (DLC)
                                           :
                -v-                        :        OPINION AND
                                           :            ORDER
U.S. OFFICE OF PERSONNEL MANAGEMENT, et    :
al.,                                       :
                                           :
                          Defendants.      :
                                           :
------------------------------------------ X

APPEARANCES:

For plaintiffs:

Victoria Noble
F. Mario Trujillo
Cindy Cohn
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109

Rhett O. Millsaps II
Mark P. McKenna
Christopher J. Sprigman
Mark A. Lemley
Lex Lumina LLP
745 Fifth Avenue, Suite 500
New York, NY 10151

Norman L. Eisen
Andrew H. Warren
Democracy Defenders Fund
600 Pennsylvania Avenue SE #15180
Washington, DC 20009

Subodh Chandra
The Chandra Law Firm LLC
1265 W. 6th Street, Suite 400
Cleveland, OH 44113

For defendants:

Alyssa O'Gallagher
Jeffrey Stuart Oestericher
United States Attorney's Office, Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007

DENISE COTE, District Judge:

The plaintiffs have moved to de-designate as confidential and unseal the names of the sixteen Department of Government Efficiency ("DOGE") Agents who remain anonymized in this action.[1] For the following reasons, the motion is granted.

## **Background**

The U.S. Office of Personnel Management ("OPM") maintains systems of records that contain the personal information of tens of millions of Americans, including past, current, and aspiring federal employees.  Following President Trump's inauguration, OPM granted broad access to many of those systems to a group of DOGE Agents.[2]  The plaintiffs have demonstrated a likelihood of

---

[1] These DOGE Agents have been referred to in filings thus far as OPM-2 to -7, and OPM-9 to -18.

[2] The definition of "DOGE Agents" in the preliminary injunction, which is also adopted in this Opinion, is the following:
    (1) the individuals listed on page OPM-103 of the administrative record; (2) any individuals employed by [USDS] and detailed to OPM; (3) any individuals employed by OPM and detailed to USDS; (4) any individuals employed by OPM who are detailed to any other federal agency for the principal purpose of implementing initiatives that are directed by USDS;

success in showing that, by granting such access, the defendants violated OPM's cybersecurity practices as well as the law.  Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Pers. Mgmt., 786 F. Supp. 3d 647, 683 (S.D.N.Y. 2025) ("June 9 Opinion").

On February 11, 2025, current and former federal government employees and their unions sued OPM and other defendants for breaches of privacy.  The complaint includes five claims for relief: two claims under the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act"); two claims under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"); and an ultra vires claim.  There are two sets of defendants: the "OPM Defendants," which consist of OPM and its former Acting Director Charles Ezell; and the "DOGE Defendants," which consist of the United States DOGE Service ("USDS"), its Acting Director, the U.S. DOGE Service Temporary Organization, and Elon Musk.  The plaintiffs seek injunctive relief and a declaration that the decision to implement a system by which DOGE Agents have access

---

and (5) any individuals who were not employees or contractors of OPM prior to January 20, 2025 and who have been given access to any OPM system of records containing [personally identifiable information] for the principal purpose of implementing initiatives that are directed by USDS. Excluded from this definition are Charles Ezell, Gregory Hogan, Amanda Scales, and James Sullivan.

3

to OPM's records and the plaintiffs' personal information contained in those records is unlawful.

Pursuant to an agreement of the parties, a Stipulated Protective Order (the "Protective Order") was entered in this case on March 19, 2025.  The Protective Order permitted the defendants to "redact personally identifiable information ('PII') of so-called 'DOGE affiliates'" contained in the administrative record.  Each redaction had to be labeled with an anonymized moniker (e.g., "OPM-1"), and a list of the names that correspond to each moniker had to be provided to the plaintiffs.

Redacted or anonymized PII was designated as "confidential," and protected from disclosure under the Protective Order.  Any filings containing such information was required to be filed under seal, subject to the Court's rules. The Protective Order further provided that any party could challenge any confidentiality designation "at any time before the trial of this action."

On five separate occasions, the defendants sought leave to file documents with the names of DOGE Agents redacted.[3]  In each instance, the defendants argued that disclosing those identities

---

[3] The redacted documents include: the administrative record, the declarations of four OPM officials, OPM documents attached as exhibits to the declarations, and two versions of a report filed by the defendants pursuant to the Court's preliminary injunction.

would constitute an "unwarranted invasion of privacy and could lead to potential threats and harassment."  The plaintiffs withheld their consent to these requests, reserving the right to challenge sealing at a later date.  Each sealing request was granted.  The Court therefore referred to DOGE Agents by anonymized monikers in its June 9 and December 19, 2025 Opinions.

The June 9 Opinion granted the plaintiffs' request for a preliminary injunction.  June 9 Opinion, 786 F. Supp. 3d at 657. The Court found that, beginning on Inauguration Day, OPM gave seventeen DOGE Agents and three OPM leaders immediate, sweeping access to systems containing the PII of millions of Americans. Id. at 679.  The Opinion grouped these Agents into two cohorts: the "Group of Seven," consisting of OPM-2 through OPM-7 and James Sullivan (formerly known as OPM-8), and the "Group of Ten," consisting of OPM-9 through OPM-18.  Id. at 672-75.

To evaluate the legality of this extraordinary grant of access, the Court analyzed the DOGE Agents' employment status, the extent to which they were vetted and trained, the access to OPM systems they received, and the need for that access to perform their duties.  Id. at 672-90.  The analysis showed that many of the DOGE Agents -- some notably young and inexperienced -- did not work solely or even primarily for OPM, lacked any

demonstrated need for the access they were granted, and received that access in violation of OPM's established training and cybersecurity protocols.  Id. at 672-75, 686-87, 689.

Based on these findings, the Court held that the plaintiffs were likely to succeed on their Privacy Act claims on two grounds: first, that OPM unlawfully disclosed sensitive records to DOGE-affiliated individuals who were not OPM employees or who lacked a need for those records to perform their duties at OPM; and second, OPM failed to safeguard the plaintiffs' records by ignoring its established safeguards in connection with the DOGE Agents brought into OPM.  Id. at 683-90.  The Court further held that the claims are reviewable under the APA.  Id. at 690-92.  A preliminary injunction was issued on June 20.

On December 5, the defendants filed a motion to dismiss this action as moot.  The defendants argued that the plaintiffs' claims were moot because OPM had adopted new security protocols that would ensure compliance with the Privacy Act, and because none of the DOGE Agents currently had access to the plaintiffs' PII in any OPM system.  An Opinion of December 19 denied the motion.  Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Pers. Mgmt., No. 25-cv-1237, 2025 WL 3687548 (S.D.N.Y. Dec. 19, 2025) ("December 19 Opinion").  The Court determined that the defendants had failed to establish that the challenged conduct

could not reasonably recur, particularly given OPM's history of bypassing its own security protocols, and the possibility that certain DOGE Agents still had indirect access to PII, or that their direct access could be restored.[4]  Id. at *7-11.  In reaching that conclusion, the Court analyzed facts pertaining to the five DOGE Agents who remained at OPM, including their professional backgrounds, roles at other federal agencies, and the access they had been given to PII in OPM systems.  Id. at *5-6.

On March 2, 2026, the plaintiffs filed a letter motion to de-designate the names of DOGE Agents as confidential under the Protective Order and unseal the twelve documents, listed in Appendix A to their letter, containing the redacted names. After receiving the defendants' letter response on March 5, formal briefing was ordered.  The motion became fully submitted on March 19.  The plaintiffs filed a notice of supplemental authority on March 23, attaching Authors Guild v. National Endowment for the Humanities, No. 25-cv-3923, 2026 WL 810422 (S.D.N.Y. Mar. 23, 2026).

Meanwhile, on March 20, the defendants filed another request for leave to file documents with the DOGE Agents'

---

[4] The December 19 Opinion also denied the plaintiffs' motion for extra-record discovery.

7

identities redacted, this time in connection with their summary judgment motion.[5]  The plaintiffs opposed this request, which remains pending.

## **Discussion**

The plaintiffs seek to unseal the identities of the DOGE Agents under both the common law and the First Amendment.  The motion must be granted under either standard.

### I.   Common Law Right of Access

"The common law right of public access to judicial documents is firmly rooted in our nation's history."  Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006).  Such access enables the federal courts "to have a measure of accountability" and "the public to have confidence in the administration of justice."  Giuffre v. Maxwell, 146 F.4th 165, 175 (2d Cir. 2025) (per curiam) (citation omitted). Accordingly, judicial documents may remain under seal only upon a sufficient showing.

Under the common law, courts apply a three-step inquiry to determine whether filed materials should remain under seal:

> First, the court determines whether the record at issue is a judicial document -- a document to which the presumption of public access attaches.  Second, if the record sought is determined to be a judicial

---

[5] The redacted documents include a declaration by defense counsel and the OPM documents attached as exhibits thereto.

document, the court proceeds to determine the weight of the presumption of access to that document.  Third, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document and balance those factors against the weight properly accorded the presumption of access.

Id. (citation omitted).

A court filing constitutes a judicial document when it is "relevant to the performance of the judicial function and useful in the judicial process" -- that is, when it would "reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers."  Brown v. Maxwell, 929 F.3d 41, 49 (2d Cir. 2019) (citation omitted).  For example, evidence submitted to decide a summary judgment motion is per se a judicial document.  Id. at 47.  By contrast, "[d]ocuments that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach."  United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995).

The defendants do not dispute that the redacted materials at issue here are judicial documents.  They were "presented to the court to invoke its powers or affect its decisions," id., and the Court has relied on both the documents and the identities of individual DOGE Agents in adjudicating the issues in this case.

Next, courts assess the weight of the presumption of access. The strength of the common law presumption depends on "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Brown, 929 F.3d at 49; Newsday LLC v. County of Nassau, 730 F.3d 156, 165 (2d Cir. 2013). The presumption is strongest where documents bear directly on the adjudication of substantive rights and weakest where they play only a negligible role in the exercise of judicial power. Olson v. Major League Baseball, 29 F.4th 59, 89 (2d Cir. 2022).

The presumption of public access to the material at issue here is strong. The identities of the DOGE Agents are not incidental details in this litigation. In resolving the plaintiffs' request for preliminary injunctive relief, the Court was required to assess, on an individual basis, whether particular DOGE Agents were employees of OPM, the extent to which they were vetted and trained, and whether they had a need for access to OPM systems containing PII. See June 9 Opinion, 786 F. Supp. 3d at 672-77. In resolving the defendants' motion to dismiss, the Court again assessed, on an individual basis, the five DOGE Agents who remained at OPM, supplementing its prior analysis of their background and the access they received

10

with the new information received from the parties.  See December 19 Opinion, 2025 WL 3687548, at *5-6.  In both Opinions, the identities of the relevant DOGE Agents were integral to the merits analysis.  The same principle applies to materials recently submitted in connection with summary judgment, as to which the presumption of access is "of the highest" weight.  Lugosch, 435 F.3d at 123.

Moreover, the public interest in disclosure is substantial. This case concerns the grant of access to sensitive government systems and data allegedly in violation of the Privacy Act and without adherence to established OPM security protocols.  Where litigation challenges the government's management of such information, the identity of the individuals entrusted with it bears directly on the public's ability to understand the dispute, evaluate the Court's rulings, and assess the governmental conduct at issue.  The presumption of access is "bolstered" when "more complete knowledge of the document" will allow the public to "better understand and assess the district court's ruling."  Olson, 29 F.4th at 90.

The defendants argue that the presumption is weak because the Court can adjudicate the case using anonymized monikers rather than names.  But that contention does not engage the relevant question.  The issue is not whether the Court can

11

decide the case while substituting placeholders for names.  It is whether the public can adequately monitor the judicial process and understand the governmental conduct being challenged in federal court.  From that perspective, the identities of the individuals at issue matter.

The defendants also contend that the DOGE Agents are merely low-level employees whose identities add little to the public's understanding of the case.  But that characterization is difficult to reconcile with the authority, discretion, and access that these individuals were given.  The DOGE Agents were given administrative access to OPM systems containing PII, including code read and write permissions.  June 9 Opinion, 786 F. Supp. 3d at 676.  Simultaneously, and for roughly two weeks, OPM's career database administrators had their access revoked. Id. at 677.  The public has a substantial interest in knowing who, specifically, exercised or was granted access to sensitive federal systems and data.  That interest is heightened where, as here, similar allegations have arisen in other litigation involving DOGE-affiliated personnel.  Thus, disclosure allows the public to monitor the government's conduct and assess court rulings across related proceedings.

The countervailing interests identified by the defendants do not overcome the strong presumption of public access here.

12

The defendants principally invoke the privacy and safety interests of nonparty employees, citing generalized concerns about threats and harassment directed at DOGE personnel.

First, as for the DOGE Agents' privacy interests, the Second Circuit has recognized that the privacy interests of "innocent third parties" should weigh heavily in a court's balancing equation.  Olson, 29 F.4th at 91 (citation omitted). That said, "their third-party status should be placed in context."  Id.  Here, the DOGE Agents are not private citizens swept incidentally into this litigation.  They are individuals whose official roles, access, and authority lie at the heart of the plaintiffs' claims.  In this context, the identities of the DOGE Agents involved bear directly on the public's ability to understand and scrutinize the challenged exercise of governmental authority.[6]

Moreover, the defendants acknowledge that the identities of all sixteen DOGE Agents have already entered the public domain through news reports, court filings, and public records.

---

[6] This is in stark contrast to the identities of the officials in Massey v. F.B.I., 3 F.3d 620 (2d Cir. 1993), abrogated on other grounds by Milner v. Dep't of Navy, 562 U.S. 562 (2011).  In that case, the Court of Appeals upheld redactions under FOIA Exemption (b)(7)(C), withholding the identities of FBI agents because disclosure would "not reveal any significant information concerning the conduct" of FBI investigations that would justify the invasion of personal privacy.  Massey, 3 F.3d at 625.

Although the defendants insist that those individuals have not been publicly linked to the specific allegations in this case, that distinction does not materially restore a privacy interest that has already been substantially diminished.  See Olson, 29 F.4th at 92 (acknowledging that privacy interests are diminished where the information has already been made public to a substantial extent).

Second, with respect to safety, the defendants have not proffered evidence that mere disclosure of the Agents' names -- all of which are already publicly associated with DOGE -- would likely lead to increased threats or harassment.  Instead, the defendants point to the recent events described in Authors Guild v. National Endowment for Humanities, No. 25-cv-3923, 2026 WL 810422 (S.D.N.Y. Mar. 23, 2026).  In that case, government witnesses reported being subjected to significant harassment, including death threats, after the plaintiffs published videos of their deposition testimony on the internet.  Authors Guild, 2026 WL 810422, at *3.  But those troubling occurrences followed the online dissemination of their deposition testimony, not the disclosure of their identities, which the court unsealed weeks earlier.  See Authors Guild v. Nat'l Endowment for Humans., No. 25-CV-3657, 2026 WL 412620, at *3-4 (S.D.N.Y. Feb. 13, 2026) (declining to designate as confidential the names, titles and

14

pay grades of individuals working for or with DOGE).  Thus,
considering the strong presumption of public access and the
diminished countervailing interests asserted by the defendants,
the common law requires the unsealing of the DOGE Agents' names
in this case.

   II.  First Amendment Right of Access

     The same conclusion follows under the First Amendment.  The
First Amendment accords a strong presumption of public access to
judicial documents that "have historically been open to the
press and general public" and "play[] a significant positive
role in the functioning of the [judicial] process."  Bernstein
v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 141
(2d Cir. 2016) (citation omitted).

     The First Amendment right has been held to apply to
"summary judgment motions and documents relied upon in
adjudicating them," as well as "pretrial motions and written
documents submitted in connection with them."  Newsday LLC, 730
F.3d at 164.  The identities of DOGE Agents appear throughout
documents "submitted in connection with" pretrial motions and
have been relied on in adjudicating those motions.  Id.  They
will also be relied on again in resolving the summary judgment
motions which are being filed.  Moreover, the Second Circuit has
recognized that public access to material "plays a significant

15

positive role" in the judicial process where, like here, "[t]he issues involved are manifestly ones of public concern and therefore ones which the public has an interest in overseeing." United States v. Erie Cnty., N.Y., 763 F.3d 235, 242 (2d Cir. 2014) (citation omitted).

Once it attaches, the First Amendment right affords an even stronger presumption of access to judicial documents than the common law.  That presumption may be overcome only by "specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim."  Newsday LLC, 730 F.3d at 165 (citation omitted).

The defendants have not carried their burden of demonstrating that continued sealing of the DOGE Agents' identities is necessary to preserve a higher value.  As discussed above, their asserted concerns rest on generalized references to harassment, not on "specific, on-the-record" evidence showing that nondisclosure in this case is "necessary" to mitigate harm.  Id.  Nor have the defendants shown that redaction of the identities of all sixteen DOGE Agents is narrowly tailored, particularly where those identities and their affiliation with DOGE are already publicly available from other sources.  Because the defendants have not made the showing

necessary to overcome the First Amendment presumption of access, continued sealing of the DOGE Agents' names is also rejected on that ground.

## Conclusion

The plaintiffs' March 13, 2026 motion is granted. The defendants' March 20 letter motion to seal is denied as to the names of the DOGE Agents. The identities of DOGE Agents in this case are not entitled to confidentiality and do not require anonymized monikers in future court filings. The defendants shall re-file on the public docket all documents listed in Appendix A, as well as those filed under seal at Dkt. No. 204, with the names of the DOGE Agents unredacted.

Dated:    New York, New York
          April 1, 2026

                                    _____
                                        DENISE COTE
                              United States District Judge

17