UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO, *et al.,*

             Plaintiffs,

        v.

U.S. OFFICE OF PERSONNEL
MANAGEMENT, *et al.*,

            Defendants.

No. 25 Civ. 1237 (DLC)

---

## DEFENDANTS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:   (212) 637-2525
*Attorney for Defendants*

ILAN STEIN
*Assistant United States Attorney*
   - Of Counsel -

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ....................................................................................................................2

    I.     Factual Background ...................................................................................................2

ARGUMENT.........................................................................................................................5

    I.     Plaintiffs Cannot Justify the Requested Prospective Relief ..........................................6

        A.  OPM-2 and OPM-18 Are OPM Employees and Were So at All Relevant Times ..6

        B.  OPM-2 and OPM-18 No Longer Have Access to Relevant OPM Record Systems ...............................................................................................................8

        C.  OPM Has Appropriate Safeguards to Ensure Security and Confidentiality of its Data Systems........................................................................................................8

    II.    Plaintiffs' Ultra Vires Claim Fails ................................................................................11

    III.   The Court Should Deny Plaintiffs' Cross-Motion for Summary Judgment ................11

CONCLUSION………………………………………………………………………………..16

i

**PRELIMINARY STATEMENT**

Defendants the U.S. Office of Personnel Management ("OPM"); Scott Kupor, in his official capacity as Director of OPM;[1] U.S. DOGE Service ("USDS" or "DOGE"); the Acting USDS Administrator; U.S. DOGE Service Temporary Organization; and Elon Musk, in his official capacity as Director of USDS (together, the "Government"), submit this memorandum of law in further support of their motion for summary judgment and in opposition to Plaintiffs' cross-motion for summary judgment.

As the Government explained in its opening brief, Plaintiffs' request for prospective relief fails because the record evidence demonstrates no current or impending harm. Instead, the evidence shows that the only "DOGE Agents"[2] who continue to work at OPM—OPM-2 and OPM-18—are, and were at all relevant times, OPM employees who have been properly credentialed and vetted; who had a sufficient need to access OPM's record systems; and who no longer have access to Plaintiffs' personally identifiable information ("PII"). It further argued that Plaintiffs' *ultra vires* claim against the "DOGE Defendants" fails because there is no record evidence of any DOGE Defendant requesting or being granted access to OPM data systems.

Plaintiffs' responses fail. Plaintiffs do not identify any record evidence that demonstrates that they are entitled to prospective relief; instead, they largely recycle the same arguments that they previously raised that do not account for the meaningful developments that have occurred since the Court issued its preliminary injunction. Nor do Plaintiffs attempt to defend their *ultra*

---

[1] Scott Kupor, who became Director of OPM on July 14, 2025, is automatically substituted for the former Acting Director as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

[2] In this brief, the Government uses the term "DOGE Agent" as defined by the Court in its preliminary injunction decision. *See* ECF No. 134 at 3. The Government's use of the term is not a concession that the relevant individual is—or at any relevant time, was—in fact a DOGE employee or agent.

*vires* claim, electing instead to seek summary judgment only under the Administrative Procedure Act ("APA").

Because Plaintiffs' cross-motion for summary judgment relies on arguments that Plaintiffs raised earlier in this litigation, the Government incorporates by reference arguments it has made in opposition: Plaintiffs lack Article III standing, *see, e.g.*, ECF No. 95 at 10–20; the APA claims fail because there has not been a final agency action, *see id.* at 20-23, and the Privacy Act's remedial scheme provides an "adequate remedy," *see, e.g.*, ECF No. 62 at 16–19; and the claims are moot or unripe, *see, e.g.*, ECF No. 163 at 9–20. In this brief, the Government supplements its previous arguments by explaining how recent factual developments further undermine Plaintiffs' claims and militate against Plaintiffs' cross-motion for summary judgment.

## BACKGROUND

### I.    Factual Background[3]

The Government incorporates by reference the factual background in its opposition to Plaintiffs' motion for a preliminary injunction, ECF No. 95 at 2–9; its December 5, 2025 motion to dismiss, ECF No. 163 at 2–7; and its opening brief in support of its motion for summary judgment, ECF No. 201 at 1–3. Here, the Government discusses additional facts relevant to the pending motions.

### A.  Updated Cybersecurity and Privacy Policies

In November 2025, OPM updated its Cybersecurity and Privacy Policy. July 6, 2026 Declaration of Adam Starr ("Starr Decl.") ¶¶ 8–9. In relevant part, OPM introduced new protocols

---

[3] This memorandum uses anonymized monikers for OPM-2 and OPM-18; however, consistent with the Court's April 1, 2026 Order, *see* ECF No. 208, Defendants acknowledge that OPM-2 is Riccardo Biasini and OPM-18 is Noah Peters. Citations to the OPM certified administrative record (ECF Nos. 78-2, 168-3) are denoted by the prefix "OPM-000XXX" throughout.

for access to OPM systems containing PII. *Id.* ¶ 10. Those protocols dictate that before an individual may receive access to an OPM system containing PII, the system owner must (1) confirm with the Chief Information Security Officer ("CISO") that the person had completed Cybersecurity and Privacy Awareness training and completed the Rules of Behavior acknowledgement; (2) confirm with the Chief Human Capital Officer ("CHCO") that the individual was properly appointed or detailed; (3) confirm with Facilities, Services, and Emergency Management ("FSEM") that the individual has been properly vetted and cleared for entrance on duty; and (4) confirm with the Senior Agency Official for Privacy ("SAOP") that the first three steps were taken, that the individual has a need to access the system, and that written confirmation exists that the "need to know" criterion of the Privacy Act has been satisfied. *Id.* This policy change was communicated to all OPM employees by email on November 20, 2025. *Id.* ¶ 9.

On May 11, 2026, OPM again updated its Cybersecurity and Privacy Policy to clarify that only OPM employees or contractors may be granted administrative access to any OPM system that contains PII, and the access protocols apply not only to direct access to PII but also to indirect access. *Id.* ¶ 11. This more recent policy change was communicated to OPM employees by email on May 15, 2026. *Id.* ¶ 12; *id.* Ex. A.

In addition, OPM no longer considers that the need "to be prepared to implement changes" constitutes sufficient justification for granting administrative access to systems containing PII. *Id*. ¶ 3. OPM "will not invoke this justification in the future in granting [administrative] access," and it "repudiates any prior statements to the contrary." *Id.*

B.    Access to PII by "DOGE Agents"

OPM has confirmed that "no individuals falling within the category of 'DOGE Agent,' as defined in the Court's preliminary injunction order, currently have access to PII of Plaintiffs in this matter in any OPM data systems," Starr Decl. ¶ 4, and no "DOGE Agent" "will be granted administrative access to databases containing Plaintiffs' PII in the future," *id.* ¶ 18.  OPM-2 does not have administrative access to OPM Data, FEHB, PSHB, USA Performance, eOPF, or EHRI, "and will not be granted such access in the future."  *Id.* ¶ 5.  OPM-18 "does not have administrative access to USA Performance and will not be granted such access in the future."  *Id.* ¶ 6.

Moreover, OPM "has carefully investigated all previous grants of access to PII to 'DOGE Agents . . . .'"  *Id.* ¶ 13.  As part of that effort, OPM analyzed audit materials regarding access by "DOGE Agents" to OPM systems, including, among others, USA Performance, USAJOBS/Web Admin, USA Staffing, Agency Talent Portal, eOPF, EHRI including Databricks and legacy EHRI environments, and OPM Data/Connect Platform/PowerBI-related access.  *Id.* ¶¶ 13–14.  For those systems, OPM analyzed for each relevant account: "the date access was created, the date access was removed or deactivated where applicable, whether the access was administrative or otherwise privileged, the type of system access granted, whether the individual logged in or the last login date where available, the stated explanation for access, and any available comments concerning whether the access could have permitted access to PII."  *Id.* ¶ 13.  OPM then identified whether the accounts were used to access PII and, if so, whether there was any evidence that the data was extracted or disseminated.  *Id.* ¶ 15.  OPM "found no evidence that PII from OPM systems was extracted by DOGE Agents or disseminated in violation of applicable law or policy" or that any such data was otherwise "made available to DOGE Agents."  *Id.* ¶¶ 16-17.  OPM therefore concluded that "no remediation is necessary" at this time.  *Id.* ¶ 16.

4

## ARGUMENT[4]

Recent developments undercut Plaintiffs' request for prospective relief. Plaintiffs' APA claim is derivative of their Privacy Act theory, and Plaintiffs seek only prospective relief. But there is no ongoing Privacy Act violation that would justify the remedy they seek. Plaintiffs' failure to identify an ongoing violation is especially significant because the Privacy Act itself does not provide the direct injunctive relief Plaintiffs seek under Sections 552a(b) and 552a(e)(10). *See Am. Fed. of Govt. Employees, AFL-CIO v. OPM*, 777 F. Supp. 3d 253, 280–81 (S.D.N.Y. 2025).

As the Government explained in its opening brief, only two "DOGE Agents" currently work at OPM. Those individuals—OPM-2 and OPM-18—were at all relevant times OPM employees. They also were properly credentialed and needed access to OPM's record systems.

Today, no "DOGE Agent" has access to any OPM system of records containing Plaintiffs' PII. Starr Decl. ¶ 4. OPM has committed not to grant "DOGE Agents" with such access in the future. *Id.* ¶ 18. Moreover, OPM has repudiated its previously held view that a generalized need to be prepared is a sufficient basis to grant administrative access to systems containing PII, and OPM has explained that it will not invoke that rationale going forward. *Id.* ¶ 3. OPM has also revised its Cybersecurity and Privacy Policy to clarify that access protocols apply to indirect access with equal force. *Id.* ¶ 11. And OPM has found no evidence that PII was extracted from OPM systems or disseminated. *Id.* ¶ 16.

---

[4] The Government incorporates by reference its arguments that Plaintiffs have failed to demonstrate Article III standing, *see, e.g.*, ECF No. 95 at 10–20; that Plaintiffs' claims are not reviewable under the APA for violations of the Privacy Act because they have not shown the requisite final agency action, *see id.* at 20–23, and because the Privacy Act's comprehensive remedial scheme provides another "adequate remedy," 5 U.S.C. § 704, that prevents review under the APA, *see, e.g.*, ECF No. 62 at 16–19; and that Plaintiffs' claims are moot or unripe, *see, e.g.*, ECF No. 163 at 9–20.

In short, the record evidence and recent factual developments establish that prospective relief is not warranted. Therefore, the Court should grant the Government's motion—and deny Plaintiffs' cross-motion—for summary judgment.

## I.    Plaintiffs Cannot Justify the Requested Prospective Relief

Plaintiffs fail to establish by citation to evidence in the administrative record that they are entitled to prospective relief in this action. *See Adueva v. Mayorkas*, No. 17 Civ. 3350 (DLI), 2021 WL 3492144, at *13 (E.D.N.Y. Aug. 9, 2021) ("Plaintiffs bear the burden of showing that an agency's actions are arbitrary and capricious by citation to evidence in the administrative record."). Because Plaintiffs seek only prospective relief, the dispositive question is forward-looking: whether Plaintiffs can show ongoing or "certainly impending future injury." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012); *cf. Am. Fed. of Govt. Employees, AFL-CIO v. OPM*, 820 F. Supp. 3d 260, 273–75 (S.D.N.Y. 2025) ("*December 19 Order*") (concluding that this action is not moot because, *inter alia*, "[f]ive DOGE Agents remain[ed] at OPM" at the time, and discussing only the remaining so-called "DOGE Agents" in the context of "the issues [that] remain live"). Plaintiffs cannot show ongoing or impending future injury: OPM has investigated prior access and found no evidence that Plaintiffs' PII from OPM systems was extracted or improperly disseminated, and OPM has withdrawn DOGE Agents' access to Plaintiffs' PII and committed not to provide such access in the future.

### A.    OPM-2 and OPM-18 Are OPM Employees and Were So at All Relevant Times

The Government's opening brief explained, with evidence from the administrative record, that OPM-2 and OPM-18 were duly appointed as OPM employees during the relevant timeframe— from January 20, 2025, through February 11, 2025. *See* ECF No. 201 at 6–7. It noted that both were appointed to positions at OPM on January 20, 2025. *See id.* (citing OPM-000006–009; OPM-

000296–298).  And it explained that there is no record evidence that establishes that either OPM-2 or OPM-18 was detailed to or from another agency at any relevant time.  *Id.*

Plaintiffs' opposition fails to identify record evidence that establishes otherwise.  Instead, Plaintiffs rely on "evidence from a separate case listing a roster of employees of the DOGE agency."  *See* April 15, 2026 Declaration of F. Mario Trujillo ("Trujillo Decl.") ¶ 3, Ex. C.  Plaintiffs' reliance on that document is inappropriate.  To begin, the document is not part of the administrative record; the Court should therefore decline to consider it in adjudicating the pending motions.  *See Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) ("Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision.").[5]  Moreover, Plaintiffs' declarant has no personal knowledge of the truth or falsity of the information contained in that document, and their declarant would not be competent to testify about it at trial.

But even if the Court takes that document into consideration, it should still conclude that OPM-2 and OPM-18 were at all relevant times OPM employees, as the totality of the evidence refutes plaintiffs' characterization.  Amy Gleason, who has served as DOGE Administrator since February 18, 2025, has declared under penalty of perjury that OPM-18 was never detailed to nor employed by DOGE.  July 5, 2026 Declaration of Amy Gleason ¶ 2.  That assertion is corroborated by OPM-18's own sworn statement that he is "currently employed by . . . OPM" and "has never been detailed to any other agency or instrumentality of the U.S. Government, including [DOGE]."  June 5, 2026 Declaration of Noah Peters ¶¶ 1-2.  He further declares that he has "[n]ever been part

---

[5] While courts occasionally allow parties to supplement the administrative record—for example, in "highly technical areas," to "understand[] the problem faced by the [a]gency and the methodology it used to resolve it," *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 633 (S.D.N.Y. 2019) (quoting *Ass'n of Pac. Fisheries v. EPA*, 615 F.2d 794, 811 (9th Cir. 1980))—this case does not present the sort of exceptional circumstances where it would be appropriate to do so.

of a DOGE Team inside OPM." *Id.* ¶ 2.  Kimberly Sylke, a human resources specialist at OPM, similarly declares that, based on her knowledge and a review of OPM's records regarding details to other agencies, OPM-18 "has been an employee of OPM since January 20, 2025," and "has never been detailed to any other agency or instrumentality of the U.S. Government, including [DOGE] . . . ." June 8, 2026 Declaration of Kimberly Sylke ¶¶ 3-4.

> B.  OPM-2 and OPM-18 No Longer Have Access to Relevant OPM Record Systems

OPM-2 and OPM-18 do not have administrative access to Plaintiffs' PII.  OPM-2 "does not have administrative access to OPM Data, FEHB, PSHB, USA Performance, eOPF or EHRI and will not be granted such access in the future," Starr Decl. ¶ 5, and OPM-18 "does not have administrative access to USA Performance and will not be granted such access in the future," *id.* ¶ 6.  Moreover, "no individuals falling within the category of 'DOGE Agent' . . . currently have access to PII of plaintiffs in this matter in any OPM data systems." *Id.* ¶ 4.

> C.  OPM Has Appropriate Safeguards to Ensure Security and Confidentiality of its Data Systems[6]

The record also shows that OPM has established—and adheres to—appropriate safeguards to "insure the security and confidentiality" of its sensitive data systems as required by the Privacy Act.  *See* 5 U.S.C. § 552a(e)(10).  As relevant to the pending motions, OPM-2 and OPM-18 were appropriately vetted and credentialed according to OPM's "established, rigorous, and required procedures."  ECF No. 97 ¶ 24.

Since the preliminary injunction order was issued in this action, OPM has taken additional steps to protect its data systems.  In November 2025, OPM updated its Cybersecurity and Privacy

---

[6] Defendants acknowledge the Court's preliminary conclusion that "OPM . . . failed in its duty to safeguard the plaintiffs' records."  *December 19 Order*, 820 F. Supp. 3d at 265 (citing *Am. Fed. of Govt. Employees, AFL-CIO, et al. v. OPM*, 786 F. Supp. 3d 647, 683-90 (S.D.N.Y. 2025)).

Policy to strengthen its access protocols. According to the November 2025 updates, before an individual is provided with access to an OPM system or systems containing PII, the system owner must (1) confirm with the CISO that the person completed the relevant training, (2) confirm with the CHCO that the individual was properly appointed or detailed, (3) confirm with FSEM that the person has been appropriately vetted, and (4) confirm with the SAOP that the first three steps were taken, explain the reason access is needed to the system, and receive written approval from the SAOP that the requested access complies with the Privacy Act's "need to know" requirement. Starr Decl. ¶ 10.

In its order denying the Government's motion to dismiss, this Court concluded that the November 2025 policy updates did not render the case moot in part because "defendants still [took] the position that the 'need to know' criteria of the Privacy Act was satisfied in January 2025 when OPM granted DOGE Agents broad access to OPM systems because that access might later be needed – a rationale that the Court has rejected." *December 19 Order*, 820 F. Supp. 3d at 273 (citing *Am. Fed. of Govt. Employees, AFL-CIO, et al. v. OPM*, 786 F. Supp. 3d 647, 687 (S.D.N.Y. 2025)). The Court found that the Government had failed to show that the "new protocols, however admirable, will prevent OPM from improperly deeming the 'need to know' criteria to be satisfied based on similar anticipatory grants of access." *Id.* at 273–74.

Since then, OPM has made additional reforms that further protect OPM's data systems and that show that there is no reasonable expectation of future violations of the Privacy Act. On May 11, 2026, OPM revised its Cybersecurity and Privacy Policy to clarify that (1) "[o]nly individuals who are OPM employees or contractors may be granted administrative access to OPM systems containing PII," and (2) the protocols apply with equal force to indirect access to PII extracted from OPM systems. Starr Decl. ¶ 11. That policy change was communicated to all OPM

9

employees by email on May 15, 2026. *Id.* ¶ 12; *id.* Ex. A.  Further, OPM has repudiated the need-to-be-prepared justification for administrative access:  As OPM's Chief Information Officer ("CIO") has declared, "OPM no longer believes that the need 'to be prepared to implement changes,' without more, is an appropriate justification for granting administrative access . . . to systems containing personally-identifiable information (PII) to OPM employees, contractors, or detailees."  *Id.* ¶ 3.  "OPM will not invoke [the need-to-be-prepared] justification in the future in granting such access."  *Id.*  The CIO further declared that "[n]o 'DOGE Agent,' as defined in this Court's previous orders, will be granted administrative access to databases containing Plaintiffs' PII in the future."  *Id.* ¶ 18.

The Government recognizes that this Court previously observed that "this lawsuit is fundamentally about . . . whether OPM violated the law in spite of its procedures" and that "this lawsuit is unlikely to be mooted by the Government creating more procedures."  *December 19 Order*, 820 F. Supp. 3d at 273.  However, OPM's actions—in repudiating its prior rationales, stripping administrative access from all "DOGE Agents," committing not to grant administrative access to "DOGE Agents" in the future, and otherwise fortifying its access controls—demonstrate more than just a bureaucratic exercise.  Rather, these steps demonstrate that OPM has addressed the issues that this Court has identified and that OPM is committed to ensuring that no such issues persist.  Plaintiffs' contrary theory rests on speculation that OPM will disregard its revised policy, violate its sworn representations to this Court, and recreate the early-2025 circumstances that no longer exist.  Speculation about future events cannot defeat the Government's motion for summary judgment.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

On the current record, Plaintiffs cannot establish any ongoing violations of the Privacy Act or a reasonable expectation that any past violations will recur.  Moreover, OPM has investigated

10

whether any PII was extracted or improperly disseminated by any of the "DOGE Agents," and has found "no evidence" of any such extraction or dissemination.  Starr Decl. ¶ 16.

For these reasons, the Court should grant the Government's motion for summary judgment with respect to Plaintiffs' claims for prospective relief under the APA.

## II.    Plaintiffs' *Ultra Vires* Claim Fails[7]

The Court should also grant the Government's motion for summary judgment with respect to Plaintiffs' *ultra vires* claim against the "DOGE Defendants."  As the Government explained in its opening brief—and Plaintiffs have not adequately refuted—the record is devoid of evidence of any DOGE Defendant requesting, demanding, or being granted access to OPM's data systems.  In fact, the administrative record does not even mention any of the DOGE Defendants.  The *ultra vires* claim therefore fails.

## III.    The Court Should Deny Plaintiffs' Cross-Motion for Summary Judgment

Plaintiffs' cross-motion for summary judgment retreads the ground Plaintiffs covered when they sought a preliminary injunction more than 14 months ago.  They assert the same harms, *compare* ECF No. 84 at 10 *with* ECF No. 210 at 14, and claim the same risk of recurrence, *compare* ECF No. 84 at 12 *with* ECF No. 210 at 15–16.  As before, they argue that the "DOGE Agents" were not OPM employees and did not need the records to perform their duties.  *Compare* ECF No. 84 at 15–19 *with* ECF No. 210 at 17–24.  As before, they assert that OPM failed to establish adequate safeguards to protect the confidentiality of records.  *Compare* ECF No. 84 at 19–21 *with* ECF No. 210 at 24–26.  In their cross-motion for summary judgment, Plaintiffs fail to account for the meaningful steps that OPM has taken to address the Court's and Plaintiffs' concerns.

---

[7] The Court has already concluded that "relief" pursuant to Plaintiffs' *ultra vires* claim is "inappropriate," albeit based on a different rationale than that advanced by Defendants.  *See* ECF No. 121 at 93 (concluding that "relief pursuant to the ultra vires claim is inappropriate because the APA already gives the plaintiffs meaningful relief for the violation of their rights").

To avoid redundancy, the Government incorporates by reference the arguments it previously advanced in opposition to Plaintiffs' erroneous contentions. *See, e.g.*, ECF No. 95. Here, the Government focuses on the ways that recent developments belie Plaintiffs' argument that their claims are ripe and not moot.

Contrary to Plaintiffs' assertions, this case is now moot insofar as "the relief sought can no longer be given or is no longer needed." *Neurological Surgery Prac. of Long Island, PLLC v. HHS*, 145 F.4th 212, 223 (2d Cir. 2025) (citation omitted). Plaintiffs also cannot satisfy the requirements for a permanent injunction, an "extraordinary remedy," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), that "does not follow from success on the merits as a matter of course." *Winter v. Nat. Resources Defense Council, Inc.*, 555 U.S. 7, 32 (2008). Plaintiffs must establish irreparable injury, demonstrate the inadequacy of remedies available at law, and show that the balance of hardships favors equitable relief and that "the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006). Plaintiffs fail at each step.

*First*, Plaintiffs cannot prevail because there is no ongoing Privacy Act violation and no impending future injury. As explained above, none of the "DOGE Agents" have access to Plaintiffs' PII, and according to OPM's Chief Information Officer, no DOGE Agent will be granted such access in the future. Starr Decl. ¶¶ 4, 18. Of the "DOGE Agents" identified in this litigation, only two remain at OPM. Both are employed by OPM, have been properly trained and vetted, their administrative access has been stripped, and according to the CIO, such access will not be restored. *Id.* ¶¶ 5–6. OPM has adopted new protocols that, among other things, ensure that only OPM employees and contractors will be granted access to OPM systems containing PII, that the security policies apply with equal force to indirect access to PII, and that the agency will not rely

on a need-to-be-prepared rationale to justify granting administrative access to systems that contain PII. *Id.* ¶¶ 3, 7–12.

In addition, Executive Order 14158, which created the U.S. DOGE Service, expressly contemplated that the President's DOGE agenda would be implemented within 18 months. *See* Executive Order 14158, 90 Fed. Reg. 8,441 (Jan. 20, 2025) ("EO 14,158") ¶ 3(b). EO 14,158 created a "temporary organization known as 'the U.S. DOGE Service Temporary Organization," "dedicated to advancing the President's 18-month DOGE agenda." *Id.* According to the Executive Order, that organization "shall terminate on July 4, 2026." *Id.* The sunset date on the DOGE Service Temporary Organization has already passed, which further undercuts Plaintiffs' conclusory assertion regarding a likelihood of recurrence.

*Second*, Plaintiffs cannot show irreparable injury. Past harm does not establish a real and immediate threat of future injury. *Lyons*, 461 U.S. at 111. Here, the past harm is unlikely to recur for the reasons articulated above. Moreover, OPM has "carefully investigated all previous grants of access to PII to 'DOGE Agents'" in order to ascertain whether any PII might have been extracted or disseminated. Starr Decl. ¶ 13. As part of that effort, OPM reviewed audit materials that identify:

> by individual and account, the OPM systems for which access was created, the account username, the date access was created, the data access was removed or deactivated where applicable, whether the access was administrative or otherwise privileged, the type of system access granted, whether the individual logged in or the last login date where available, the stated explanation for access, and any available comments concerning whether the access could have permitted access to PII.

*Id.* OPM reviewed all systems relevant to this action, including, for example: USA Performance, USAJOBS/Web Admin, USA Staffing, Agency Talent Portal, eOPF, EHRI, and OPM Data/Connect Platform/PowerBI-related access. *Id.* ¶ 14. Where there was evidence that an

13

account had been used, OPM analyzed whether there was any evidence that any PII had been extracted or disseminated. *Id.* ¶ 15. This investigation revealed no evidence that "PII from OPM systems was extracted by DOGE Agents or disseminated in violation of applicable law and policy," *id.* ¶ 16, or that "any OPM records or datasets extracted from OPM systems [were] made available to DOGE Agents," *id.* ¶ 17. Therefore, OPM concluded that "no remediation is necessary" at this time. *Id.* ¶ 16.

Plaintiffs' theory of future injury requires the Court to accept multiple speculative assumptions: that OPM will disregard its current written policy, disregard sworn representations to this Court, grant access to individuals whom it has already stated will not receive access, and do so under a rationale OPM has repudiated. That is not an adequate basis upon which to establish irreparable harm.

*Third*, Plaintiffs cannot show that the sweeping injunction they seek is necessary or justified. Plaintiffs request broad institutional relief, including removal of access, deletion or expungement of records supposedly moved elsewhere, an accounting, and a remediation plan. *See* ECF No. 210 at 28–29. But OPM has already withdrawn the "DOGE Agents'" access, investigated past access, determined that no PII was extracted from OPM systems or improperly disseminated, and changed its policy. *See* Starr Decl. ¶¶ 4–18.

*Fourth*, the balance of hardships and public interest weigh against a permanent injunction. The government and the public have an interest in OPM's ability to manage its information systems, personnel, cybersecurity policies, and privacy compliance without a broad injunction freezing or judicially supervising internal access determinations beyond what the Privacy Act requires. Under OPM's current policy, access to PII is already contingent upon written SAOP acknowledgment that the requested access satisfies the Privacy Act's "need to know" criteria. *Id.*

14

¶ 10. A permanent injunction would add little protection but risk needless judicial entanglement in day-to-day agency access decisions.

*Finally*, Plaintiffs' proposed injunction is overbroad. For example, Plaintiffs ask the Court to prohibit OPM from disclosing records to "the DOGE agency, or DOGE agents" under Section 552a(b)(1). ECF No. 210 at 28. But the Privacy Act itself does not require such stark prohibitions; rather, the Privacy Act calls for an analysis of the individual's employment status and their need for access to the records. Plaintiffs also ask for deletion or expungement of records allegedly extracted from OPM systems and moved elsewhere. *Id*. at 29. But the CIO has investigated the prior grants and found that no PII was extracted from OPM systems or improperly disseminated. Starr Decl. ¶¶ 13–17. Thus, even if the Court were inclined to grant injunctive relief—which it should not do—Plaintiffs' requested relief is inappropriate as it is neither grounded in the record evidence nor proportional to the needs of the case.

In fact, Plaintiffs are not entitled to any prospective relief. The recent developments discussed above render Plaintiffs' claims moot or, in the alternative, unripe, as Plaintiffs cannot establish a "reasonable expectation" that the conduct that gave rise to the preliminary injunction in this action will likely recur. *Doe v. McDonald*, 128 F.4th 379, 386–87 (2d Cir. 2025) (citation omitted). Plaintiffs have not demonstrated that they are entitled to the "drastic and extraordinary remedy" of a permanent injunction. *Monsanto*, 561 U.S. at 165. Neither the Privacy Act nor the APA authorizes courts to issue permanent injunctions aimed at punishing past conduct that is unlikely to recur.

Plaintiffs' request for declaratory relief fails for the same reason: There is no live controversy that would justify such relief. A declaratory judgment is not available to adjudicate

15

abstract disagreement over past conduct where no present legal dispute remains. *See, e.g.*, *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

The record evidence and recent developments establish that there is no ongoing or imminent harm. OPM does not currently provide "DOGE Agents" with access to Plaintiffs' PII, nor will the Government grant such access in the future. OPM has repudiated the "need to be prepared" rationale for access to PII. And OPM's policies now apply with equal force to indirect access to PII. *See* Starr Decl. ¶¶ 3–13. Therefore, neither declaratory nor injunctive relief is warranted.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment and deny Plaintiffs' cross-motion for summary judgment.

Dated: New York, New York
July 7, 2026

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By:     /s/ Ilan Stein
ILAN STEIN
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2525
Email: ilan.stein@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that, measured by the word processing program used to prepare this brief, this brief complies with the word-count limitation of the rule, which is a maximum of 8,750. Excluding the caption, table of contents, table of authorities, signature blocks, and any required certificates, but including material contained in footnotes or endnotes, there are 5,308 words in this brief.

Dated:  New York, New York
        July 7, 2026

                           /s/ Ilan Stein
                           ILAN STEIN
                           Assistant United States Attorney