**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. OFFICE OF PERSONNEL MANAGEMENT, et al.,<br><br>Defendants. | Case No. 25-cv-1237-DLC |

**DECLARATION OF EVERETTE R. HILLIARD**

I, Everette R. Hilliard, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am currently employed by the United States Office of Personnel Management ("OPM"), as the Director of Facilities, Security and Emergency Management ("FSEM"), and have been employed in this role since March 2020. I report to the Director of OPM. I am a career civil servant. Prior to my current role, I served as the Assistant Director of Justice Protective Services at the U.S. Department of Justice and was an employee at the U.S. Department of Justice for 29 years. I have been employed at OPM since March 2020.

2. In my current role, I oversee, among other things, OPM's background investigations and security clearance vetting programs and procedures as they relate to potential new/existing employees and contractors. I manage FSEM's Personnel Security Division, which includes vetting to determine the suitability and fitness of existing personnel and those applicants

seeking to become an OPM employee or an OPM contactor, vetting for security clearances, and credentialing decisions, as further described below.

3. I have extensive knowledge of OPM's vetting processes, including the investigation, evaluation, and adjudication of new/existing OPM employees, and the granting of Homeland Security Presidential Directive 12 ("HSPD-12") Personal Identity Verification ("PIV") credentials and security clearances to OPM employees/contractors. I have overseen and been involved in ensuring the proper vetting of new/existing employees hired at OPM since March 2020, including ensuring that such individuals undergo appropriate background investigations prior to entrance on duty and the provision of employee PIV credentials. I make this declaration based on my personal and professional knowledge and on information contained in the OPM administrative record, information contained in OPM's systems, or information provided to me in the course of performing my duties, including information provided to me by employees within FSEM's Personnel Security Division.

**Vetting: Suitability, Security Clearance, Credentialing**

4. Vetting is the process by which individuals undergo investigation, evaluation, and adjudication of whether they are (1) suitable or fit to serve in federal employment or on behalf of the federal government—known as suitability or fitness, (2) eligible to occupy a sensitive position or access classified information—known as national security adjudication, and (3) eligible for a PIV credential—known as credentialing. After the final eligibility determination is made, the employee or contractor is enrolled in Continuous Vetting (CV) in accordance with Trusted Workforce 2.0 guidelines.

5. To ensure the management of OPM's personnel consistent with national security and public trust interests, all new employees undergo some degree of vetting. Vetting includes

checks of automated data sources of public and other Government records systems and a background investigation. If an appointment is for less than 180 days, only automated checks will be completed pursuant to 5 CFR Part 731 and *Credentialing Standards Procedures for Issuing Personal Identity Verification Cards under HSPD-12 and New Requirement for Suspension or Revocation of Eligibility for Personal Identity Verification Credentials* (Dec. 15, 2020), available at https://www.opm.gov/suitability/suitability-executive-agent/policy/cred-standards.pdf (the "Credentialing Standards"). Both the automated checks and background investigation are provided to OPM by the Defense Counterintelligence and Security Agency ("DCSA"), or other investigative service providers as determined by the level of vetting required, to gather facts about the individual being vetted and an adjudication of those facts using 5 CFR Part 731 suitability and fitness standards. For political employees assigned to OPM, if the individual's initial checks are favorable or their background investigation is favorably adjudicated, FSEM then notifies OPM's HR team to process the individual for authorization to begin employment and/or work. This is referred to as clearance to enter on duty ("EOD"). EOD clearance can be provided by FSEM either on an interim basis, using vetting checks and employee-provided data, or after all the required vetting is complete and favorably adjudicated.

6. Vetting typically begins with a background investigation, and the scope of the background investigation differs depending on the type of position to which a prospective OPM employee is designated for appointment and the length of that appointment. At the beginning of the process, the agency determines what type of investigation the position will require through a review of a position description and application of the Position Designation Automated Tool (PDT). The position designation process assesses the duties and responsibilities of a position to determine the degree of potential damage to the efficiency or integrity of the service from

misconduct of an incumbent of a position. This establishes the risk level of a position. This assessment also determines if a position's duties and responsibilities present the potential for position incumbents to bring about a material adverse effect on national security, and the degree of that potential effect, which establishes the sensitivity level of a position. The results of this assessment determine what level of background investigation should be conducted for a position.

7. Background investigations obtain information about an individual's personal, criminal, and employment history to gauge their judgment, reliability, and integrity. Background investigations vary in scope depending on the position, but they often obtain information about an individual's past employment, illegal drug use, and criminal record, and include automated checks of public and other Government records systems. Background investigators collect information from the individual in question, and from other sources like current or former employers, coworkers, friends, and neighbors. Background investigations to determine if one can serve in a sensitive national security position with access to classified information have the broadest scope.

8. Once the background investigation is completed and an adjudicative determination has been made, the individual is enrolled in CV. CV is the review of an individual's background at any time during their affiliation with the Government to determine whether they continue to meet applicable trust determination requirements. In 2017, the President issued EO 13764 directing reforms of the Executive Branch personnel vetting program, including mandating the use of CV for anyone working for or on behalf of the Government.

**Suitability and Security Clearance Process at OPM**

9. At OPM, all employees, regardless of the level of the position—i.e., public trust, national security sensitive, secret/top secret clearance—undergo the same overall vetting process, which includes a background investigation and an adjudication in accordance with regulations,

including 5 CFR part 731, and national standards and guidelines, including OPM's Suitability and Fitness Processing Manual (Jan. 17, 2025), https://www.opm.gov/media/kdmjwsby/suitability-and-fitness-processing-manual.docx. The steps in OPM's vetting process for new hires is as follows:

a. Step 1: A new hire package, including forms signed by the applicant, is provided by HR to FSEM. This new hire package contains a Position Description (Form OF 8), Declaration for Federal Employment (Form OF 306), an applicant's resume, and other miscellaneous documents as appropriate. FSEM reviews these documents for completeness and will screen the information provided to determine if there are any issues that require clarification through documentation with the individual at this point in the process.

b. Step 2: If the appointment is for less than six continuous months, the background investigation requirements do not apply, pursuant to 5 CFR part 731, and the Credentialing Standards. In these cases, FSEM's policy is to require fingerprint templates for submission to the Federal Bureau of Investigation for the National Criminal History Check, in addition to the documents listed in Step 1.

c. Step 3: If the appointment is for more than six continuous months, the applicant is required to undergo a full background investigation commensurate with the risk and sensitivity level of the position they will hold as determined by the PDT. FSEM checks the OPM, Department of Defense, and Intelligence Community databases (collectively, National Vetting Databases) for the applicant's current investigation/clearance/access investigation information. Based on a review of these documents and in accordance with Security Executive Agent Directive

("SEAD") 7, *Reciprocity of Background Investigations and National Security Adjudications* (November 9, 2018), and any other memorandums or directives that may be applicable, FSEM determines whether and which type of a background investigation is required. In some cases, if the individual previously worked for the government or was in the military, a new investigation may not be necessary if OPM is able to reciprocally accept a prior adjudication if the investigation meets or exceeds the requirements for the current position.

d. Step 4: If a background investigation is required, FSEM requires the applicant fill out the appropriate Standard Form (SF 85P Questionnaire for Public Trust Positions or SF 86 Questionnaire for National Security) questionnaire through the eApplication system ("eApp"), which is an application used to enter information required to initiate personnel background investigations.[1] The types of questions the individual is required to answer are determined by the type of investigation required, and may consist of information on employers, education history, criminal record, creditors, residences, or family members. Applicants are also required to submit fingerprint templates, preferably through electronic fingerprint submissions. In limited situations, fingerprints and a picture for the PIV credential may be completed at the same time the eApp is filled out by the applicant. No PIV credential is issued until the applicant is determined to be eligible. During normal processing, fingerprints are preferably completed prior to issuing the eApp.

[1] e-App is the recent replacement of the e-QIP (electronic questionnaires for investigation processing) system and requires users to electronically provide the information required on the investigative forms federal applicants and employees must submit to process their personnel background investigations, such as SF-85, SF-85P, SF-85PS, and SF-86.

e. Step 5: FSEM receives the eApp for review and ensures the form is complete and free of errors. Upon successful completion of this step, the eApp is submitted to DCSA to schedule the background investigation.

f. Step 6: As part of the interim determination process, if there are minor issues or concerns, FSEM requests documentation from the applicant to review and potentially mitigate known issues once the background investigation is scheduled by DCSA. Interim appointment or suitability decisions, and interim credentialing decisions—also known as interim eligibility—can be made once the investigation is scheduled with DCSA and preliminary investigative results are received and reviewed by FSEM for any issues or concerns as outlined in 5 CFR Part 731 (for suitability and fitness) and SEAD 4, *National Security Adjudicative Guidelines* (June 8, 2017) (for security clearances) and SEAD 8, *Temporary Eligibility* (May 18, 2020).

g. Step 7: Upon a favorable review of all required documentation, the employee may enter on duty in advance of investigation completion and final adjudication, depending on whether pre-appointment investigative requirements may be waived for a limited period, in accordance with SEAD 8 and 5 CFR Part 1400.202, as applicable.[2] At this point a PIV credential may also be issued, as described below. The interim eligibility determination is made concurrently with the initiation of the investigation and will generally remain in effect until an investigation is completed, at which time the applicant is considered for final eligibility.

[2] Positions that are intermittent, per diem, or temporary in nature, not to exceed an aggregate of 180 days per year in either a single continuous appointment or series of appointments, do not require a background investigation for suitability or fitness; however, the agency must conduct such checks as it deems appropriate to ensure the suitability or fitness of the person. *See* 5 CFR 731.404(a)(3).

h. Step 8: Once a favorable interim eligibility determination is made, FSEM notifies the applicable OPM organizations (such as the contracting officer representative, Office of Chief Information Officer, OPM HR and FSEM personnel security assistants) that the new hire has been approved to enter on duty. In cases where the applicant is a political new hire, only the OPM HR team is notified that they have been approved to enter on duty.

i. Step 9: DCSA as the investigative service provider, will conduct the investigation and contact the appropriate sources. These sources may include police departments, schools an individual has attended, or places an individual has worked. An individual may also be contacted by an investigator for a personal interview during which they may be asked to review the answers provided on their investigative form or to explain information developed by investigation.

j. Step 10: Once the background investigation is completed and forwarded to FSEM by DCSA, FSEM adjudicates the background information by assessing that information against predetermined standards set by federal regulations, for example the National Security Adjudicative Guidelines. If the investigation is favorably adjudicated, FSEM grants final eligibility and records the adjudicative determination in the Central Verification System (CVS), a national vetting database.

k. Step 11: After favorable adjudication of the full background investigation, an employee is eligible to be processed for a security clearance equivalent to their level of background investigation if the position requires access to classified information. To obtain a security clearance (secret / top secret), FSEM reviews an OPM Form

1680 (OPM Issuance of Security Clearance form) to certify that the employee has undergone the level of investigation required to support the requested level of clearance, based on the nature of their duties, and the employee must complete a security clearance briefing/training and execute a SF 312 non-disclosure agreement. If access to Sensitive Compartmented Information (SCI) is required, the Division Director of Personnel Security or an approveddesignee in FSEM coordinates with OPM's cognizant security agency for approval. There are limited senior level positions within OPM (such as the Director of OPM and General Counsel) that are automatically processed for a clearance once the background investigation is completed and favorably adjudicated.

**Credentialing – Personal Identity Verification (PIV) Credentials**

10. FSEM is also responsible for overseeing the credentialing process for new OPM employees and contractors. Credentialing involves a separate eligibility determination to issue PIV credentials for access to federally controlled facilities and information systems.

11. The credentialing standards procedures for all Executive Branch departments and agencies, including OPM, are outlined in the OPM memorandum, *Credentialing Standards Procedures for Issuing Personal Identity Verification Cards under HSPD-12 and New Requirement for Suspension or Revocation of Eligibility for Personal Identity Verification Credentials* (Dec. 15, 2020), available at https://www.opm.gov/suitability/suitability-executive-agent/policy/cred-standards.pdf (the Credentialing Standards).

12. Pursuant to the Credentialing Standards, an interim PIV eligibility determination may be made for a new appointee or contract employee pending completion of the required background investigation. *See* Credentialing Standards at page 4 ("Option 1"). OPM follows the

process for interim PIV credential eligibility as outlined in the Credentialing Standards. FSEM ensures the following is complete before making a favorable interim PIV credential eligibility determination:

a. Presentation by the appointee or employee of two identity source documents, at least one of which is a Federal or State government-issued picture identification;

b. Favorable review by FSEM of the intended PIV credential recipients completed investigative questionnaire;

c. Initiation of the intended PIV credential recipient's required background investigation; and

d. Favorable review by FSEM of the results of the intended PIV credential recipient's FBI National Criminal History Check (FBI fingerprint check) portion of the required background investigation.

13. FSEM does not issue temporary PIV credentials. FSEM issues temporary physical access credentials and PIV credentials only when eligibility requirements are met. OPM's Office of Chief Information Officer (OCIO) is responsible for issuing temporary local area network ("LAN") credentials for logical access to OPM's network until the employee is determined by FSEM to be eligible for a PIV credential. In cases involving political appointments, FSEM notifies HR that an interim EOD clearance has been issued, and HR is responsible for coordinating with OCIO for issuance of the temporary LAN credential.

14. Once an interim PIV credential eligibility determination is made, FSEM issues a PIV credential to the appointee or employee. Following an interim PIV credential eligibility determination, FSEM monitors for the completion of the required closed background investigation and promptly adjudicates the results. After adjudication of the completed investigation, FSEM

makes a final PIV credential eligibility determination in accordance with the Credentialing Standards. *See* Credentialing Standards at pages 5-6 ("Option 2"). Interim and final PIV credential eligibility determinations are recorded in the USAccess system managed by the General Services Administration.

**Vetting and Credentialing of Certain OPM Employees**

15. FSEM conducted the vetting and credentialing process for each of the below employees in accordance with established OPM procedures for other similarly situated employees, and when applicable, to include seeking access to sensitive and/or classified OPM information.

16. FSEM conducted the vetting process for Greg Hogan as an OPM political appointee. On January 13, 2025, FSEM received Hogan's completed new hire package for an appointment under 180 days. *See* OPM-000196-197. Steps 1 through 8 of the Suitability and Security Clearance Process at OPM detailed above were completed on January 14, 2025, and FSEM cleared Hogan to enter on duty at OPM. *See* OPM-000195; OPM-000002-03. On January 29, 2025, OPM's HR team requested clearance to convert Hogan's position to a permanent SES noncareer appointment, with the title of Chief Information Officer. *See* OPM-000203-04. An additional background investigation request was required, and FSEM required eApp completion. *See* OPM-000203. On February 10, 2025, FSEM issued a waiver of the pre-appointment background investigation requirements in accordance with 5 CFR Part 1400.202 and SEAD 8, and FSEM cleared Hogan to enter on duty in this permanent position. *See* OPM-000206; OPM-000202; OPM-000004-05. That same day, FSEM also sponsored Hogan for a PIV credential in accordance with the credentialing standards referenced above. Hogan's PIV credential was activated for use on February 13, 2025. *See* OPM-000205. Hogan completed the required documents and training for his top secret security clearance on March 6, 2025. FSEM granted top

secret security clearance to Hogan on March 11, 2025. *See* OPM-000198-199 OPM-000201 OPM-000207.

17. FSEM conducted the vetting process for Riccardo Biasini as an OPM political appointee. On January 20, 2025, FSEM received Biasini's completed new hire package for an appointment under 180 days. *See* OPM-000179-180. Steps 1 through 8 of the Suitability and Security Clearance Process at OPM detailed above were completed on January 20, 2025, and FSEM cleared Biasini to enter on duty at OPM. *See* OPM-000178; OPM-000008-09. On March 18, 2025, OPM's HR team requested clearance to convert Biasini's position to a permanent appointment with the same position description—i.e., expert. *See* OPM-000181-182. As of this date, Biasini has not been cleared to enter on duty in this permanent appointment at OPM but may still serve as an expert under his previous EOD clearance. OPM must wait until the background investigation initiated by another federal agency is closed, adjudicated and provided to FSEM before an EOD determination for the permanent position can be made.

18. FSEM conducted the vetting process for Akash Bobba as an OPM political appointee. On January 20, 2025, FSEM received Bobba's new hire package for an appointment under 180 days. *See* OPM-000190-191. Steps 1 through 8 of the Suitability and Security Clearance Process at OPM detailed above were completed on January 20, 2025, and FSEM cleared Bobba to enter on duty at OPM. *See* OPM-000189 OPM-000011.

19. FSEM conducted the vetting process for Edward Coristine as an OPM political appointee. On January 24, 2025, FSEM received Coristine's new hire package for an appointment under 180 days. *See* OPM-000193-194. Steps 1 through 8 of the Suitability and Security Clearance Process at OPM detailed above were completed on January 24, 2025, and FSEM cleared Coristine to enter on duty at OPM. *See* OPM-000192. Coristine's OF 306 was reviewed on January 24, 2025,

as part of the EOD clearance process, and FSEM determined that no information provided on the form warranted any additional review or investigation.

20. FSEM conducted the vetting process for Gavin Kliger as an OPM political appointee. On January 13, 2025, FSEM received Kliger's completed new hire package for an appointment under 180 days. *See* OPM-000209-210. Steps 1 through 8 of the Suitability and Security Clearance Process at OPM detailed above were completed on January 14, 2025, and FSEM cleared Kliger to enter on duty at OPM. *See* OPM-000208 OPM-000017-18. On January 29, 2025, OPM's HR team requested clearance to convert Kliger's position to a permanent Schedule C appointment, with the title of Senior Advisor to the Director. *See* OPM-000214-215. An additional background investigation request was required, and FSEM required eApp completion. *See* OPM-000214-215. On February 18, 2025, FSEM issued a waiver of the pre-appointment background investigation requirements in accordance with 5 CFR Part 1400.202 and SEAD 8, and FSEM cleared Kliger to enter on duty in this permanent position. *See* OPM-000218 OPM-000213 OPM-000019-20. FSEM sponsored Kliger for a PIV credential on February 18, 2025, and issued a PIV credential to Kliger on February 25, 2025. *See* USAccess PIV record for Gavin Kliger, a true and correct copy of which is attached hereto as Exhibit A. Kliger's full background investigation was completed on March 18, 2025, and favorably adjudicated by OPM on March 21, 2025. *See* OPM-000216; OPM-000217. Kliger completed the required documents and training for his top secret security clearance on April 18, 2025. FSEM granted top secret security clearance to Kliger on April 22, 2025. *See* OPM-000211-212, 217; *see also* Training Certificate for Gavin Kliger, a true and correct copy of which is attached hereto as Exhibit B.

21. FSEM conducted the vetting process for Nikhil Rajpal as an OPM political appointee. On January 24, 2025, FSEM received Rajpal's new hire package for an appointment

under 180 days. *See* OPM-000220-221. Steps 1 through 8 of the Suitability and Security Clearance Process at OPM detailed above were completed on January 24, 2025, and FSEM cleared Rajpal to enter on duty at OPM. *See* OPM-000219 OPM-000021.

22. FSEM conducted the vetting process for Brian Bjelde as an OPM political appointee. On January 16, 2025, FSEM received Bjelde's new hire package for an appointment under 180 days. *See* OPM-000184-185. Steps 1 through 8 of the Suitability and Security Clearance Process at OPM detailed above were completed on January 17, 2025, and FSEM cleared Bjelde to enter on duty at OPM. *See* OPM-000183. On January 29, 2025, OPM's HR team requested clearance for Bjelde to enter on duty on a permanent appointment. *See* OPM-000187-188. An additional background investigation request was not needed because FSEM reviewed Bjelde's previous background investigation. *See* OPM-000187-188. After a favorable review, Bjelde was reciprocally approved for a permanent position on January 31, 2025, and FSEM cleared Bjelde to enter on duty at OPM in this permanent position. *See* OPM-000186. Bjelde was sponsored for a PIV credential but never completed the process for issuance.

23. FSEM conducted the vetting process for James Sullivan as an OPM political appointee. On January 14, 2025, FSEM received Sullivan's completed new hire package for an appointment under 180 days. *See* OPM-000223-224. Steps 1 through 8 of the Suitability and Security Clearance Process at OPM detailed above were completed on January 14, 2025, and FSEM cleared Sullivan to enter on duty at OPM. *See* OPM-000222. On January 30, 2025, OPM's HR team requested clearance to convert Sullivan's position to a permanent Schedule C appointment, with the title of Senior Advisor. *See* OPM-000230-231. An additional background investigation request was required, and FSEM required eApp completion. *See* OPM-000230-231. On February 12, 2025, FSEM issued a waiver of the pre-appointment background investigation

requirements in accordance with 5 CFR Part 1400.202 and SEAD 8, and cleared Sullivan to enter on duty in this permanent position. *See* OPM-000234; OPM-000229. That same day, FSEM also sponsored Sullivan for a PIV credential, which was activated for use on February 25, 2025. *See* OPM-000232. Sullivan's full background investigation was completed on March 3, 2025, and favorably adjudicated by OPM on March 4, 2025. *See* OPM-000233; OPM-000228. Sullivan completed the required documents and training for his top secret security clearance on March 8, 2025, however, no clearance has been granted because Sullivan declined to sign the SF 312 as of this date. *See* OPM-000226-227, OPM-000228, OPM-000235. FSEM was notified on March 31, 2025, that Sullivan was appointed as Chief of Staff to the Director of OPM. *See* Email dated March 31, 2025, a true and correct copy of which is attached hereto as Exhibit C. Sullivan was reciprocally approved for a permanent position on March 31, 2025, and FSEM cleared Sullivan to enter on duty at OPM in this new position. *See* Exhibit C.

24. Each of the above employees was appropriately vetted and credentialed according to the established, rigorous, and required procedures outlined above. At no point did FSEM deviate from any of these required vetting and credentialing procedures in connection with the vetting and credentialing of these employees, or in connection with *any* employees who have been appointed to OPM during my time as the Director of FSEM. Furthermore, at no point did anyone direct me or any of my staff at FSEM to deviate from these established vetting and credentialing procedures.

Dated: May 16, 2025
Washington, D.C.

EVERETTE HILLIARD
Digitally signed by EVERETTE HILLIARD
Date: 2025.05.16 18:47:37 -04'00'

Everette R. Hilliard